UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | Chapter 11 |
| TONOPAH SOLAR ENERGY, LLC, | Case No. 20-11884(KBO) |
| | 824 Market Street<br>Wilmington, Delaware 19801 |
| Debtor. | Monday, August 24, 2020 |

TRANSCRIPT OF TELEPHONIC HEARING RE:
DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS (I) AUTHORIZING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES, (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF
BEFORE THE HONORABLE KAREN B. OWENS
UNITED STATES BANKRUPTCY JUDGE

APPEARANCES VIA TELEPHONE:

| | |
|---|---|
| For the Debtors: | Edmon L. Morton, Esq.<br>Matthew B. Lunn, Esq.<br>Allison S. Miekle, Esq.<br>Jared W. Kochenash, Esq.<br>YOUNG, CONAWAY, STARGATT & TAYLOR, LLP |
| | Matthew A. Feldman, Esq.<br>Paul V. Shalhoub, Esq.<br>Ciara A. Copell, Esq.<br>WILLKIE, FARR & GALLAGHER, LLP |
| For the U.S. Trustee: | David L. Buchbinder, Esq.<br>David Villagrana, Esq.<br>OFFICE OF THE U.S. TRUSTEE |

(Appearances Continued)

| | |
|---|---|
| Audio Operator: | Electronically Recorded by Al Lugano, ECRO |
| Transcription Company: | Reliable<br>1007 N. Orange Street<br>Wilmington, Delaware 19801<br>(302)654-8080<br>Email: gmatthews@reliable-co.com |

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

APPEARANCES VIA TELEPHONE: (Continued)

| | |
|---|---|
| For Solar Reserve CSP Holdings, et al: | Vincent F. Alexander, Esq.<br>Richard S. Lauter, Esq.<br>Cheneise Wright, Esq.<br>LEWIS, BRISBOIS, BISGAARD & SMITH |
| For ACS Servicios Comunicaciones y Energia S.L., Cobra Thermosolar Plants, Inc.: | Christopher M. Samis, Esq.<br>Aaron Stulman, Esq<br>POTTER, ANDERSON & CORROON, LLP |
| | William A. Escobar, Esq.<br>Benjamin D. Feder, Esq.<br>Cassandra Postighone, Esq.<br>Joel S. Rubin, Esq.<br>Eric R. Wilson, Esq.<br>KELLEY, DRYE & WARREN, LLP |
| For the United States: | Rodney A. Morris, Esq.<br>U.S. DEPARTMENT OF JUSTICE - CIVIL DIVISION |
| For PNC Bank: | Bruce J. Zabarauskas, Esq.<br>THOMPSON & KNIGHT, LLP |
| Also Appearing: | Chris LeWand<br>Justin Pugh<br>Zach Shulman<br>FTI Consulting, Inc. |

INDEX


| | Page |
|---|---|
| PRESENTMENT/ARGUMENT BY MR. SHALHOUB | 5 |
| ARGUMENT BY MR. ALEXANDER | 10 |
| COMMENTS BY MR. LAUTER | 16 |
| FURTHER ARGUMENT BY MR. SHALHOUB | 17 |
| COMMENTS BY MR. LUNN | 18 |
| COURT DECISION | 20 |

(Proceedings commence at 1:06 p.m.)

THE OPERATOR: Recording has begun, and we are now live.

THE COURT: Thank you, Cynthia.

Good morning, Counsel. This is Judge Owens. We're here for the second-day hearing on Tonopah Solar.

Why don't I turn the podium over to counsel for the debtors, who can walk us through today's agenda.

MR. MORTON: Thank you, Your Honor. Ed Morton from Young, Conaway, Stargatt & Taylor, on behalf of the Debtor Tonopah Solar Energy.

Your Honor, we've actually resolved the lion's share of the agenda, through various certifications of counsel and the diligence of Your Honor's chambers in entering the orders associated with those. The only two matters I will address on our way to the main event for today is Items 5 and 6. These are two motions related to the entry into and then rejection of certain O&M agreements has been adjourned on consent to September 4th.

So, Your Honor, that takes all the way through to Item 16, which is our final request for cash collateral usage. As Your Honor may have seen, there's been an objection filed by Solar Reserve, as well as a reply filed by the debtor in response to that.

The only item I'll also note is that, on Friday, we

did also file the final form of cash collateral order for use at today's hearing. As Your Honor no doubt has already seen, most of the changes there are simply conforming the interim order to the final order, pursuant to its own terms. But certainly, after we get through the argument section of today's hearing, we can answer any questions that Your Honor or any other party has with respect to the final form of order.

So, unless Your Honor has no items to attend to before that, I would cede the podium to my co-counsel Paul Shalhoub of Willkie, Farr & Gallagher to present at least our side of the argument on cash collateral usage.

THE COURT: Okay. Thank you, Mr. Morton. No, I have no questions or comments at this time.

So, Mr. Shalhoub, why don't you go ahead with your presentation?

MR. SHALHOUB: Great. Thank you, Your Honor, and good morning. For the record, Paul Shalhoub of Willkie, Farr & Gallagher, on behalf of the debtor.

Your Honor, I'll try to be relatively brief. As Mr. Morton said, there was one objection filed, that was filed by Solar Reserve CSP Holdings, LLC, at Docket Number 85. Solar Reserve's objection, Your Honor, raised three limited issues:

One, Solar Reserve objects to the proposed adequate

protection lien on unencumbered collateral, including avoidance actions proceeds.

Two, Solar Reserve objects to the 506(c) waiver.

And three, Solar Reserve objects to the debtor's agreement to waive the equities of the case exception in Section 552(b) of the Bankruptcy Code.

We did file a short reply to the objection on Wednesday of last week, at Docket Number 103. For the reasons laid out in our reply -- which I'll briefly summarize -- we believe the Court should overrule the objection.

First, Your Honor, as a threshold matter, we do not believe Solar Reserve has party-in-interest status, affording it standing to be heard today. I think the case law is clear that party-in-interest standing does not arise if the party seeking to assert a right is merely a shareholder of a shareholder, which is the case here with respect to Solar Reserve.

Solar Reserve is a remote indirect interest holder in the debtor, and by that I mean, Your Honor, the debtor's immediate parent is Tonopah Solar Energy Holdings II, LLC. That entity's parent is Tonopah Solar Energy Holdings I, LLC. That entity's parent is Tonopah Solar Investments, LLC. And then that entity is owned 50 percent by Solar Reserve and 50 percent by a Cobra-related entity. There was a chart of the company's organizational structure that was attached as

Exhibit A to Mr. Pugh's first-day declaration; that was at Docket Number 2, Your Honor.

So, in short, Solar Reserve is several layers up the organizational chain, and its equity rights are purely derivative -- and indirect at that -- of the equity held by the debtor's immediate parent and sole member, Tonopah Solar Energy Holdings II.

As we noted in our reply, Your Honor, the Delaware District Court found, in Vantage Drilling -- which agreed with the Second Circuit's ruling in Refco -- and I'm quoting here, quote:

> "Case law is clear that party-in-interest standing under Section 1109(b) does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding."

That's at 603 B.R., at 545.

And indeed, Your Honor, concluding that Solar Reserve does not have standing to be heard here would also be consistent with the decisions of Vice Chancellor Slights in the pre-petition litigations in the Delaware Court of Chancery, where Vice Chancellor Slights, in two separate decisions, which we've summarized in our reply, found that Solar Reserve was nothing more than a remote indirect interest holder that did not have standing to seek

dissolution of the debtor or the right to inspect the debtor's books and records. Why? Because it knowingly bargained away those rights when it gave up sole direct ownership of the debtor and also assigned away any claims that it may have against TSE to CMB, which is Solar Reserve's lender.

Putting aside, Your Honor, what we believe is Solar Reserve's lack of standing to be heard, we also believe the objection lacks merit. Here, the debtor has agreed to a standard form of adequate protection package that was required by its lender to obtain consent to use cash collateral. I don't think there's anything unusual or overreaching in the complained about provisions.

As we laid out in our reply, first, the form of order is clear that the adequate protection liens and superpriority claims are, in all cases, limited to the extent there is diminution in the DOE's collateral.

Second, Your Honor, Section 361(2) expressly contemplates additional or replacement liens on estate property, which includes unencumbered property, of course. Here, we're not granting liens on avoidance actions themselves, but on proceeds of avoidance actions, which, if they were to be received by the estate, would be property of the estate under Section 541.

And lastly, Your Honor, the DOE has agreed to a

budget and a carveout, which courts find, and in my experience I've always equated to be the *quid pro quo* for these Section 506(c) and 552(b) waivers.

So, in short, Your Honor, all three of these items were part of a package deal that was negotiated extensively and bargained for to obtain the DOE's consent to use cash collateral. I believe they're commonly approved. And we would ask that the Court overrule the objection and enter the proposed final order.

That's all I wanted to say at this point, Your Honor. So, unless the Court has questions, I'll cede the podium.

THE COURT: Okay. Thank you, Mr. Shalhoub. I have no questions.

Let me ask, before I hear from Solar Reserve. Is there anyone else that wishes to make any statements or arguments in support of the final cash collateral order?

(No verbal response)

THE COURT: Okay. Okay. Why don't I turn the podium over to counsel for Solar Reserve CSP.

MR. LAUTER: Thank you, Your Honor. This is Richard S. Lauter of Lewis, Brisbois, Bisgaard & Smith. I am present this morning with my colleague Vincent Alexander. I'm going to let Mr. Alexander make the argument, and perhaps have a comment afterwards. Mr. Alexander?

MR. ALEXANDER: Thank you, Your Honor. Vincent Alexander.

Your Honor, the first thing, obviously, that we will address is the standing argument that counsel for the debtor made. We believe that Solar Reserve CSP is a party-in-interest in this case for multiple reasons.

First, there are two active, pending litigation matters between Solar Reserve and the debtor in the Delaware Courts. One matter is currently pending before the Delaware Supreme Court, and that obviously has been stayed because of the bankruptcy filing by TSE, and also the Delaware Supreme Court granted oral argument on that, which is stayed, as well. And the second matter is another litigation matter that is currently pending, and no final judgment has been entered in that case. While the Court did issue an opinion, the filing of the bankruptcy prevented any final judgment from being entered. So we believe that there's two active litigation matters that are pending between Solar Reserve CSP and the debtor.

And in terms of the substance and what counsel characterized as the holdings in the cases, obviously, with the dissolution action that was pending, that was the ruling of the Court; however, like I said, we have appealed that because we disagree with the Court's characterization, in terms of what Solar Reserve CSP's interest is in the debtor.

Solar Reserve CSP is also a signatory to the operating agreement of TSE, so it has contractual rights related to the debtor.

And also -- and we believe this is very important -- is the fact that the debtor itself has routinely referenced Solar Reserve CSP Holdings in its first-day declaration, the initial cash collateral motion, and the proposed plan even has a specific provision relating to Solar Reserve CSP and related parties, in terms of an opt-out provision, which requires affirmative action by Solar Reserve CSP, in order to opt out releases that are being contemplated, pursuant to the plan. So it seems as if the debtor wants to state that Solar Reserve CSP has no interest and no standing in this case, but is also seeking to bar Solar Reserve CSP releases unless it actively participates and makes an affirmative opt-out in the case.

So we believe that there is a substantial basis to demonstrate that Solar Reserve CSP has standing in this case in order to proceed, and obviously object to cash collateral and also on any other matters in this case.

We do not believe that the Court needs to address it at this time and we believe it's premature. Also, there -- Solar Reserve CSP believes that it will be filing a proof of claim in this case, further evidencing its standing. And it's aware that the entity CMB that was referenced by counsel

for the debtor will also be filing a proof of claim in this case, which is based on litigation claims that it believes that it has against the debtor, as well.

So we believe that, to the extent standing is an issue that needs to be addressed, then we would request that there be an opportunity to brief that issue, and ultimately an evidentiary hearing to see and determine, ultimately, whether there is standing to proceed. But like we said, we believe that it's premature for that to be addressed at this time, on this motion.

In terms of the motion for cash collateral, we did just file a limited objection, and we believe the objections -- I know counsel for the debtor stated that the relief being sought is routine. But we believe that relief, although it's sought routinely, it's routinely objected to and routinely stricken from final orders.

With respect to the proceeds on avoidance actions -- I'm sorry -- the lien on the proceeds of avoidance actions, we believe that the secured parties, through the superpriority claims, as well as the backstop letter of credit from Cobra -- which would make DOE whole, in any event -- you know, are sufficient, as well as the other release that's being afforded, to the extent that there's no need for the estate to grant a lien on the proceeds of avoidance actions, which should be there for the benefit of the estate

because, as I mentioned, there are going to be litigation claims that are going to be asserted in this case.

And while the plan, as proposed, states that the rights of unsecured creditors are going to be unimpaired, we don't believe that's the case. And one of the claims that we know that's pending was a pre-petition lawsuit filed by CMB in Nevada, which I believe will be asserted in this case, as well.

And the case is really being run for the benefit of the Department of Energy, the other secured parties, and the Cobra Parties because, under the proposed plan, the DOE will be paid hundreds of millions of dollars and the Cobra Parties will gain control of the debtor. And we believe that there are claims against Cobra which exceed a billion dollars, and they're going to resolve that liability through this case for a fraction of that, assuming that the plan and if the plan gets approved.

So we believe there's no basis given as to why the lien on the proceeds of the avoidance actions is necessary here. The only stated basis is the debtor's business judgment, but they don't explain how they arrived at that or back to that decision. And particularly, the DOE, if they really didn't want this case to proceed, then they could have foreclosed prior to the bankruptcy filing. They issued the debtor a notice of default well over a year ago, but they

want to use the bankruptcy process. And because they want to use the bankruptcy process, they should have to comply with the Bankruptcy Code, including that the benefit of avoidance actions should be for the estate and not just for one individual creditor, especially when they're going to benefit from the case itself.

And for the 506(c), again, we believe this is the -- for the same reason the lien on avoidance actions proceeds should be denied, the debtor has provided sufficient collateral and also rights to the secured parties. And that, obviously, goes along with the 552 waiver, as well.

And so we believe, based on what has already been provided to the secured parties, and as well as that there should be something left residual for the estate, including the unsecured creditors, and for the reasons stated in our limited objection, we believe that the final order should reflect the objections that are raised, and obviously strike those provisions from the final order.

THE COURT: Okay. Thank you, Mr. Alexander.

Can you describe for me -- I think you said that there are two active pending litigation matters in the Delaware Courts. And the first one, I believe, is the appeal of the dissolution matter, which is before the Supreme Court, and you had said that's stayed. What's the second litigation -- what's the substance of the second litigation matter that

you said there was an opinion issued, but no final judgment? Can you describe what the substance of that matter is?

MR. ALEXANDER: Yes, I can, Your Honor. Vincent Alexander.

The operating of -- the operating agreement of the debtor afforded -- specifically afforded Solar Reserve CSP certain rights, and one of those rights being the right to inspect to books and records. An inspection of books and records request was made to the debtor, and it was rejected by the debtor, and no documents were provided, so the litigation was filed. And so there was a -- as part of the opinion, the Court entered an order -- or actually, there's no order, it's the opinion stating that Solar Reserve did not have the right to request those.

We believe that's error, based on the plain language of the contract itself, as well as an additional document, which was referenced by counsel, which was an assignment of claims. And we believe that it was misinterpreted by the Court in issuing its opinion. But there's been no final judgment entered because the bankruptcy cases was filed prior to the entry of any final judgment in that matter.

THE COURT: Okay. Okay. Thank you very much. I thought that's what you were referring to, but I just wanted to be sure. Okay. Thank you for that explanation. I don't

have any further questions.

Why don't I turn it over -- well, let me ask for the record, before I turn the podium back over to debtor's counsel for any reply they'd like to make. Is there anyone else that wishes to be heard in opposition to the final cash collateral order?

MR. LAUTER: Your Honor, this is Richard Lauter again, from Lewis, Brisbois --

THE COURT: Oh, yes.

MR. LAUTER: -- Bisgaard & Smith.

I would only ask one thing of Mr. Morton. And that is, in the reply that he filed to our limited objection, he indicated that the U.S. -- that the debtor had made, quote, "certain accommodations" to the United States Trustee's Office in the final order. Perhaps it's in the redline. But I would ask them to put those accommodations on the record, so that we know what they are, the Court knows what they are. We'd really appreciate that. Thank you.

THE COURT: Oh, okay. I think that's a fair request, Mr. Lauter.

Let me turn the podium back over to either Mr. Morton or Mr. Shalhoub. And why don't you do this? Why don't you make any reply that you would like to make in response to Mr. Alexander's presentation? And then, if you would like to address Mr. Lauter's comment about the changes

that were made to accommodate the United States Trustee in the proposed final order, that would also be helpful, too.

MR. SHALHOUB: Sure, Your Honor. This is Paul Shalhoub. I'll address, very briefly, a reply to the comments that were made. And I think, actually, Mr. Lunn will address the accommodations that were made to the order with respect to discussions that took place with the U.S. Trustee, if that's okay.

THE COURT: That's fine. Go ahead.

MR. SHALHOUB: Okay. I mean, I'll keep it very brief, Your Honor. This vast conspiracy that's being alleged between the debtor and Cobra and the Department of Energy or the Government, you know, if I -- I'm not going to address it, other than to say we obviously disagree with it, and we'll address it at the appropriate point in time, which is not at a cash collateral hearing where a limited objection has been raised. I -- you know, my own opinion is it's absurd, but we'll address the absurdity of it at a later date.

On the objection itself, I'm not going to respond to the merits, Your Honor. I think Your Honor can rule on whether or not, in the context of a highly negotiated, consensual cash collateral arrangements, those types of provisions are appropriate and should be approved or not approved, so I'll leave that to the Court.

On the standing issue, Your Honor, we did not hear at all that Solar Reserve CSP is an interest holder in the debtor. We did not hear a reply, other than they disagree with Justice Slights' decision that Solar Reserve CSP assigned all claims that it holds against the debtor, if any, to its lender CMB. We did hear that CMB is going to file a proof of claim in the case, which we haven't seen yet. But CMB did not file the limited objection here; Solar Reserve CSP did. We also heard that Solar Reserve CSP is going to file a proof of claim here. We haven't seen it yet.

And I don't think that that I agree that two litigations that have been denied in the Delaware Court of Chancery make Solar Reserve a party-in-interest under 1109(b). I mean, you know, it can't be the answer that meritless actions afford party-in-interest status. I just don't think that's the case.

But in any case, Your Honor, that's all I have to say on the reply, and I'll turn it over to Mr. Lunn.

MR. LUNN: Thank you.

THE COURT: Mr. Lunn?

MR. LUNN: Matthew Lunn, Your Honor. Good morning, Your Honor. Matthew Lunn from Young Conaway on behalf of the debtor.

I think there may be a slight misunderstanding, in terms of what the reply had stated, in terms of the

accommodations that were made for the U.S. Trustee. If Your Honor would recall from the first-day hearing, we entered into that first-day hearing with agreed forms of order with the U.S. Trustee after taking comments, even before filing, and incorporating those comments into the form of order; thus, having a consensual form of order with the U.S. Trustee.

One of the comments related to the 552 waiver and making that subject to the challenge period, as opposed simply the entry of the final order, all of those comments that Your Honor saw in connection with the first-day order, the interim order, are -- continue to be reflected in the final order. And therefore, as you would see in the redline, as Mr. Morton stated, we simply made the interim order to a final order. And other than cleaning up the fact that there is no creditors' committee with respect to the challenge deadline, that is simply the -- those are simply the changes that were made. I just think there might be a slight misunderstanding.

THE COURT: Okay. That's very helpful. I did look at the proposed form of order prior to today's hearing, and it didn't seem like there were any substantive changes, so it's helpful to have that clarification.

MR. LUNN: Thank you, Your Honor.

THE COURT: Thank you.

Okay. Well, listen, I appreciate everyone's comments and arguments today.

I'll make a threshold statement, I guess, regarding the standing issue, which is: It seems to me that, at this point in time, Solar Reserve's -- I should say Solar Reserve CSP's standing is -- to be heard in connection with this matter seems to be questionable at best, but I don't need to answer the question today.

And I agree it's a bit premature and it's premature because, you know, even if Solar Reserve CSP had standing, I find that and believe that the proposed cash collateral order and its terms are reasonable and appropriate under the circumstances.

I do find it's an appropriate exercise of business judgment to grant liens on avoidance actions and grants of 552(b) and 506(c) waivers that are reflected in the proposed order, in light of the DOE's consent to use its cash collateral during the case.

And notably, I think, in support of that is the structure of the pre-negotiated plan, which includes all creditors that I would say not -- that are not under the tent, so to speak, their claims will be unimpaired.

So I also agree with the debtors that, you know, adequate protection liens and superpriority claims in this case are limited to diminution of property and that

replacement liens on unencumbered property, including avoidance action proceeds, is expressly contemplated by the Code. And I would go as far as to say that I do not believe that those proceeds are necessarily limited to the unsecured creditor body. I think there's significant case law that suggests otherwise.

I also find that the two waivers are customary and appropriate, given the consent and the terms of the consent to use cash collateral here.

So, for those reasons, I'm going to overrule the objection of Solar Reserve CSP, and I will approve the final -- the entry of the final order that was proposed prior to the hearing date.

I'll just ask for the record. Are there any other changes that are anticipated to be mad, or following today's -- the conclusion of today's hearing, is it okay for the Court to enter the order that has been uploaded and filed? I think it was on the 21st.

MR. LUNN: Yeah. Your Honor, again, for the record, Matthew Lunn. So further changes are being made, so I believe the order has been uploaded, so that would be the order that was filed under the certification of counsel or the notice of filing on Friday could be the one that one that Your Honor could enter.

THE COURT: Okay. So I'll approve that, I'll

approve the entry of that order, and following today's hearing, we will go ahead and have that one entered on the docket.

I don't think there's anything else that we need to address today. I was going to ask. I thought that we only had the disclosure statement hearing on that Friday before the Labor Day weekend. And I was going to suggest to the parties that, to the extent that a consensual proposed form of order was going to be proposed or, I guess, presented to the Court that morning, that I would entertain that order under certification of counsel and cancellation of the hearing. But it seems to me, based on the presentation of the agenda, that we'll also have two additional matters on for that hearing date. Is that correct?

MR. LUNN: That is correct, Your Honor.

MR. SHALHOUB: Yes. Although, Your Honor --

THE COURT: Okay. I --

MR. SHALHOUB: This is Paul Shalhoub. I would add -- and I apologize for interrupting -- it may be that we have agreed form of orders on those two motions, as well. So, if the Court has a preference, if possible, to submit under certifications, perhaps we could do that for all three motions.

THE COURT: Okay. Well, I am certainly amenable to that. I always am amenable to hearing -- or considering

orders under certification of counsel, to the extent that they're proposed consensually. So, if you're able to come to a consensus and it is appropriate to go forward without a hearing, I would entertain that. I think it would be a nice break for all parties to not have that hearing on Friday. But if we need it, so be it, and the Court will be here and we'll have a hearing. So I'll just look for whatever you file prior to that hearing, and we'll take it as it comes.

Okay. Well, is there anything else we should discuss before adjourning today?

MR. LUNN: Nothing further, Your Honor. Thank you very much for your time.

THE COURT: Okay.

COUNSEL: Thank you, Your Honor. Thank you.

THE COURT: Thank you all very much.

UNIDENTIFIED: Thank you very much, Your Honor.

THE COURT: Be well and continue to be well, and we'll consider the hearing adjourned. Thank you.

(Proceedings concluded at 10:28 a.m.)

*****

CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter to the best of my knowledge and ability.

________________________________ August 25, 2020

Coleen Rand, AAERT Cert. No. 341

Certified Court Transcriptionist

For Reliable