## EXHIBIT A

**Plan Blackline**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

In re:

TONOPAH SOLAR ENERGY, LLC,

Debtor.[1]

Chapter 11

Case No. 20-11884 (KBO)

### AMENDED CHAPTER 11 PLAN FOR TONOPAH SOLAR ENERGY, LLC

**THIS IS NOT A SOLICITATION OF AN ACCEPTANCE OR REJECTION OF THE PLAN.  ACCEPTANCES OR REJECTIONS MAY NOT BE SOLICITED UNTIL THE DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT.  THE INFORMATION IN THE DISCLOSURE STATEMENT AND THIS PLAN IS SUBJECT TO CHANGE.  THIS PLAN IS NOT AN OFFER TO SELL ANY SECURITIES AND IS NOT SOLICITING AN OFFER TO BUY ANY SECURITIES.**

---

[1] The debtor in this chapter 11 case, along with the last four digits of its Employer Identification Number, is Tonopah Solar Energy, LLC (1316).  The Debtor's mailing address is 11 Gabbs Pole Line Road, Tonopah, NV 89049.

Dated:     ~~July 30~~September 2, 2020

                                    **YOUNG CONAWAY STARGATT & TAYLOR, LLP**
                                    Edmon L. Morton (No. 3856)
                                    Matthew B. Lunn (No. 4119)
                                    Allison S. Mielke (No. 5934)
                                    Jared W. Kochenash (No. 6557)
                                    Rodney Square
                                    1000 North King Street
                                    Wilmington, Delaware 19801
                                    Telephone: (302) 571-6600
                                    Facsimile: (302) 571-1253
                                    emorton@ycst.com
                                    mlunn@ycst.com
                                    amielke@ycst.com
                                    jkochenash@ycst.com

                                    -and-

                                    **WILLKIE FARR & GALLAGHER LLP**
                                    Matthew A. Feldman (admitted *pro hac vice* ~~admission pending~~)
                                    Paul V. Shalhoub (admitted *pro hac vice* ~~admission pending~~)
                                    Andrew S. Mordkoff (admitted *pro hac vice* ~~admission pending~~)
                                    Ciara A. Copell (admitted *pro hac vice* ~~admission pending~~)
                                    787 Seventh Avenue
                                    New York, New York 10019
                                    Telephone: (212) 728-8000
                                    Facsimile: (212) 728-8111
                                    mfeldman@willkie.com
                                    pshalhoub@willkie.com
                                    amordkoff@willkie.com
                                    ccopell@willkie.com

                                    *~~Proposed~~ Co-Counsel for the Debtor and Debtor in Possession*

# TABLE OF CONTENTS

**Page**

ARTICLE I.
DEFINITIONS AND INTERPRETATION ........................................................8

ARTICLE II.
CERTAIN INTER-CREDITOR AND INTER-DEBTOR ISSUES...................19

    **2.1.**    *Settlement of Certain Inter-Creditor Issues.*........................................................19

ARTICLE III.
ADMINISTRATIVE EXPENSE CLAIMS,
PROFESSIONAL FEE CLAIMS, U.S. TRUSTEE FEES AND
PRIORITY TAX CLAIMS................................................................................19

    **3.1.**    *Administrative Expense Claims.*...........................................................................20
    **3.2.**    *Professional Fee Claims.* .....................................................................................21
    **3.3.**    *U.S. Trustee Fees.* ...............................................................................................22
    **3.4.**    *Priority Tax Claims.*............................................................................................22

ARTICLE IV.
CLASSIFICATION OF CLAIMS AND INTERESTS ......................................23

    **4.1.**    *Classification of Claims and Interests.*................................................................23
    **4.2.**    *Unimpaired Classes of Claims.*............................................................................23
    **4.3.**    *Impaired Classes of Claims.* ................................................................................23
    **4.4.**    *Separate Classification of Other Secured Claims.*...............................................24

ARTICLE V.
TREATMENT OF CLAIMS AND INTERESTS ..............................................24

    **5.1.**    *Priority Non-Tax Claims (Class 1).*.....................................................................24
    **5.2.**    *Other Secured Claims (Class 2).* .........................................................................24
    **5.3.**    *Prepetition Note Claims (Class 3).* ......................................................................25
    **5.4.**    *General Unsecured Claims (Class 4).* ..................................................................26
    **5.5.**    *Existing Interests (Class 5).* .................................................................................26

ARTICLE VI.

ACCEPTANCE OR REJECTION OFTHE OF
THE PLAN; EFFECT OF REJECTION BY ONE
OR MORE CLASSES OF CLAIMS OR INTERESTS ....................................26

6.1.    *Class Acceptance Requirement.* ..........................................................................26

6.2.    *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or
"Cramdown."* ........................................................................................2726

6.3.    *Elimination of Vacant Classes.* ..........................................................................27

ARTICLE VII.

          MEANS FOR IMPLEMENTATION ..................................................................27

7.1.    *Continued Existence and Vesting of Assets in Reorganized TSE.* ......................27

7.2.    *Issuance of New Common Units to Cobra* ..........................................................28

7.3.    *Plan Value of New Common Units* ......................................................................28

7.4.    *Working Capital Commitment* ............................................................................28

7.5.    *Exit Credit Facility Agreement, Exit Contingent Note* ......................................2928

7.6.    *Cancellation of Existing Securities and Agreements.* .........................................29

7.7.    *Cancellation of Liens Pursuant to Cash Collateral Order.* .................................29

7.8.    *Board of Managers.* ............................................................................................29

7.9.    *Organizational and Other Action.* ......................................................................30

7.10.   *Comprehensive Settlement of Claims and Controversies.* ...................................30

7.11.   *Transactions Authorized under Plan* .................................................................3130

7.12.   *Approval of Plan Documents* ..............................................................................31

7.13.   *Dismissal of the ICC Arbitration* .......................................................................31

ARTICLE VIII.

          DISTRIBUTIONS ..............................................................................................31

8.1.    *Distributions.* .....................................................................................................31

8.2.    *No Postpetition Interest on Claims.* ....................................................................31

8.3.    *Date of Distributions.* .........................................................................................31

8.4.    *Distribution Record Date.* ................................................................................3231

8.5.    *Disbursing Agent.* ..............................................................................................32

8.6.    *Delivery of Distributions.* ...................................................................................33

8.7.    *Satisfaction of Claims.* .......................................................................................33

8.8.    *Manner of Payment Under Plan.* ........................................................................33

8.9.    *No Distribution in Excess of Amount of Allowed Claim.* .....................................33

**8.10.** *Exemption from Securities Laws.*....................................................~~34~~33

**8.11.** *Setoffs and Recoupments.*.......................................................34

**8.12.** *Withholding and Reporting Requirements.* ........................................34

ARTICLE IX.

PROCEDURES FOR RESOLVING CLAIMS ...........................................~~35~~34

**9.1.** *Disputed Claims.* .................................................~~35~~34

**9.2.** *Objections to Claims.* ...............................................35

**9.3.** *Estimation of Claims*................................................~~36~~35

**9.4.** *Expenses Incurred on or After the Effective Date.*...............................36

ARTICLE X.

EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..........................36

**10.1.** *General Treatment.* ...............................................36

**10.2.** *Claims Based on Rejection of Executory Contracts or Unexpired Leases.* ........37

**10.3.** *Cure of Defaults for Assumed or Assumed and Assigned Executory Contracts and Unexpired Leases.*.............................................37

**10.4.** *Effect of Confirmation Order on Assumption, Assumption and Assignment, and Rejection.* ..................................................38

**10.5.** *Permits, Licenses, Easements and Similar Interests* .......................~~39~~38

**10.6.** *Assumption of Directors and Officers Insurance Policies* ..................39

**10.7.** *Assumption of Certain Indemnification Obligations* ........................40

ARTICLE XI.

CONDITIONS PRECEDENT TO
CONSUMMATION OF THE PLAN ................................................41

**11.1.** *Conditions Precedent to the Effective Date.* .......................................41

**11.2.** *Satisfaction and Waiver of Conditions Precedent.* ................................42

**11.3.** *Effect of Failure of Conditions Precedent to the Effective Date.* ..................~~43~~42

ARTICLE XII.

EFFECT OF CONFIRMATION ..........................................................43

**12.1.** *Binding Effect.* ....................................................43

**12.2.** *Discharge of Claims Against and Interests in the Debtor.*...................43

**12.3.** *Term of Pre-Confirmation Injunctions or Stays.* ............................~~44~~43

**12.4.** *Injunction Against Interference with Plan.* ..........................................................44

**12.5.** *Injunction.* ..............................................................................................................44

**12.6.** *Releases.* ..................................................................................................................45

**12.7.** *Waiver of Limitations on Releases of Unknown Claims.* .....................................47

**12.8.** *Exculpation and Limitation of Liability.* ..............................................................48

~~**12.9.** *Injunction Related to Releases and Exculpation.* ...............................................48~~

**12.9.** *[Reserved.]* ............................................................................................................48

**12.10.** *Retention of Causes of Action/Reservation of Rights.* ........................................48

**12.11** *Retention of United States Causes of Action/Reservation of Rights.* ..................49

**ARTICLE XIII.**

RETENTION OF JURISDICTION ...............................................................~~50~~49

**ARTICLE XIV.** 52

MISCELLANEOUS PROVISIONS ..............................................................................................52

**14.1.** *Exemption from Certain Transfer Taxes.* .............................................................52

**14.2.** *Termination of Professionals.* ..............................................................................52

**14.3.** *Amendments.* .......................................................................................................~~53~~52

**14.4.** *Revocation or Withdrawal of this Plan.* ..............................................................~~53~~52

**14.5.** *Allocation of Plan Distributions Between Principal and Interest.* ......................53

**14.6.** *Severability.* ...........................................................................................................53

**14.7.** *Governing Law.* ...................................................................................................~~54~~53

**14.8.** *Section 1125(e) of the Bankruptcy Code.* ...........................................................~~54~~53

**14.9.** *Inconsistency.* ........................................................................................................54

**14.10.** *Time.* .....................................................................................................................54

**14.11.** *Exhibits.* ................................................................................................................54

**14.12.** *Notices.* .................................................................................................................54

**14.13.** *Filing of Additional Documents.* ...........................................................................55

**14.14.** *Reservation of Rights.* ..........................................................................................55

-iv-

## INTRODUCTION[2]

Tonopah Solar Energy, LLC proposes the following chapter 11 plan under section 1121(c) of the Bankruptcy Code for the resolution of the outstanding claims against, and equity interests in, the Debtor.  Capitalized terms used in this Plan and not otherwise defined shall have the meanings ascribed to such terms in Article I of this Plan.

## ARTICLE I.
## DEFINITIONS AND INTERPRETATION

### A.    Definitions.

The following terms shall have the meanings set forth below (such meanings to be equally applicable to both the singular and plural):

**1.1**    ***Administrative Bar Date*** has the meaning set forth in Section 3.2(a) of this Plan.

**1.2**    ***Administrative Expense Claim*** means any right to payment constituting a cost or expense of administration of the Chapter 11 Case of the kind specified in section 503(b) of the Bankruptcy Code and entitled to priority pursuant to sections 328, 330, 363, 364(c)(1), 365, 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code (other than a Professional Fee Claim or ~~U.S~~fees owed pursuant to 28 U.S.C. ~~Trustee Fees~~§ 1930) incurred during the period from the Petition Date to the Effective Date, including: (a) any actual and necessary costs and expenses of preserving the Estate, any actual and necessary costs and expenses of operating the Debtor's business, and any indebtedness or obligations incurred or assumed by the Debtor during the Chapter 11 Case; and (b) any payment to be made under this Plan to cure a default under an assumed, or assumed and assigned, executory contract or unexpired lease.

**1.3**    ***Affiliate*** means, with respect to any Person, all Persons directly, or indirectly through one or more intermediaries, Controlling, Controlled by, or under common Control with such Person.

**1.4**    ***Allowed*** means, with respect to a Claim or Interest under this Plan, a Claim or Interest that is an Allowed Claim or an Allowed _____ Claim or an Allowed Interest.

**1.5**    ***Allowed Claim or Allowed _____ Claim*** (with respect to a specific type of Claim, if specified) means: (a) any Claim (or a portion thereof) as to which no action to dispute, disallow, deny or otherwise limit recovery with respect thereto, or alter the priority thereof (including a claim objection), has been timely commenced within the applicable period of limitation fixed by this Plan or applicable law, or, if an action to dispute, disallow, deny, equitably subordinate or otherwise limit recovery with respect thereto, or alter priority thereof, has been timely commenced, to the extent such Claim has been allowed (whether in whole or in part) by a Final Order of a court of competent jurisdiction with respect to the subject matter; or (b) any Claim or portion thereof that is allowed (i) in any contract, instrument, or other agreement entered into in connection with the Plan, (ii) pursuant to the terms of the Plan, (iii) by

---

[2]    All capitalized terms used but not defined herein have the meanings set forth in Article I.

Final Order of the Bankruptcy Court, or (iv) with respect to an Administrative Expense Claim only (x) that was incurred by the Debtor in the ordinary course of business during the Chapter 11 Case to the extent due and owing without defense, offset, recoupment or counterclaim of any kind, and (y) that is not otherwise disputed.

**1.6** ***Amended Constituent Documents*** means, on or after the Effective Date, collectively, the New LLC Agreement, any amended and restated certificate of formation or other organizational document, as applicable, of Reorganized TSE, substantially final forms of which will be filed as part of the Plan Supplement.

**1.7** ***Avoidance Actions*** means any and all avoidance, recovery, subordination or other claims, actions or remedies that may be brought by or on behalf of the Debtor or its Estate or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including actions or remedies under sections 502, 510, 542, 544, 545, 547 through and including 553 and 724(a) of the Bankruptcy Code.

**1.8** ***Backstop Agreement*** means that certain letter agreement, dated as of July 29, 2020, between Cobra and the Prepetition Secured Parties (as defined in the Cash Collateral Order) regarding Settlement Letter of Credit; Backstop of Post-Petition Costs and Expenses.

**1.9** ***Ballot*** means the form approved by the Bankruptcy Court and distributed to holders of impaired Claims entitled to vote on the Plan to be used to indicate their acceptance or rejection of the Plan.

**1.10** ***Bankruptcy Code*** means title 11 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case.

**1.11** ***Bankruptcy Court*** means the United States Bankruptcy Court for the District of Delaware, or any other court exercising competent jurisdiction over the Chapter 11 Case or any proceeding therein.

**1.12** ***Bankruptcy Rules*** means the Federal Rules of Bankruptcy Procedure, as promulgated by the Supreme Court of the United States under section 2075 of title 28 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Case, and any local rules of the Bankruptcy Court.

**1.13** ***Business Day*** means any day other than a Saturday, Sunday or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

**1.14** ***Cash*** means the legal currency of the United States and equivalents thereof.

**1.15** ***Cash Collateral*** has the meaning set forth in section 363(a) of the Bankruptcy Code.

**1.16** ***Cash Collateral Order*** means, collectively, the interim and final orders authorizing the Debtor's use of Cash Collateral [Docket Nos. __ and __].

**1.17**    ***Causes of Action*** means any claims, interests, damages, remedies, causes of action, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise.  Causes of Action also include: (i) all rights of setoff, counterclaim, or recoupment and claims under contracts or for breaches of duties imposed by law; (ii) the right to object to or otherwise contest Claims or equity interests; (iii) Avoidance Actions and any and all claims pursuant to sections 362, 510, 542, 543, 544 through 550, or 553 of the Bankruptcy Code; and (iv) such claims and defenses as fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code.

**1.18**    ***Chapter 11 Case*** means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date in the Bankruptcy Court and captioned *In re Tonopah Solar Energy, LLC*, Case No. 20-11884 (KBO).

**1.19**    ***Claim*** means any "claim" as defined in section 101(5) of the Bankruptcy Code against the Debtor or property of the Debtor, including any Claim arising after the Petition Date.

**1.20**    ***Claims Agent*** means Epiq Corporate Restructuring, LLC, or any other entity approved by the Bankruptcy Court to act as the Debtor's claims and noticing agent pursuant to 28 U.S.C. §156(c).

**1.21**    ***Claims Objection Deadline*** means 11:59 p.m. (prevailing Eastern Time) on the ~~365th~~ 180th calendar day after the Effective Date, subject to further extensions and/or exceptions as may be ordered by the Bankruptcy Court.

**1.22**    ***Class*** means each category of Claims or Interests established under Article IV of the Plan pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.

**1.23**    ***Cobra*** means, collectively, ACS Servicios Comunicaciones y Energía S.L., Cobra Thermosolar Plants, Inc. and Cobra Energy Investment, LLC.

**1.24**    ***Cobra Backstop Letter of Credit*** means, collectively, the Settlement Letter of Credit and the Final Letter of Credit (each as defined in the Backstop Agreement).

**1.25**    ***Cobra Designee*** means an Affiliate of Cobra designated by Cobra in writing prior to the Effective Date and reasonably acceptable to the Debtor.

**1.26**    ***Collateral*** means any property or interest in property of the Estate subject to a Lien to secure the payment or performance of a Claim, which Lien has not been avoided or is not subject to avoidance under the Bankruptcy Code or otherwise invalid under the Bankruptcy Code or applicable state law.

**1.27**    ***Collateral Agency Agreement*** means that Collateral Agency And Accounts Agreement, dated as of September 23, 2011 by and among (i) Tonopah Solar Energy, LLC, a limited liability

company established in the State of Delaware; (ii) the U.S. Department of Energy, acting by and through the Secretary of Energy, as loan servicer; and (iii) PNC Bank, National Association, a national banking association, as the collateral agent for the Secured Parties (in such capacity, together with its successors and permitted assigns).

**1.28** *Confirmation Date* means the date on which the Court enters the Confirmation Order on the docket of the Chapter 11 Case.

**1.29** *Confirmation Hearing* means a hearing to be held by the Bankruptcy Court regarding confirmation of this Plan, as such hearing may be adjourned or continued from time to time.

**1.30** *Confirmation Order* means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Debtor, Cobra and DOE.

**1.31** *Control* (including the terms "controlling," "controlled by," and "under common control with") means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Person, whether through the ownership of an equity interest, by contract, or otherwise.

**1.32** *Crescent Dunes Solar Energy Project* means the 110-MW concentrating solar power project near Tonopah, Nevada, including the funding, financing, refinancing, design, engineering, contracting, construction, operation, performance, management, function, maintenance, inspection, monitoring, testing, warranties and repairs of the project.

**1.33** *Cure Amount* has the meaning set forth in Section 10.3(a) of this Plan.

**1.34** *Cure Dispute* has the meaning set forth in Section 10.3(c) of this Plan.

**1.35** *Cure Schedule* has the meaning set forth in Section 10.3(b) of this Plan.

**1.36** *D&O Liability Insurance Policies* means all insurance policies for directors', managers' and officers' liability (including employment practices liability and fiduciary liability) maintained by the Debtor prior to the Effective Date, including as such policies may extend to employees, and any such policies that are "tail" policies.

**1.37** *Debtor* means (a) prior to the Effective Date, Tonopah Solar Energy, LLC and (b) on and following the Effective Date, Reorganized TSE.

**1.38** *Debtor's Case Information Website* has the meaning set forth in Article I, Section C.

**1.39** *Reserved*.

**1.40** *Reserved.*

**1.41** *Disallowed* means a finding or conclusion of law of the Bankruptcy Court in a Final Order, or provision in this Plan or the Confirmation Order, disallowing a Claim.

26972239.1

**1.42**  *Disbursing Agent* means, as applicable, the Debtor or the entity designated by the Debtor to distribute the Plan Consideration.

**1.43**  *Disclosure Statement* means the disclosure statement that relates to this Plan, including all exhibits and schedules annexed thereto or referred to therein (in each case, as it or they may be amended, modified, or supplemented from time to time).

**1.44**  *Disclosure Statement Hearing* means a hearing held by the Bankruptcy Court to consider approval of the Disclosure Statement as containing adequate information as required by section 1125 of the Bankruptcy Code, as the same may be adjourned or continued from time to time.

**1.45**  *Disclosure Statement Order* means an order of the Bankruptcy Court approving the Disclosure Statement as having adequate information in accordance with section 1125 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Debtor, Cobra and DOE.

**1.46**  *Disputed* means, with respect to a Claim or Interest, that portion (including, when appropriate, the whole) of such Claim or Interest that: (a) is the subject of an objection or request for estimation filed in the Bankruptcy Court which has not been withdrawn or overruled by a Final Order; and/or (b) is otherwise disputed by the Debtor in accordance with applicable law or contract, which dispute has not been withdrawn, resolved or overruled by Final Order.  To the extent a Claim or Interest is held by a holder that is or may be liable to the Debtor or the Estate on account of a Cause of Action, such Claim or Interest shall be Disputed unless and until the Cause of Action has been settled or withdrawn or has been determined by a Final Order.

**1.47**  *Distribution Date* means any date on which Plan Distributions are made.

**1.48**  *Distribution Record Date* means, with respect to all Classes for which Plan Distributions are to be made, the Effective Date.

**1.49**  *DOE* means the United States Department of Energy, acting directly or through the United States Department of Justice.

**1.50**  *Effective Date* means the date specified by the Debtor in a notice filed with the Bankruptcy Court as the date on which the Plan shall take effect, which date shall be the first Business Day on which all of the conditions set forth in Section 11.1 of this Plan have been satisfied or waived in accordance with the terms hereof and no stay of the Confirmation Order is in effect.

**1.51**  *Entity* shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

**1.52**  *EPC Contract* means that certain Contract for the Engineering, Procurement and Construction of the net-110MW Nominal Capacity Thermosolar Electrical Generation Facility in Tonopah, Nevada, USA by and between the Debtor and Cobra Thermosolar Plants, Inc., dated as of September 20, 2011, as thereafter from time to time amended.

**1.53**    ***Estate*** means the estate created in the Chapter 11 Case pursuant to section 541 of the Bankruptcy Code.

**1.54**    ***Estimation Order*** means an order or orders of the Bankruptcy Court estimating for voting and/or distribution purposes (under section 502(c) of the Bankruptcy Code) the allowed amount of any Claim.  The defined term Estimation Order includes the Confirmation Order if the Confirmation Order grants the same relief that would have been granted in a separate Estimation Order.

**1.55**    ***Exculpated Parties*** means, except for Solar Reserve Parties, collectively and solely in their capacity as such, the Debtor and each of its current and former officers and managers (<u>provided</u>, that a former officer and/or manager shall only be an Exculpated Party if such officer or manager served in such capacity as of the Petition Date), principals, members, partners, employees, agents, advisory board members, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and all other retained Professional Persons.

**1.56**    ***Existing Interests*** means all existing Interests that are outstanding immediately prior to the Effective Date.

**1.57**    ***Exit Contingent Note*** means a contingent promissory note in the aggregate principal amount of $100 million, and related letter agreement,  the final forms of which shall be contained in the Plan Supplement in form and substance acceptable to the Debtor, Cobra, and DOE.  The payments under the Exit Contingent Note shall be guaranteed by Cobra.

**1.58**    ***Exit Contingent Note Guarantee*** means a guarantee agreement, the final form of which shall be contained in the Plan Supplement in form and substance acceptable to the Debtor, Cobra and DOE, pursuant to which Cobra unconditionally guarantees Reorganized TSE's obligations to DOE under the Exit Contingent Note.

**1.59**    ***Exit Credit Facility*** means, collectively, (i) a $100 million first lien term loan and (ii) an up to $50 million working capital facility, made pursuant to the Exit Credit Facility Agreement.

**1.60**    ***Exit Credit Facility Agent*** means the entity, if any, that serves as the administrative, collateral, and/or other agent under the Exit Credit Facility Agreement.

**1.61**    ***Exit Credit Facility Agreement*** means that certain credit agreement (as amended, modified or supplemented from time to time) in respect of the Exit Credit Facility by and among Reorganized TSE and Cobra (or a Cobra Designee), a copy of which shall be contained in the Plan Supplement in form and substance acceptable to the Debtor and Cobra.  The principal terms of the Exit Credit Facility Agreement are set forth on Schedule A hereto.

**1.62**    ***Exit Credit Facility Documents*** means the Exit Credit Facility Agreement and all other related agreements, notes, certificates, documents, and instruments, and all exhibits, schedules, and annexes thereto entered into in connection with the Exit Credit Facility Agreement, with terms and conditions acceptable to the Debtor and Cobra (in each case, as amended, modified, or supplemented from time to time).

**1.63**    *Fee Escrow Account* means an interest-bearing account in an amount equal to the total estimated amount of unpaid Professional Fee Claims and funded by the Debtor on the Effective Date.

**1.64**    *Final Order* means an order, ruling or judgment of the Bankruptcy Court or in the applicable court of competent jurisdiction, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for certiorari, or other proceeding for a new trial, reargument, or rehearing shall then be pending or (ii) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari, or move for a new trial, reargument, or rehearing shall have expired; provided, that no order or judgment shall fail to be a Final Order solely because of the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure has been or may be filed with respect to such order or judgment; provided, further, that no order or judgment shall fail to be a Final Order solely because of the susceptibility of a Claim to a challenge under section 502(j) of the Bankruptcy Code.

**1.65**    *General Unsecured Claim* means any Claim other than: (a) a Professional Fee Claim; (b) a Prepetition Note Claim; (c) U.S. Trustee Fees; (d) an Administrative Expense Claim; (e) a Priority Tax Claim; (f) a Priority Non-Tax Claim; and (g) an Other Secured Claim.

**1.66**    *Governmental Unit* means a "governmental unit" as defined in section 101(27) of the Bankruptcy Code.

**1.67**    *ICC Arbitration* means the arbitration pending before the Arbitral Tribunal constituted under the Rules of Arbitration of the International Court of Arbitration of the International Chamber of Commerce, captioned Cobra Thermosolar Plants, Inc. (USA) v. Tonopah Solar Energy, LLC (USA), Case No. 23247/MK.

**1.68**    *Impaired* means, when used in reference to a Class, any Class that is impaired within the meaning of section 1124 of the Bankruptcy Code.

**1.69**    *Indemnification Escrow Account* means an interest-bearing account in an amount equal to $2.5 million, funded by the Debtor on the Effective Date, for the purpose of satisfying the Debtor's obligations under Section 10.7 of this Plan.

**1.70**    *Indemnification Obligations* means any obligation of the Debtor to indemnify managers, officers or employees of the Debtor who served in such capacity and were employed on or after the Petition Date with respect to or based upon any act or omission taken or omitted in any of such capacities, or for or on behalf of the Debtor, whether pursuant to agreement, the Debtor's certificate of formation, operating agreement, limited liability company agreement, or similar corporate or other documents or other applicable contract or law in effect as of the Effective Date.

**1.71**    *Interest* means (i) the interest (whether legal, equitable, contractual or otherwise) of any holders of any class of equity securities of the Debtor, represented by shares of common or preferred stock, limited liability company interests, limited partnership interests or other instruments evidencing a direct or indirect ownership interest in the Debtor, whether or not certificated, transferable, voting or denominated "stock" or a similar security, or any option, warrant or right, contractual or otherwise, to acquire any such interest and (ii) any Claim arising from rescission of a purchase or sale of such interests or rights, or of an Affiliate of the Debtor, for damages arising from the purchase or sale of such interests or rights, or for the reimbursement or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim.

**1.72**    *Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

**1.73**    *Loan Guarantee Agreement* means that certain Loan Guarantee Agreement between the Debtor, as borrower, and DOE as Guarantor and Loan Servicer, dated as of September 23, 2011, as amended, modified, or supplemented from time to time.

**1.74**    *New Common Units* means new limited liability company interests in Reorganized TSE. There shall be 100 New Common Units in Reorganized TSE as of the Effective Date.

**1.75**    *New LLC Agreement* means the limited liability company agreement of Reorganized TSE, which shall be substantially in the form to be included in the Plan Supplement.

**1.76**    *New O&M Agreement* means the new operation and maintenance agreement attached to the RSA.

**1.77**    *Other Secured Claim* means any Secured Claim against the Debtor other than a Prepetition Note Claim.

**1.78**    *Person* means any individual, corporation, partnership, association, indenture trustee, limited liability company, cooperative, organization, joint stock company, joint venture, estate, fund, trust, unincorporated organization, Governmental Unit or any political subdivision thereof, or any other entity or organization of whatever nature.

**1.79**    *Petition Date* means July 30, 2020.

**1.80**    *Plan* means this chapter 11 plan proposed by the Debtor, including the Plan Supplement, all applicable exhibits, supplements, appendices and schedules hereto and to the Plan Supplement, either in its present form or as the same may be altered, amended or modified from time to time in accordance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the terms hereof.

**1.81**    *Plan Consideration* means, with respect to any Class of Claims entitled to distributions under this Plan, one or more of Cash, New Common Units, or rights and obligations under and with respect to the Exit Credit Facility, the Exit Contingent Note, or the Exit Contingent Note Guarantee as the case may be.

**1.82** *Plan Distribution* means the distribution of Plan Consideration under the Plan.

**1.83** *Plan Documents* means the applicable documents, other than the Plan, to be executed, delivered, assumed, and/or performed in connection with the consummation of the Plan, including the Exit Credit Facility Documents, the Exit Contingent Note, the Exit Contingent Note Guarantee, the Amended Constituent Documents, the documents to be included in the Plan Supplement and any and all exhibits to the Plan and the Disclosure Statement, each of which shall be in form and substance acceptable to the Debtor, Cobra, and DOE.

**1.84** *Plan Supplement* means the supplemental appendix to this Plan (as may be amended, modified and/or supplemented) which the Debtor shall file by seven (7) days prior to the deadline to vote to accept or reject this Plan (provided that the Debtor may amend, supplement, or otherwise modify the Plan Supplement prior to the Confirmation Hearing and/or in accordance with the Plan), which may contain, among other things, draft forms, signed copies, or summaries of material terms, as the case may be, of the following: (a) Amended Constituent Documents; (b) the list of proposed officers and managers of Reorganized TSE; (c) the Schedule of Rejected Contracts and Leases; (d) the Exit Credit Facility Agreement; (e) the Exit Contingent Note; (f) the Exit Contingent Note Guarantee; (g) the New O&M Agreement; (h) form of Confirmation Order; (i) the RSA; (j) the Cobra Backstop Letter of Credit; (k) amendment no. 4 to the EPC Contract; (l) the Backstop Agreement; and (m) any additional documents filed with the Bankruptcy Court before the Effective Date as additional Plan Documents and/or amendments to the Plan Supplement, each of which shall be in form and substance acceptable to the Debtor and Cobra.

**1.85** *Prepetition Collateral Agent* means PNC Bank, National Association (d/b/a Midland Loan Services, a division of PNC Bank, National Association), in its capacity as collateral agent under the Collateral Agency Agreement.

**1.86** *Prepetition Note* means that certain Future Advance Promissory Note No. 2 in the original principal amount of $455,693,000 payable to the Federal Financing Bank (as may be amended, modified, or supplemented from time to time).

**1.87** *Prepetition Note Claim* means any Claim or Cause of Action arising under the Prepetition Note and the Prepetition Note Purchase Agreement, the Loan Guarantee Agreement, and any other Prepetition Note Financing Documents or Prepetition Security Documents.  The Prepetition Note Claims are Allowed Claims under the Plan.

**1.88** *Prepetition Note Financing Documents* means "Financing Documents" as such term is defined in the Loan Guarantee Agreement.

**1.89** *Prepetition Note Purchase Agreement* means that certain Note Purchase Agreement, dated September 23, 2011, among the Company, the Federal Financing Bank, and DOE.

**1.90** *Prepetition Security Documents* means the "Security Documents," as defined in the Loan Guarantee Agreement.

-13-

**1.91**    ***Priority Non-Tax Claim*** means any Claim, other than an Administrative Expense Claim, a Professional Fee Claim, a Priority Tax Claim, entitled to priority in payment as specified in section 507(a) of the Bankruptcy Code.

**1.92**    ***Priority Tax Claim*** means any Claim of a Governmental Unit of the kind entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

**1.93**    ***Professional Fee Claims*** means an Administrative Expense Claim of a Professional Person against the Debtor for compensation for services rendered or reimbursement of costs, expenses or other charges and disbursements incurred during the period from the Petition Date up to, and including, the Effective Date.

**1.94**    ***Professional Person(s)*** means all Persons retained by order of the Bankruptcy Court in connection with the Chapter 11 Case, pursuant to sections 327 or 328 of the Bankruptcy Code, and including any professional or other Person seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to sections 503(b)(3) or 503(b)(4) of the Bankruptcy Code, excluding any ordinary course professionals retained pursuant to an order of the Bankruptcy Court or otherwise.

**1.95**    ***Released Parties*** means, except for Solar Reserve Parties (unless such Solar Reserve Parties ~~do not~~ affirmatively opt ~~out of~~ to grant the releases provided by the Plan by checking the box on the applicable notice of non-voting status indicating that they ~~opt not to~~ grant the releases provided in the Plan), (a) the Debtor, (b) Cobra, (c) the Prepetition Collateral Agent, (d) the Third Party Releasing Parties, and (e) each of the foregoing's respective current and former parents, Affiliates and subsidiaries~~, and their current and former parents', Affiliates' and subsidiaries' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly)~~, predecessors, successors, and assigns, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

**1.96**    ***Reorganized TSE*** means Tonopah Solar Energy, LLC or any successor thereto by merger, consolidation, or otherwise, on and after the Effective Date, which, for the avoidance of doubt, shall be a limited liability company.

**1.97**    ***"RSA"*** means that certain *Restructuring Support Agreement*, dated as of July 29, 2020, by and between the Debtor and Cobra.

**1.98**    ***Schedule of Rejected Contracts and Leases*** means a schedule of the contracts and leases to be rejected by the Debtor pursuant to section 365 of the Bankruptcy Code and Article X hereof, which may be the Cure Schedule.  The Schedule of Rejected Contracts and Leases shall be filed as part of the Plan Supplement and may be amended from time to time, and shall be acceptable to the Debtor and Cobra.

**1.99    *Secured Claim*** means a Claim: (a) that is secured by a valid, perfected and enforceable Lien on Collateral, to the extent of the value of the Claim holder's interest in such Collateral as of the Confirmation Date; or (b) to the extent that the holder thereof has a valid right of setoff pursuant to section 553 of the Bankruptcy Code.

**1.100    *Secured Parties*** shall have the meaning ascribed to such term in the Collateral Agency Agreement.

**1.101    *Securities Act*** means the Securities Act of 1933, as amended and the Exchange Act of 1934, as amended.

**1.102    *Solar Reserve Parties*** means SolarReserve CSP Finance, LLC and SolarReserve CSP Holdings, LLC and their respective Affiliates, shareholders, successors and assigns, current and former officers and managers, principals, members, partners, managers, employees, agents, advisory board members, advisors and professionals, and such other persons and entities identified in the Plan Supplement.

**1.103    *Third Party Releasing Parties*** means, collectively, all Persons with a Claim, including a Cause of Action, against and/or Interest in the Debtor or related to the Crescent Dunes Solar Energy Project who (i) are deemed to accept the Plan and who ~~do not~~ affirmatively opt ~~out of~~ in to the releases provided by the Plan by checking the box on the applicable notice of non-voting status indicating that they opt ~~not~~ to grant the releases provided in the Plan (provided, that Cobra and its Affiliates shall ~~not be entitled to opt out of~~ be deemed to consent to such releases), and (ii) are deemed to reject the Plan and who ~~do not~~ affirmatively opt ~~out of~~ in to the releases provided by the Plan by checking the box on the applicable notice of non-voting status indicating that they opt ~~not~~ to grant the releases provided in the Plan, and (iii) each of the foregoing's respective current and former parents, Affiliates and subsidiaries~~, and their current and former parents', Affiliates' and subsidiaries' current and former directors, managers, officers, equity holders (regardless of whether such interests are held directly or indirectly)~~, predecessors, successors, and assigns, and each of their respective current and former equity holders, officers, directors, managers, principals, members, employees, agents, advisory board members, financial advisors, partners, attorneys, accountants, managed accounts or funds, management companies, fund advisors, investment bankers, consultants, representatives, and other professionals, each in their capacity as such.

**1.104    *Unimpaired*** means any Claim or Interest that is not Impaired.

**1.105    *U.S. Trustee*** means the United States Trustee for Region 3.

**1.106    *U.S. Trustee Fees*** means fees arising under 28 U.S.C. § 1930(a)(6) and, to the extent applicable, accrued interest thereon arising under 31 U.S.C. § 3717.

### B.    Interpretation; Application of Definitions and Rules of Construction.

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan.  The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to this Plan as a whole and not to any

26972239.1

particular section, subsection, or clause contained therein.  Whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural.  Whenever this Plan uses the term "including," such reference will be deemed to mean "including, without limitation."  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.  Except for section 102(5) of the Bankruptcy Code, the rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of this Plan.  The captions and headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  Any reference to an entity as a holder of a Claim or Interest includes that entity's successors and assigns.

### C.    Appendices and Plan Documents.

All Plan Documents and appendices to the Plan are incorporated into the Plan by reference and are a part of the Plan as if set forth in full herein.  The documents contained in the exhibits and Plan Supplement shall be approved by the Bankruptcy Court pursuant to the Confirmation Order.  Holders of Claims and Interests may inspect a copy of the Plan Documents, once filed, in the Office of the Clerk of the Bankruptcy Court during normal business hours, or via the Claims Agent's website at https://dm.epiq11.com/tonopah (the "***Debtor's Case Information Website***") or obtain a copy of any of the Plan Documents by a written request sent to the Claims Agent at the following address:

> Tonopah Solar Energy, LLC
> c/o Epiq Corporate Restructuring, LLC
> P.O. Box 4422
> Beaverton, OR 97076-4422
> Toll-Free U.S. and Canada Phone:  (866) 897-6433
> International Phone:  (646) 282-2500

## ARTICLE II.

## CERTAIN INTER-CREDITOR AND INTER-DEBTOR ISSUES

### 2.1.    *Settlement of Certain Inter-Creditor Issues.*

~~Pursuant to Bankruptcy Rule 9019 and in~~ In consideration for the Plan Distributions and other benefits provided under the Plan, the treatment of Claims and Interests under this Plan represents, among other things, the settlement and compromise of certain potential inter-creditor disputes.

## ARTICLE III.

## ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS, U.S. TRUSTEE FEES AND PRIORITY TAX CLAIMS

All Claims and Interests, except Administrative Expense Claims, Professional Fee Claims, ~~U.S. Trustee Fees~~ fees owed pursuant to 28 U.S.C § 1930 and Priority Tax Claims, are placed in the Classes set forth in Article IV below.  In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims, Professional Fee Claims, U.S. Trustee Fees and Priority Tax Claims have not been classified, and the holders thereof are not entitled to vote on this Plan.  A Claim or Interest is placed in a particular Class only to the extent that such Claim or Interest falls within the description of that Class and is classified in other Classes to the extent that any portion of the Claim or Interest falls within the description of such other Classes.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation and distribution under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code.  However, a Claim or Interest is placed in a particular Class for the purpose of receiving Plan Distributions only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest and has not been paid, released or otherwise settled prior to the Effective Date.

3.1.    ***Administrative Expense Claims.***

(a)    <u>Time for Filing Administrative Expense Claims</u>.

The holder of an Administrative Expense Claim, other than the holder of:

(i)    an Administrative Expense Claim that has been Allowed on or before the Effective Date;

(ii)    an Administrative Expense Claim for an expense or liability incurred and payable in the ordinary course of business by the Debtor;

(iii)    an Administrative Expense Claim on account of fees and expenses incurred on or after the Petition Date by ordinary course professionals retained by the Debtor pursuant to an order of the Bankruptcy Court;

(iv)    a Claim for adequate protection arising under the Cash Collateral Order; or

(v)    a claim for Cure Amounts

(and, for the avoidance of doubt, other than a holder of a Professional Fee Claim, a holder of a claim arising pursuant to 11 U.S.C. § 503(b)(1)(D), or with respect to ~~U.S~~fees owed pursuant to 28 U.S.C. ~~Trustee Fees~~§ 1930) must file with the Bankruptcy Court and serve on the Debtor, the Claims Agent, and the U.S. Trustee, proof of such Administrative Expense Claim **within thirty (30) days after the Effective Date** (the "***Administrative Bar Date***").  Such proof of Administrative Expense Claim must include at a minimum: (i) the name of the Debtor and the exact amount asserted to be owed by the Debtor; (ii) the name of the holder of the Administrative Expense Claim; (iii) the asserted amount of the Administrative Expense Claim; (iv) the basis of

-17-

the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim. **FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED AND DISCHARGED.** A notice setting forth the Administrative Bar Date will be (i) filed on the Bankruptcy Court's docket and served with the notice of the Effective Date and (ii) posted on the Debtor's Case Information Website. No other notice of the Administrative Bar Date will be provided.

(b)  Treatment of Administrative Expense Claims.

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, or as otherwise expressly provided herein, on the later of (i) the Effective Date, or as soon thereafter as is reasonably practicable, or (ii) the date on which an Administrative Expense Claim is Allowed, the holder of such Allowed Administrative Expense Claim shall receive Cash from the Debtor in an amount equal to such Allowed Claim; provided, however, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtor, as debtor in possession, shall be paid by the Debtor in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any orders or agreements governing, instruments evidencing, or other documents relating to, such liabilities.

Claims for adequate protection under the Cash Collateral Order shall be deemed Allowed Administrative Expense Claims to the extent payable under the Cash Collateral Order or this Plan, without the necessity of filing a proof of claim with respect thereto, and shall be paid in full on the Effective Date or as is reasonably practicable as set forth herein without the need to file a proof of such Claims with the Bankruptcy Court in accordance with Section 3.2 hereof and without further order of the Bankruptcy Court.

**3.2.  *Professional Fee Claims.***

Except to the extent that the applicable holder of an Allowed Professional Fee Claim agrees to less favorable treatment with the Debtor, or as otherwise expressly set forth in this Plan, each holder of a Professional Fee Claim shall be paid in full in Cash pursuant to this Section 3.2.

(a)  Fee Applications

All requests for payment of Professional Fee Claims must be filed with the Bankruptcy Court by the date that is 60 calendar days after the Effective Date; provided that if any Professional Person is unable to file its own request with the Bankruptcy Court, such Professional Person may deliver an original, executed copy and an electronic copy to the Debtor's attorneys and the Debtor at least three Business Days before the deadline, and the Debtor's attorneys shall file such request with the Bankruptcy Court. The objection deadline relating to a request for payment of Professional Fee Claims shall be 4:00 p.m. (prevailing Eastern Time) on the date that is 30 days after filing such request, and a hearing on such request, if necessary, shall be held no later than 30 calendar days after the objection deadline.

26972239.1

Distributions on account of Allowed Professional Fee Claims shall be made as soon as reasonably practicable after such Claims become Allowed.

(b)    Post-Effective Date Fees

Upon the Effective Date, any requirement that Professional Persons comply with sections 327 through 331 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date shall terminate, and the Debtor may employ and pay all Professional Persons without any further notice to, action by or order or approval of the Bankruptcy Court or any other party.

(c)    Fee Escrow Account

On the Effective Date, the Debtor shall establish and fund the Fee Escrow Account. The Debtor shall fund the Fee Escrow Account with Cash equal to the Debtor's good faith estimate of the Allowed Professional Fee Claims. Funds held in the Fee Escrow Account shall not be considered property of the Debtor's Estate or property of the Debtor, but shall revert to the Debtor only after all Allowed Professional Fee Claims have been paid in full. Fees owing to the applicable holder of an Allowed Professional Fee Claim shall be paid in Cash to such holder from funds held in the Fee Escrow Account when such Claims are Allowed by an order of the Bankruptcy Court or authorized to be paid under a Final Order authorizing interim compensation of Professional Persons; provided, that the Debtor's obligations with respect to Allowed Professional Fee Claims shall not be limited by nor deemed limited to the balance of funds held in the Fee Escrow Account. To the extent that funds held in the Fee Escrow Account are insufficient to satisfy the amount of accrued Allowed Professional Fee Claims, each holder of an Allowed Professional Fee Claim shall have an Allowed Administrative Expense Claim for any such deficiency, which shall be satisfied in accordance with Section 3.2 of this Plan. No Liens, claims, or interests shall encumber the Fee Escrow Account in any way.

**3.3.    *U.S. Trustee Fees.***

The Debtor shall pay all outstanding U.S. Trustee Fees on an ongoing basis on the date such U.S. Trustee Fees become due, until such time as a final decree is entered closing the Chapter 11 Case, or the Chapter 11 Case is converted or dismissed, or the Bankruptcy Court orders otherwise.

**3.4.    *Priority Tax Claims.***

Except to the extent that the applicable holder of an Allowed Priority Tax Claim has been paid by the Debtor before the Effective Date, or the Debtor and such holder agree to less favorable treatment by the Debtor, each holder of an Allowed Priority Tax Claim shall receive, on account of such Allowed Priority Tax Claim, at the option of the Debtor (a) payment in full in Cash made on or as soon as reasonably practicable after the later of the Effective Date and the first Distribution Date occurring at least 20 calendar days after the date such Claim is Allowed, (b) regular installment payments in accordance with section 1129(a)(9)(C) of the Bankruptcy Code or (c) such other amounts and in such other manner as

may be determined by the Bankruptcy Court to provide the holder of such Allowed Priority Tax Claim deferred Cash payments having a value, as of the Effective Date, equal to such Allowed Priority Tax Claim.

The Debtor shall have the right, in its sole discretion, to pay any Allowed Priority Tax Claim or any remaining balance of an Allowed Priority Tax Claim (together with accrued but unpaid interest) in full at any time on or after the Effective Date without premium or penalty.

## ARTICLE IV.
## CLASSIFICATION OF CLAIMS AND INTERESTS

**4.1.**   *Classification of Claims and Interests.*

The following table designates the Classes of Claims against and Interests in the Debtor, and specifies which Classes are: (a) impaired or unimpaired by this Plan; (b) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code; and (c) presumed to accept or reject this Plan.

| **Class** | **Designation** | **Impairment** | **Entitled to Vote** |
|---|---|---|---|
| Class 1 | Priority Non-Tax Claims | No | No |
| Class 2 | Other Secured Claims | No | No |
| Class 3 | Prepetition Note Claims | Yes | Yes |
| Class 4 | General Unsecured Claims | No | No |
| Class 5 | Existing Interests | Yes | No |

If a controversy arises regarding whether any Claim is properly classified under the Plan, the Bankruptcy Court shall, upon proper motion and notice, determine such controversy at the Confirmation Hearing. If the Bankruptcy Court finds that the classification of any Claim is improper, then such Claim shall be reclassified and the Ballot previously cast by the holder of such Claim (if any) shall be counted in, and the Claim shall receive the treatment prescribed in, the Class in which the Bankruptcy Court determines such Claim should have been classified, without the necessity of resoliciting any votes on the Plan.

**4.2.**   *Unimpaired Classes of Claims.*

The following Classes of Claims are unimpaired and, therefore, deemed to have accepted this Plan and are not entitled to vote on this Plan under section 1126(f) of the Bankruptcy Code:

(a)     Class 1: Class 1 consists of all Priority Non-Tax Claims.

(b)     Class 2: Class 2 consists of all Other Secured Claims.

(c)     Class 4: Class 4 consists of General Unsecured Claims.

-20-

**4.3.**    ***Impaired Classes of Claims.***

Class 3 consists of Prepetition Note Claims, is impaired and is entitled to vote on this Plan.  Class 5 consists of all Existing Interests, is impaired and is deemed to have rejected this Plan, and therefore, is not entitled to vote on this Plan under section 1126(g) of the Bankruptcy Code.

**4.4.**    ***Separate Classification of Other Secured Claims.***

Although all Other Secured Claims have been placed in one Class for purposes of nomenclature, each Other Secured Claim, to the extent secured by a Lien on Collateral different than that securing any additional Other Secured Claims, shall be treated as being in a separate sub-Class for the purpose of receiving Plan Distributions.

## ARTICLE V.
## TREATMENT OF CLAIMS AND INTERESTS

**5.1.**    ***Priority Non-Tax Claims (Class 1).***

(a)    <u>Treatment</u>: The legal, equitable and contractual rights of the holders of Priority Non-Tax Claims are unaltered by this Plan.  Except to the extent that a holder of an Allowed Priority Non-Tax Claim agrees to a different treatment, on the applicable Distribution Date, each holder of an Allowed Priority Non-Tax Claim shall receive Cash from the Debtor in an amount equal to such Allowed Claim.

(b)    <u>Voting</u>: The Priority Non-Tax Claims are not impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Priority Non-Tax Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Priority Non-Tax Claims.

**5.2.**    ***Other Secured Claims (Class 2).***

(a)    <u>Treatment</u>: The legal, equitable and contractual rights of the holders of Other Secured Claims are unaltered by this Plan.  Except to the extent that a holder of an Allowed Other Secured Claim agrees to a different treatment, on the Effective Date, or as soon as reasonably practicable thereafter, each holder of an Allowed Other Secured Claim shall each receive, subject to the terms of the Plan, in full and final satisfaction, settlement, release and discharge of its Allowed Other Secured Claim, at the election of the Debtor:

    (i)    Cash in an amount equal to such Allowed Other Secured Claim; or

    (ii)    such other treatment that will render such Other Secured Claim unimpaired pursuant to section 1124 of the Bankruptcy Code;

<u>provided</u>, <u>however</u>, that Other Secured Claims incurred by the Debtor in the ordinary course of business may be paid in the ordinary course of business in accordance with the terms and

conditions of any agreements relating thereto, in the discretion of the Debtor without further notice to or order of the Bankruptcy Court.

Each holder of an Allowed Other Secured Claim shall retain the Liens securing its Allowed Other Secured Claim as of the Effective Date until full and final satisfaction of such Allowed Other Secured Claim is made as provided herein.  On the full payment or other satisfaction of each Allowed Other Secured Claim in accordance with the Plan, the Liens securing such Allowed Other Secured Claim shall be deemed released, terminated and extinguished, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person.

(b)    Voting: The Other Secured Claims are not impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Other Secured Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed Other Secured Claims.

### 5.3.    *Prepetition Note Claims (Class 3).*

(a)    Treatment:  The Prepetition Note Claims shall be Allowed under the Plan and shall not be subject to any avoidance, reductions, setoff, offset, recoupment, recharacterization, subordination (whether equitable, contractual or otherwise), counterclaims, cross-claims, defenses, disallowance, impairment, objection or any other challenges under any applicable law or regulation by any Person.  On the Effective Date, DOE, as the holder of the Allowed Prepetition Note Claims, shall receive, subject to the terms of the Plan, in full and final satisfaction, settlement, release and discharge of its Allowed Prepetition Note Claims, (a) $200 million in Cash (which shall be satisfied by DOE by a draw on the Cobra Backstop Letter of Credit) and (b) all rights and obligations under the Exit Contingent Note.  On the Effective Date, the Debtor shall also pay in full in Cash all outstanding fees and expenses incurred by the Prepetition Collateral Agent to the extent due and owing under the Collateral Agency Agreement.

(b)    Upon payment of the $200 million in Cash provided in § 5.3(a) of this Plan, the delivery of the executed Exit Contingent Note to DOE, and the payment in full in Cash of all outstanding fees and expenses of the Prepetition Collateral Agent as provided in § 5.3(a) of the Plan: (i) the Loan Servicer (on DOE's behalf) shall conclusively be deemed to have provided written direction to the Prepetition Collateral Agent to release all Collateral it holds on behalf of the Secured Parties and to release all Liens thereon for the benefit of the Secured Parties; and (ii) the Loan Servicer shall conclusively be deemed to have certified to the Prepetition Collateral Agent that the Discharge Date under the Collateral Agency Agreement has occurred.  On the Effective Date, and upon (x) payment of the $200 Million in Cash provided in § 5.3(a) of the Plan, (y) the delivery of the executed Exit Contingent Note to DOE, and (z) payment of all outstanding fees and expenses of the Prepetition Collateral Agent in full in Cash as provided in § 5.3(a) of the Plan, the Prepetition Collateral Agent shall release to the Debtor all Collateral held for the benefit of the Secured Parties and any Liens on the Collateral held for the benefit of the Secured Parties.  The Debtor shall pay all reasonable fees and expenses incurred by the

Collateral Agent in complying with the previous sentence on or as soon as reasonably practicable after the Effective Date.  Upon the release of the Collateral held by the Prepetition Collateral Agent for the benefit of the Secured Parties and the release of all Liens on the Prepetition Collateral held for the benefit of the Secured Parties, the duties, responsibilities, and obligations of the Prepetition Collateral Agent under the Collateral Agency Agreement shall terminate.

(c)    <u>Voting</u>:  The Prepetition Note Claims are impaired Claims.  The holder of such Claims is entitled to vote to accept or reject the Plan, and the votes of such holder will be solicited with respect to such Prepetition Note Claims.

**5.4.    *General Unsecured Claims (Class 4).***

(a)    <u>Treatment</u>:  General Unsecured Claims are unimpaired Claims.  Except to the extent that a holder of a General Unsecured Claim agrees to different treatment, each holder of an Allowed General Unsecured Claim shall receive treatment that: (i) leaves unaltered the legal, equitable, or contractual rights to which the holder of such Allowed General Unsecured Claim is entitled; or (ii) otherwise leaves such Allowed General Unsecured Claim unimpaired pursuant to section 1124 of the Bankruptcy Code.

(b)    <u>Voting</u>:  The Allowed General Unsecured Claims are not impaired Claims.  In accordance with section 1126(f) of the Bankruptcy Code, the holders of Allowed General Unsecured Claims are conclusively presumed to accept this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Allowed General Unsecured Claims.

**5.5.    *Existing Interests (Class 5).***

(a)    <u>Treatment</u>:  Existing Interests shall be discharged, cancelled, released and extinguished, and holders thereof shall not receive or retain any distribution under the Plan on account of such Existing Interests.

(b)    <u>Voting</u>:  The Existing Interests are impaired Interests.  In accordance with section 1126(g) of the Bankruptcy Code, the holders of Existing Interests are conclusively presumed to reject this Plan and are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Existing Interests.

**ARTICLE VI.**

**ACCEPTANCE OR REJECTION OF
THE PLAN; EFFECT OF REJECTION BY ONE
<u>OR MORE CLASSES OF CLAIMS OR INTERESTS</u>**

**6.1.    *Class Acceptance Requirement.***

A Class of Claims that is impaired under the Plan shall have accepted the Plan if it is accepted by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of holders of the Allowed Claims in such Class that have voted on the Plan.

**6.2.    *Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code or "Cramdown."***

Because Class 5 is deemed to have rejected this Plan, the Debtor will request confirmation of this Plan, as it may be modified and amended from time to time, under section 1129(b) of the Bankruptcy Code with respect to such Class.  Subject to Sections 14.3 and 14.4 of this Plan, the Debtor reserves the right to revoke or withdraw this Plan or, if acceptable to the Debtor, Cobra and DOE, to alter, amend, or modify this Plan or, alter, amend, modify, revoke or withdraw any Plan Document, in order to satisfy the requirements of section 1129(b) of the Bankruptcy Code, if necessary.  Subject to Sections 14.3 and 14.4 of this Plan (including the consent and consultation rights set forth therein), the Debtor also reserves the right to request confirmation of the Plan, as it may be modified, supplemented or amended from time to time, with respect to any Class that affirmatively votes to reject the Plan.

**6.3.    *Elimination of Vacant Classes.***

Any Class of Claims or Interests that is impaired and is entitled to vote on the Plan that does not have a holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed as of the date of the deadline for voting to accept or reject the Plan shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan pursuant to section 1129(a)(8) of the Bankruptcy Code.

## ARTICLE VII.
## MEANS FOR IMPLEMENTATION

**7.1.    *Continued Existence and Vesting of Assets in Reorganized TSE.***

(a)    Except as otherwise provided in this Plan, the Debtor shall continue to exist after the Effective Date as Reorganized TSE in accordance with the laws of the State of Delaware and pursuant to the Amended Constituent Documents for the purposes of satisfying its obligations under the Plan and the continuation of its business.  On or after the Effective Date, Reorganized TSE, in its discretion, may take such action as permitted by applicable law and the Amended Constituent Documents as Reorganized TSE may determine is reasonable and appropriate.

(b)    Except as otherwise provided in this Plan, on and after the Effective Date, all property of the Estate, wherever located, including all claims, rights and Causes of Action, and any property, wherever located, acquired by the Debtor under or in connection with this Plan, shall vest in Reorganized TSE free and clear of all Claims, Liens, charges, other encumbrances and Interests.  On and after the Effective Date, Reorganized TSE may operate its business and may use, acquire and dispose of property, wherever located, and prosecute, compromise or settle any Claims (including any Administrative Expense Claims) and Causes of Action without supervision of or approval by the Bankruptcy Court and free and clear of any restrictions of the Bankruptcy Code or the Bankruptcy Rules other than restrictions expressly imposed by this Plan or the Confirmation Order.  Without limiting the foregoing, Reorganized TSE may pay the charges that it incurs on or after the Effective Date for Professional Persons'

fees, disbursements, expenses or related support services without application to the Bankruptcy Court.

(c)    On the Effective Date or as soon as reasonably practicable thereafter, Reorganized TSE may take all actions that may be necessary or appropriate to effectuate any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan, including: (1) the execution and delivery of appropriate agreements or other documents containing terms that are consistent with the terms of the Plan and that satisfy the requirements of applicable law and any other terms to which the applicable entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption or delegation of any asset, property, right, liability, debt or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable parties agree; (3) the filing of appropriate certificates or articles of formation, merger, consolidation, conversion, dissolution, or other organizational documents pursuant to applicable state law; and (4) all other actions that the applicable entities determine to be necessary or appropriate, including making filings or recordings that may be required by applicable law.

### 7.2.    *Issuance of New Common Units to Cobra*

In consideration for Cobra's commitments and undertakings under the Plan, the New Common Units shall be issued on the Effective Date and distributed to Cobra (or a Cobra Designee) on the Effective Date or as soon as practicable thereafter, in accordance with this Plan and the terms of the Amended Constituent Documents.  All of the New Common Units issuable in accordance with this Plan, when issued, shall be duly authorized, validly issued, fully paid, and non-assessable.  The issuance of the New Common Units is authorized without the need for any further limited liability company, or other similar action and without any further action by any holder of an Allowed Claim or Interest.

The New Common Units will not be listed on a national securities exchange, Reorganized TSE will not be a reporting company under the Securities Exchange Act, and Reorganized TSE shall not be required to and will not file reports with the SEC or any other governmental entity after the Effective Date.

### 7.3.    *Plan Value of New Common Units*

For purposes of this Plan, the New Common Units shall have an aggregate deemed value equal to $100 million.  Such deemed value is equal to the amount that will be drawn by DOE on the Cobra Backstop Letter of Credit pursuant to Section 5.3 of this Plan less the $100 million term loan component of the Exit Credit Facility.

### 7.4.    *Working Capital Commitment*

Under the Exit Credit Facility, Cobra (or a Cobra Designee) shall provide Reorganized TSE with up to $50 million to fund the working capital and other needs of Reorganized TSE.

### 7.5. *Exit Credit Facility Agreement, Exit Contingent Note*

On the Effective Date, Reorganized TSE shall be authorized to enter into the Exit Credit Facility Agreement, Exit Contingent Note, and the Amended Constituent Documents without the need for any further limited liability company or other similar action. The entry of the Confirmation Order shall be deemed approval of the Exit Credit Facility Agreement, Exit Contingent Note, and the Amended Constituent Documents, and authorization for Reorganized TSE to enter into and execute the Exit Credit Facility Agreement, Exit Contingent Note, and the Amended Constituent Documents requiring execution and delivery by Reorganized TSE.

The obligations arising under the Exit Credit Facility Documents shall be secured by a senior priority perfected security interest in substantially all present and after acquired property and proceeds thereof of Reorganized TSE, subject to any exceptions and materiality thresholds acceptable to Cobra, as lender under the Exit Credit Facility Agreement. The Debtor is authorized to make all filings and recordings and to obtain all governmental approvals and consents necessary or desirable to establish and further evidence perfection of any Liens and security interests granted to secure the obligations under the Exit Credit Facility Documents under the provisions of any applicable federal, state, provincial, or other law (whether domestic or foreign) (it being understood that perfection shall occur automatically by virtue of the occurrence of the Effective Date, and any such filings, recordings, approvals, and consents shall not be required), and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such Liens and security interests to third parties.

### 7.6. *Cancellation of Existing Securities and Agreements.*

Except for the purpose of evidencing a right to distribution under this Plan, and except as otherwise set forth herein, on the Effective Date, the Prepetition Note Documents shall be deemed cancelled, discharged and of no further force or effect. DOE, as holder of the Allowed Prepetition Note Claims, shall have no rights arising from or relating to such instruments, securities and other documentation or the cancellation thereof, except the rights provided for pursuant to this Plan.

### 7.7. *Cancellation of Liens Pursuant to Cash Collateral Order.*

On the Effective Date, the Cash Collateral Order, including the use of cash collateral thereunder, shall be terminated. All Liens and security interests granted to secure obligations pursuant to the Cash Collateral Order shall be terminated and of no further force or effect, without the need for further Court approval, action or order. Reorganized TSE shall be entitled to take any action necessary to effectuate the discharge of any Lien under the Cash Collateral Order.

### 7.8. *Board of Managers.*

(a)    On the Effective Date, the board of managers of Reorganized TSE shall consist of five (5) individuals selected by Cobra, who shall be reasonably acceptable to the Debtor, and identified in the Plan Supplement to be filed with the Bankruptcy Court.

-26-

(b)    Unless reappointed pursuant to Section 7.8(a) hereof, the members of the board of managers of the Debtor prior to the Effective Date shall have no continuing obligations to the Debtor in their capacities as such on and after the Effective Date and each such member shall be deemed to have resigned or shall otherwise cease to be a manager of the Debtor on the Effective Date.  Commencing on the Effective Date, each of the managers of Reorganized TSE shall serve pursuant to the terms of the Amended Constituent Documents and be replaced or removed in accordance therewith.

### 7.9.    *Organizational and Other Action.*

(a)    The Debtor shall serve on the U.S. Trustee quarterly reports of its disbursements until such time as a final decree is entered closing the Chapter 11 Case or the Chapter 11 Case is converted or dismissed, or the Bankruptcy Court orders otherwise.  ~~Any deadline for filing Administrative Expense Claims shall not apply to U.S. Trustee Fees.~~

(b)    On the Effective Date, the Amended Constituent Documents and any other applicable amended and restated limited liability company or other organizational documents of the Debtor shall be deemed authorized in all respects.

(c)    Any action under the Plan to be taken by or required of the Debtor, including the adoption or amendment of its certificate of formation, limited liability company agreement or other organizational document, the issuance of limited liability company membership interests, securities and instruments, or the selection of officers or managers, shall be authorized and approved in all respects, without any requirement of further action by the Debtor's equity holders, sole member, board of managers, or similar body, as applicable.

(d)    The Debtor shall be authorized to execute, deliver, file, and record such documents (including the Plan Documents), contracts, instruments, releases and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan, without the necessity of any further Bankruptcy Court, limited liability company, board or member approval or action.  In addition, the selection of the Persons who will serve as the initial managers, officers and managers of Reorganized TSE as of the Effective Date shall be deemed to have occurred and be effective on and after the Effective Date without any requirement of further action by the board of managers or equity holders of the applicable Reorganized TSE.

### 7.10.    *Comprehensive Settlement of Claims and Controversies.*

~~Pursuant to Bankruptcy Rule 9019 and in~~ In consideration for the Plan Distributions and other benefits provided under this Plan, the provisions of this Plan will constitute a good faith compromise and settlement of all Claims and Causes of Action relating to the rights that a holder of a Claim or Interest may have with respect to any Allowed Claim or Allowed Interest or any Plan Distribution on account thereof.  The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that all such compromises or settlements are: (a) in the best interest of the Debtor, its Estate and its property and stakeholders; and (b) fair, equitable and reasonable.

### 7.11.    *Transactions Authorized under Plan*

On and after the Effective Date, the Debtor and Reorganized TSE, as applicable, shall be authorized to take such actions as may be necessary or appropriate to implement the transactions contemplated by the Plan and the other Plan Documents.

### 7.12.    *Approval of Plan Documents*

The solicitation of votes with respect to the Plan shall be deemed a solicitation for the approval of the Plan Documents and all transactions contemplated hereunder.  Entry of the Confirmation Order shall constitute approval of the Plan Documents and such transactions.  On the Effective Date, the Debtor and Reorganized TSE, as applicable, shall be authorized to enter into, file, execute and/or deliver each of the Plan Documents and any other agreement or instrument issued in connection with any Plan Document without the necessity of any further limited liability company, board, member, manager, or similar action.

### 7.13.    *Dismissal of the ICC Arbitration*

Within three (3) Business Days of the Effective Date, Reorganized TSE and Cobra shall jointly request the dismissal with prejudice of the ICC Arbitration.

## ARTICLE VIII.

## DISTRIBUTIONS

### 8.1.    *Distributions.*

The Disbursing Agent shall make all Plan Distributions to the applicable holders of Allowed Claims in accordance with the terms of this Plan.

### 8.2.    *No Postpetition Interest on Claims.*

Unless otherwise specifically provided for in the Plan or Confirmation Order, or required by applicable bankruptcy law, postpetition interest shall not accrue or be paid on any Claims, and no holder of a Claim shall be entitled to interest accruing on such Claim on or after the Petition Date.

### 8.3.    *Date of Distributions.*

Unless otherwise provided herein, any Plan Distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon as reasonably practicable thereafter; provided, that the Debtor may utilize periodic Distribution Dates to the extent that use of a periodic Distribution Date does not delay payment of the Allowed Claim more than thirty (30) days.  In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

-28-

**8.4.** *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various lists of holders of Claims in each of the Classes, as maintained by the Debtor or its agents, shall be deemed closed and there shall be no further changes in the record holders of any of the Claims after the Distribution Record Date.  Neither the Debtor nor the Disbursing Agent shall have any obligation to recognize any transfer of Claims occurring after the close of business on the Distribution Record Date.  Additionally, with respect to payment of any Cure Amounts or any Cure Disputes in connection with the assumption and/or assignment of the Debtor's executory contracts and unexpired leases, neither the Debtor nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease, even if such non-Debtor party has sold, assigned or otherwise transferred its Claim for a Cure Amount.

**8.5.** *Disbursing Agent.*

(a)    <u>Powers of Disbursing Agent</u>.

The Disbursing Agent shall be empowered to: (i) effectuate all actions and execute all agreements, instruments, and other documents necessary to perform its duties under this Plan; (ii) make all applicable Plan Distributions or payments contemplated hereby; (iii) employ professionals to represent it with respect to its responsibilities; and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court (including any order issued after the Effective Date), pursuant to this Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(b)    <u>Expenses Incurred by the Disbursing Agent on or After the Effective Date</u>.

Except as otherwise ordered by the Bankruptcy Court, and subject to the written agreement of the Debtor, the amount of any reasonable and documented fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and expense reimbursement Claims (including reasonable attorney and other professional fees and expenses) of the Disbursing Agent shall be paid in Cash by the Debtor and will not be deducted from Plan Distributions made to holders of Allowed Claims by the Disbursing Agent.  The foregoing fees and expenses shall be paid in the ordinary course, upon presentation of invoices to the Debtor.

In the event that the Disbursing Agent and the Debtor are unable to resolve a dispute with respect to the payment of the Disbursing Agent's fees, costs and expenses, the Disbursing Agent may elect to submit any such dispute to the Bankruptcy Court for resolution.

(c)    <u>Bond</u>.

The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court and, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Debtor.  Furthermore, any such entity

required to give a bond shall notify the Bankruptcy Court and the U.S. Trustee in writing before terminating any such bond that is obtained.

(d)    Cooperation with Disbursing Agent.

The Debtor shall use all commercially reasonable efforts to provide the Disbursing Agent with the amount of Claims and the identity and addresses of holders of Claims, in each case, as set forth in the Debtor's books and records.  The Debtor will cooperate in good faith with the Disbursing Agent to comply with the withholding and reporting requirements outlined in Section 8.16 of this Plan.

**8.6.    *Delivery of Distributions.***

Subject to the provisions contained in this Article VIII, the Disbursing Agent will issue, or cause to be issued, and authenticate, as applicable, all Plan Consideration, and subject to Bankruptcy Rule 9010 and except as provided in Section 8.3 of this Plan, make all Plan Distributions or payments to any holder of an Allowed Claim as and when required by this Plan at: (a) in the case of DOE, the address and in the manner notified to the Debtor by DOE in writing prior to the Effective Date; (b) the address of such holder on the books and records of the Debtor or its agents; or (c) the address in any written notice of address change delivered to the Debtor or the Disbursing Agent, including any addresses included on any filed proofs of Claim or transfers of Claim filed with the Bankruptcy Court.  In the event that any Plan Distribution to any holder is returned as undeliverable, no distribution or payment to such holder shall be made unless and until the Disbursing Agent has been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter such Plan Distribution shall be made to such holder without interest; provided, however, such Plan Distributions or payments shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of the later of 180 days from: (i) the Effective Date; and (ii) the first Distribution Date after such holder's Claim is first Allowed.

**8.7.    *Satisfaction of Claims.***

Unless otherwise specifically provided herein, any Plan Distributions and deliveries to be made on account of Allowed Claims hereunder shall be in complete settlement, satisfaction and discharge of such Allowed Claims.

**8.8.    *Manner of Payment Under Plan.***

Except as specifically provided herein, at the option of the Debtor, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements or customary practices of the Debtor.

**8.9.    *No Distribution in Excess of Amount of Allowed Claim.***

Notwithstanding anything to the contrary herein, no holder of an Allowed Claim shall, on account of such Allowed Claim, receive a Plan Distribution of a value in excess of the Allowed amount of such Claim.

**8.10.**    *Exemption from Securities Laws.*

Pursuant to section 4(a)(2) of the Securities Act and Rule 506 of Regulation D promulgated thereunder, the issuance of the New Common Units is exempt from the registration requirements of the Securities Act and any State or local law requiring registration for offer or sale of a security.

**8.11.**    *Setoffs and Recoupments.*

Except as expressly provided in this Plan, the Debtor may, but shall not be required to, pursuant to sections 553 and 558 of the Bankruptcy Code or applicable non-bankruptcy law, setoff and/or recoup against any Allowed Claim and any Plan Distributions to be made on account of any Allowed Claim, any and all claims, rights and Causes of Action of any nature that such Debtor may hold against the holder of such Allowed Claim pursuant to the Bankruptcy Code or applicable non-bankruptcy law; provided, however, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver, abandonment or release by the Debtor or its successor of any and all claims, rights and Causes of Action that such Debtor or its successor may possess against the applicable holder; provided further, that, for the avoidance of doubt, the Debtor may not setoff and/or recoup any Allowed Claim, right, or Cause of Action that the Debtor may hold against Allowed Prepetition Note Claims or the Prepetition Collateral Agent.

**8.12.**    *Withholding and Reporting Requirements.*

In connection with this Plan and all Plan Distributions hereunder, the Debtor shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Plan Distributions hereunder shall be subject to any such withholding and reporting requirements.  The Debtor shall be authorized to take any and all actions that may be necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of any Plan Distribution to generate sufficient funds to pay applicable withholding taxes or establishing any other mechanisms the Debtor or the Disbursing Agent believe are reasonable and appropriate, including requiring a holder of a Claim to submit appropriate tax and withholding certifications.  Notwithstanding any other provision of this Plan: (a) each holder of an Allowed Claim that is to receive a Plan Distribution under this Plan shall have sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding and other tax obligations on account of such distribution; and (b) no Plan Distributions shall be required to be made to or on behalf of such holder pursuant to this Plan unless and until such holder has made arrangements satisfactory to the Debtor for the payment and satisfaction of such tax obligations or has, to the Debtor's satisfaction, established an exemption therefrom.

## ARTICLE IX.
## PROCEDURES FOR RESOLVING CLAIMS

**9.1.    *Disputed Claims.***

Notwithstanding section 502(a) of the Bankruptcy Code, and in light of the unimpaired status of all Allowed General Unsecured Claims under the Plan, except for holders of claims for rejection damages, which must file proofs of claim pursuant to Section 10.2 of the Plan, holders of Allowed General Unsecured Claims do not need to file proofs of Claim with the Bankruptcy Court, and the Debtor and the holders of Allowed General Unsecured Claims shall determine, adjudicate, and resolve any disputes over the validity and amounts of such Allowed General Unsecured Claims in the ordinary course of business; *provided*, that (unless expressly waived pursuant to the Plan) the Allowed amount of such Allowed General Unsecured Claims shall be subject to and shall not exceed the limitations under or maximum amounts permitted by the Bankruptcy Code, including sections 502 or 503 of the Bankruptcy Code, to the extent applicable.  If a holder of an Allowed General Unsecured Claim elects to file a proof of Claim with the Bankruptcy Court, such holder shall be deemed to have consented to the jurisdiction of the Bankruptcy Court for all purposes with respect to such Allowed General Unsecured Claim, and the Bankruptcy Court shall retain nonexclusive jurisdiction over all such Allowed General Unsecured Claims, which shall be resolved on a case-by-case basis through settlements, Claim objections (or, if necessary, through adversary proceedings), adjudication in a forum other than the Bankruptcy Court, or by withdrawal of the Allowed General Unsecured Claims by the holders of such Claims.  From and after the Effective Date, Reorganized TSE may satisfy, dispute, settle, or otherwise compromise any Claim without approval of the Bankruptcy Court. Disputed Claims shall not be entitled to any Plan Distributions unless and until they become Allowed Claims.

**9.2.    *Objections to Claims.*** ~~Other than with respect to Professional Fee Claims (or as otherwise expressly provided in any order of the Bankruptcy Court), only the Debtor shall be entitled to object to Claims after the Effective Date.~~

Any objections to Claims (other than Administrative Expense Claims) shall be served and filed on or before the later of: (a) the Claims Objection Deadline and (b) such other date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (a) hereof (for the avoidance of doubt, this objection deadline may be extended one or more times by the Bankruptcy Court).  Any Administrative Expense Claims filed after the Administrative Bar Date shall be deemed Disallowed and expunged in their entirety without further order of the Bankruptcy Court or any action being required on the part of the Debtor, as applicable, unless the Person wishing to file such untimely Claim has received the Bankruptcy Court's authorization to do so.  Notwithstanding any authority to the contrary, an objection to a Claim shall be deemed properly served on the claimant if the objecting party effects service in any of the following manners:  (a) in accordance with Federal Rule of Civil Procedure 4, as modified and made applicable by Bankruptcy Rule 7004; (b) by first class mail, postage prepaid, on the signatory on the proof of claim as well as all other representatives identified in the proof of claim or any attachment thereto; or (c) if counsel has agreed to or is otherwise deemed to accept service, by first class mail, postage prepaid, on any counsel that has appeared on the

claimant's behalf in the Chapter 11 Case (so long as such appearance has not been subsequently withdrawn). From and after the Effective Date, the Debtor, in its sole discretion, shall have exclusive authority to settle or compromise any Disputed Claim without approval of the Bankruptcy Court.

### 9.3. *Estimation of Claims*

The Debtor may request that the Bankruptcy Court enter an Estimation Order with respect to any Claim, pursuant to section 502(c) of the Bankruptcy Code, for purposes of determining the Allowed amount of such Claim regardless of whether any Person has previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time (including during the pendency of any appeal with respect to the allowance or disallowance of such Claims). In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim for allowance or distribution purposes, that estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the objecting party may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. All of the objection, estimation, settlement, and resolution procedures set forth in the Plan are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, resolved or withdrawn by any mechanism approved by the Bankruptcy Court.

### 9.4. *Expenses Incurred on or After the Effective Date.*

Except as otherwise ordered by the Bankruptcy Court, and subject to the written agreement of the Debtor, the amount of any reasonable fees and expenses incurred by any Professional Person or the Claims Agent on or after the Effective Date in connection with implementation of this Plan, including reconciliation of, objection to, and settlement of Claims, shall be paid in Cash by the Debtor.

## ARTICLE X.
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 10.1. *General Treatment.*

As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, all executory contracts and unexpired leases of the Debtor shall be deemed assumed except that: (a) any executory contracts and unexpired leases that previously have been assumed, assumed and assigned, or rejected pursuant to a Final Order of the Bankruptcy Court shall be treated as provided in such Final Order; (b) any executory contracts and unexpired leases listed on the Schedule of Rejected Contracts and Leases shall be deemed rejected as of the Effective Date; and (c) all executory contracts and unexpired leases that are the subject of a separate motion to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date shall be treated as provided for in the Final Order resolving such motion. Rejection of any executory contract or unexpired lease pursuant to the Plan or otherwise will not constitute a termination of obligations owed to the Debtor under such contract or lease

-33-

that survive breach under applicable law.  Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the assumptions, assumptions and assignments and rejections described in this Section 10.1 pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Each executory contract and unexpired lease assumed pursuant to this Section 10.1 shall revest in and be fully enforceable by the Debtor in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable federal law.  Nothing contained in this Plan or the listing of a document on the Schedule of Rejected Contracts and Leases, or the Cure Schedule shall constitute an admission by the Debtor that such document is an executory contract or an unexpired lease or that the Debtor or its successors and assigns has any liability thereunder.

**10.2.    *Claims Based on Rejection of Executory Contracts or Unexpired Leases.***

All Claims arising from the rejection of executory contracts or unexpired leases, if evidenced by a timely filed proof of claim, will be treated as General Unsecured Claims.  In the event that the rejection of an executory contract or unexpired lease by the Debtor pursuant to the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not evidenced by a timely filed proof of claim, shall be forever barred and shall not be enforceable against the Debtor or its properties or interests in property or its agents, successors or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtor on or before the date that is thirty (30) days after the effective date of such rejection (which may be the Effective Date, the date on which the Debtor rejects the applicable contract or lease as provided in Section 10.1 of this Plan, or pursuant to an order of the Bankruptcy Court).

**10.3.    *Cure of Defaults for Assumed or Assumed and Assigned Executory Contracts and Unexpired Leases.***

(a)    Except to the extent that less favorable treatment has been agreed to by the non-Debtor party or parties to each such executory contract or unexpired lease to be assumed or assumed and assigned pursuant to the Plan, any monetary defaults arising under such executory contract or unexpired lease shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the appropriate amount (the "***Cure Amount***") in full in Cash on the later of: (i) the Effective Date; (ii) thirty (30) days after the date of entry of a Final Order providing for the assumption, or the assumption and assignment, of such executory contract or unexpired lease; or (iii) the date on which any Cure Dispute relating to such Cure Amount has been resolved (either consensually or through judicial decision).

(b)    With respect to any executory contract or unexpired lease to be assumed or assumed and assigned pursuant to Section 10.1 of this Plan, the Debtor shall file a schedule (a "***Cure Schedule***") with the Plan Supplement setting forth the Cure Amount, if any, for each executory contract or unexpired lease to be assumed or assumed and assigned by the Debtor.

(c)    In the event of a dispute (each, a "***Cure Dispute***") regarding: (i) the Cure Amount; (ii) the ability of the Debtor to provide "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) under the contract or lease to be

assumed or assumed and assigned; or (iii) any other matter pertaining to the proposed assumption or assumption and assignment, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order resolving such Cure Dispute and approving the assumption or assumption and assignment.  To the extent a Cure Dispute relates solely to the Cure Amount, the Debtor may assume and/or assume and assign the applicable contract or lease prior to the resolution of the Cure Dispute.  To the extent the Cure Dispute is resolved or determined against the Debtor, the Debtor may reject the applicable executory contract or unexpired lease after such determination, and the counterparty may thereafter file a proof of claim in the manner set forth in Section 10.2 of this Plan.

**10.4.**    *Effect of Confirmation Order on Assumption, Assumption and Assignment, and Rejection.*

Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute entry of an order by the Bankruptcy Court pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code approving the assumptions, assumptions and assignments and rejections described in this Article X and determining that: (a) with respect to such rejections, such rejected executory contracts and unexpired leases are burdensome and that the rejection therein is in the best interests of the Estate; (b) with respect to such assumptions, to the extent necessary, that the Debtor has (i) cured, or provided adequate assurance that the Debtor will promptly cure, any default in accordance with section 365(b)(1)(A) of the Bankruptcy Code, (ii) compensated or provided adequate assurance that it or an Affiliate will promptly compensate the counterparty for any actual pecuniary loss to such party resulting from such default, and (iii) provided adequate assurance of future performance under such executory contract or unexpired lease; and (c) with respect to any assignment, to the extent necessary, that the Debtor or the proposed assignee has (i) cured, or provided adequate assurance that it or an Affiliate will promptly cure, any default in accordance with section 365(b)(1)(A) of the Bankruptcy Code, (ii) compensated or provided adequate assurance that the Debtor or the proposed assignee will promptly compensate the counterparty for any actual pecuniary loss to such party resulting from such default, and (iii) that "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code) by the assignee has been demonstrated and no further adequate assurance is required. Assumption of any executory contract or unexpired lease and satisfaction of the Cure Amounts shall result in the full discharge, release and satisfaction of any claims or defaults, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the date such executory contract or unexpired lease is assumed.  Each executory contract and unexpired lease assumed pursuant to this Article X shall revest in and be fully enforceable by the Debtor in accordance with its terms, except as modified by the provisions of the Plan, or any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable federal law.  To the maximum extent permitted by law, to the extent any provision in any executory contract or unexpired lease assumed pursuant to the Plan restricts or prevents, or purports to restrict or prevent, or is breached or deemed breached by, the assumption of such executory contract or unexpired lease (including any "change of control" provision), then such provision shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such executory contract or

-35-

unexpired lease or to exercise any other default-related rights with respect thereto. Any party that fails to timely file a Cure Dispute on the basis that consent to assume or assume and assign the applicable executory contract or unexpired lease is a condition to such assumption or assumption and assignment, shall be deemed to have consented to the assumption or assumption and assignment, as applicable, of such contract or unexpired lease.

### 10.5. *Permits, Licenses, Easements and Similar Interests*

Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Bankruptcy Court shall constitute entry of an order by the Bankruptcy Court pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code approving the assumptions of all permits, licenses, easements and similar interests unless any of the foregoing has been previously rejected or is rejected under the Plan or otherwise.  To the extent permitted under applicable law, the Debtor shall be authorized, on and after the Effective Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtor, and pursuant to the terms of the Confirmation Order, all such licenses, permits, registrations, and governmental authorizations or approvals shall be deemed to be assumed by the Debtor as of the Effective Date.  To the extent provided by section 525 of the Bankruptcy Code, and subject to entry of the Confirmation Order, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Debtor on account of the filing or pendency of the chapter 11 case or the consummation of the transactions contemplated under this Plan.

To the maximum extent permitted by law, any provision that purports to restrict or prevent the assumption or assignment of any such permit, license, easement or similar interest or is breached or deemed breached by the assumption or assignment of any such permit, license, easement or similar interest (including any "change of control" provision) shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such permit, license, easement or similar interest or to exercise other default-related rights with respect thereto.  Any party that fails to timely file a Cure Dispute on the basis that consent to assume or assume and assign the applicable permit, license, easement or similar interest is a condition to such assumption or assumption and assignment, shall be deemed to have consented to such assumption or assumption and assignment.

### 10.6. *Assumption of Directors and Officers Insurance Policies*

To the extent that the D&O Liability Insurance Policies issued to, or entered into by, the Debtor prior to the Petition Date constitute executory contracts, notwithstanding anything in the Plan to the contrary, the Debtor shall be deemed to have assumed all of its unexpired D&O Liability Insurance Policies pursuant to section 365(a) of the Bankruptcy Code effective as of the Effective Date.  Entry of the Confirmation Order will constitute the Bankruptcy Court's approval of the Debtor's foregoing assumption of each of the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained in the Plan, confirmation of the Plan shall not discharge, impair or otherwise modify any advancement, indemnity or other obligations of the D&O Liability Insurance Policies.

In addition, after the Effective Date, the Debtor shall not terminate or otherwise reduce the coverage under any of the D&O Liability Insurance Policies with respect to conduct occurring prior thereto, and all directors, managers and officers of the Debtor who served in such capacity at any time prior to the Effective Date shall be entitled from the applicable insurers to the full benefits of any such policy for the full term of such policy regardless of whether such directors, managers and officers remain in such positions after the Effective Date.

On or before the Effective Date, the Debtor shall purchase and maintain directors, managers, officers and employee liability tail coverage for the six year period following the Effective Date on terms no less favorable than the Debtor's existing director, manager, officer and employee coverage and with an aggregate limit of liability upon the Effective Date of no less than the aggregate limit of liability under the existing director, officer, manager, and employee coverage upon placement.  From and after the Effective Date, reasonable directors, managers and officers insurance policies shall remain in place in the ordinary course.

### 10.7.  *Assumption of Certain Indemnification Obligations*

Each Indemnification Obligation to a current or former director, officer, manager or employee who was employed by the Debtor in such capacity on or after the Petition Date (including, for the avoidance of doubt, the members of the board of directors, board of managers or equivalent body of the Debtor at any time) shall be deemed assumed effective as of the Effective Date.  Each Indemnification Obligation that is deemed assumed pursuant to the Plan shall (a) remain in full force and effect, (b) not be modified, reduced, discharged, impaired or otherwise affected in any way, (c) be deemed and treated as an executory contract pursuant to sections 365 and 1123 of the Bankruptcy Code regardless of whether or not proofs of claim have been filed with respect to such obligations and (d) survive Unimpaired and unaffected irrespective of whether such indemnification is owed for an act or event occurring before, on or after the Petition Date.

Any obligations of the Debtor (whether pursuant to its certificate of formation, operating agreement, limited liability company agreement, other organizational documents, board resolutions, member resolutions, indemnification agreements, employment contracts, policy of providing employee indemnification, applicable state law, specific agreement in respect of any claims, demands, suits, causes of action or proceedings against such Persons or agreements, including amendments, or otherwise) entered into at any time prior to the Effective Date, to indemnify, reimburse or limit the liability of the current and former directors, officers, managers, employees, attorneys, accountants, investment bankers and other professionals of the Debtor, as applicable, in each case, based upon any act or omission related to such Persons' service with, for or on behalf of the Debtor prior to the Effective Date with respect to all present and future actions, suits and proceedings relating to the Debtor shall survive the Confirmation Order and, except as set forth herein, remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement or limitation of liability accrued or is owed in connection with an occurrence before or after the Petition Date.  Any Claim based on the Debtor's obligations set forth in this Section 10.7 shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code.  This provision for indemnification obligations shall not apply to or cover any

Causes of Action against a Person that result in a Final Order determining that such Person seeking indemnification is liable for fraud, willful misconduct, gross negligence, bad faith, self-dealing or breach of the duty of loyalty.

In connection with the foregoing, on the Effective Date, the Debtor shall establish and fund the Indemnification Escrow Account with Cash equal to $2,500,000.  Funds held in the Indemnification Escrow Account shall not be considered property of the Debtor's Estate or property of the Debtor and, to the extent such obligations are not satisfied by the Debtor or under any applicable D&O Liability Insurance Policy, such funds shall be utilized by the Debtor to satisfy the Debtor's obligations under this Section 10.7.  Funds remaining in the Indemnification Escrow Account after six (6) years, if any, shall revert to and become property of the Debtor; provided, that (i) the Debtor's obligations under this Section 10.7 shall not be limited by nor deemed limited to the balance of the funds held in the Indemnification Escrow Account, and (ii) such reversion shall not take place unless and until any claims that have been asserted and are covered by the Indemnification Escrow Account have been resolved.  No Liens, claims or interests shall encumber the Indemnification Escrow Account in any way.

## ARTICLE XI.

## CONDITIONS PRECEDENT TO CONSUMMATION OF THE PLAN

**11.1.  *Conditions Precedent to the Effective Date.***

The occurrence of the Effective Date is subject to:

(a)  the RSA remaining in full force and effect;

(b)  an order approving the New O&M Agreement, in form and substance reasonably acceptable to the Debtor and Cobra having been entered by the Bankruptcy Court and remaining in full force and effect;

(c)  the Disclosure Statement Order, in form and substance reasonably acceptable to the Debtor, Cobra and DOE having been entered by the Bankruptcy Court and remaining in full force and effect;

(d)  the Confirmation Order, in form and substance reasonably acceptable to the Debtor, Cobra, DOE and the Prepetition Collateral Agent, having become a Final Order and remaining in full force and effect;

(e)  the Plan Documents, including the Plan Supplement, in form and substance acceptable to the Debtor, Cobra, DOE and the Prepetition Collateral Agent, being filed with the Bankruptcy Court, executed and delivered, and any conditions (other than the occurrence of the Effective Date or certification by the Debtor that the Effective Date has occurred) contained therein having been satisfied or waived in accordance therewith;

(f)     a chapter 11 trustee, a responsible officer, or an examiner with enlarged powers relating to the operation of the businesses of the Debtor (powers beyond those set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) not having been appointed in any of the Chapter 11 Case;

(g)     all material governmental, regulatory and third party approvals, authorizations, certifications, rulings, no-action letters, opinions, waivers and/or consents required in connection with the Plan, including all necessary consents or approvals of and any required registration or filing with or notice to, the Federal Trade Commission (in such case, solely with respect to the requirements of the Hart-Scott-Rodino Act), the Committee on Foreign Investment in the United States, the Bureau of Land Management, the Federal Communications Commission, and the Federal Energy Regulatory Commission, having been obtained or made, as applicable, and remaining in full force and effect, and there existing no claim, action, suit, investigation, litigation or proceeding, pending or threatened in any court or before any arbitrator or governmental instrumentality, which would prohibit the consummation of the Plan;

(h)     the Amended Constituent Documents, in form and substance acceptable to the Debtor and Cobra, shall have been filed with the applicable authorities of the relevant jurisdictions of formation and shall have become effective in accordance with such jurisdictions' limited liability company laws;

(i)     the Exit Credit Facility Agreement and Exit Contingent Note having been executed and delivered, and the DOE having received the $200 million cash payment provided for in Section 5.3 of the Plan; and

(j)     an amendment to the EPC Contract having been executed and delivered, such that, effective as of the Effective Date (i) each of the Total Liquidity Commitment, the Unfunded Liquidity Commitment and the Unfunded Additional Liquidity Commitment (each as defined in the EPC Contract) is reduced to zero, and (ii) all obligations of Contractor or under the Parent Guaranty (each as defined in the EPC Contract) under Section 8 of Amendment No. 1 to the EPC Contract or any other provision of the EPC Contract or any related agreement or document, are in each case, terminated.

### 11.2.   *Satisfaction and Waiver of Conditions Precedent.*

Except as otherwise provided herein, any actions taken on the Effective Date shall be deemed to have occurred simultaneously and no such action shall be deemed to have occurred prior to the taking of any other such action.  Any of the conditions set forth in Section 11.1 of this Plan may be waived in whole or in part, if acceptable to the Debtor, Cobra and DOE, without notice and a hearing, and the Debtor's benefits under any "mootness" doctrine shall be unaffected by any provision hereof.  The failure to satisfy or waive any condition may be asserted by the Debtor regardless of the circumstances giving rise to the failure of such condition to be satisfied (including any act, action, failure to act or inaction by the Debtor).  The failure of the Debtor to assert the non-satisfaction of any such conditions shall not be deemed a waiver of any other rights hereunder, and each such right shall be deemed an ongoing right that may be asserted or waived (as set forth herein) at any time or from time to time.

**11.3.**   *Effect of Failure of Conditions Precedent to the Effective Date.*

If all of the conditions to effectiveness have not been satisfied (as provided in Section 11.1 hereof) or duly waived (as provided in Section 11.2 hereof) and the Effective Date has not occurred on or before the first Business Day that is more than 150 days after the Confirmation Date, or by such later date as set forth by the Debtor, with the consent of Cobra and DOE, in a notice filed with the Bankruptcy Court prior to the expiration of such period, then, if reasonably acceptable to the Debtor, Cobra and DOE, the Debtor may file a motion to vacate the Confirmation Order.  Notwithstanding the filing of such a motion, the Confirmation Order shall not be vacated if all of the conditions to consummation set forth in Section 11.1 hereof are either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion.  If the Confirmation Order is vacated pursuant to this Section 11.3, this Plan (other than this Section 11.3) shall be null and void in all respects, the Confirmation Order shall be of no further force or effect, no Plan Distributions shall be made, the Debtor and all holders of Claims and Interests shall be restored to the *status quo ante* as of the day immediately preceding the Confirmation Date as though the Confirmation Date had never occurred, and upon such occurrence, nothing contained in this Plan shall: (a) constitute a waiver or release of any Claims against or Interests in the Debtor; (b) prejudice in any manner the rights of the holder of any Claim against or Interest in the Debtor; or (c) constitute an admission, acknowledgment, offer or undertaking by the Debtor or any other Person with respect to any matter set forth in the Plan.

# ARTICLE XII.

## EFFECT OF CONFIRMATION

**12.1.**   *Binding Effect.*

Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code and subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of this Plan shall bind any holder of a Claim against, or Interest in, the Debtor and inure to the benefit of and be binding on such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under this Plan and whether or not such holder has accepted this Plan.

**12.2.**   *Discharge of Claims Against and Interests in the Debtor.*

Upon the Effective Date and in consideration of the Plan Distributions, except as otherwise provided herein or in the Confirmation Order (including with respect to Claims left unimpaired by this Plan), each Person that is a holder (as well as any trustees and agents for or on behalf of such Person) of a Claim or Interest shall be deemed to have forever waived, released, and discharged the Debtor, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Interests, rights and liabilities that arose prior to the Effective Date.  Except as otherwise provided herein, upon the Effective Date, all such holders of Claims and Interests shall be forever precluded and enjoined, pursuant to sections 105, 524, 1141 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtor or any property, wherever located, of the Estate.

### 12.3.  *Term of Pre-Confirmation Injunctions or Stays.*

Unless otherwise provided herein, all injunctions or stays provided in the Chapter 11 Case arising prior to the Confirmation Date in accordance with sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

### 12.4.  *Injunction Against Interference with Plan.*

Upon the entry of the Confirmation Order, all holders of Claims and Interests and other Persons, along with their respective present or former Affiliates, employees, agents, officers, directors, or principals, shall be enjoined from taking any actions, whether in the United States or elsewhere, to interfere with the implementation or consummation of this Plan. Moreover, Bankruptcy Code section 1141(c) provides, among other things, that the property dealt with by this Plan is free and clear of all Claims and Interests (except as otherwise provided in this Plan or the Confirmation Order).  As such, to the fullest extent permissible under applicable law, no Person holding a Claim or Interest may receive any payment from, or seek recourse against, any assets that are to be distributed under this Plan other than assets required to be distributed to that Person under this Plan.  As of the Confirmation Date, to the fullest extent permissible under applicable law, all Persons are precluded and barred from asserting against any property to be distributed under this Plan any Claims, rights, Causes of Action, liabilities, Interests, or other action or remedy based on any act, omission, transaction, or other activity that occurred before the Confirmation Date except as expressly provided in this Plan or the Confirmation Order.

### 12.5.  *Injunction.*

(a)  **Except as otherwise specifically provided in this Plan or the Confirmation Order, as of the Confirmation Date, but subject to the occurrence of the Effective Date, all Persons or Entities who have held, hold or may hold Claims against and/or Interests in the Debtor or the Estate, and all other parties in interest, along with their present or former employees, agents, officers, directors, principals, representatives and Affiliates are, with respect to any such Claims or Interests, permanently enjoined after the Confirmation Date from: (i) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtor, its Estate or any of its property, wherever located, or any direct or indirect transferee of any property, wherever located, of, or direct or indirect successor in interest to, any of the foregoing Persons or any property, wherever located, of any such transferee or successor; (ii) enforcing, levying, attaching (including any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtor, or its Estate or any of its property, wherever located, or any direct or indirect transferee of any property, wherever located, of, or direct or indirect successor in interest to, any of the foregoing Persons, or any property, wherever located, of any such transferee or successor; (iii) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtor or its Estate or any of its property, wherever located, or any**

direct or indirect transferee of any property, of, or successor in interest to, any of the foregoing Persons; (iv) acting or proceeding in any manner, in any place whatsoever, that does not conform to or comply with the provisions of this Plan to the full extent permitted by applicable law (including, without limitation, commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of this Plan) to the fullest extent permitted by applicable law, or (v) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtor or its Estate, or against the property or interests in property of the Debtor or its Estate, with respect to any such Claim or Interest.  Such injunction shall extend to any successors or assignees of the Debtor and its properties and interest in properties; **provided**, **however**, that nothing contained herein shall preclude such Persons from exercising their rights, or obtaining benefits, pursuant to and consistent with the terms of this Plan including with respect to Claims left unimpaired by this Plan.

       (b)       By accepting Plan Distributions, each holder of an Allowed Claim or Interest will be deemed to have specifically consented to the injunctions set forth in this Section 12.5.

       **12.6.**   *Releases.*

       (a)       **Releases by the Debtor**.  Pursuant to section 1123(b) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or the Confirmation Order, on and after the Effective Date, for good and valuable consideration, including their cooperation and contributions to the Chapter 11 Case, the Released Parties (other than the Debtor) shall be deemed released and discharged by the Debtor and its Estate from any and all Claims, obligations, debts, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity or otherwise, whether for tort, fraud, contract, violations of federal or state laws or otherwise, including the ICC Arbitration and the Avoidance Actions; Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that the Debtor, its Estate could have asserted in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Entity or that any holder of a Claim or Interest or other Entity could have asserted derivatively for or on behalf of the Debtor, or its Estate, based on, relating to or in any manner arising from, in whole or in part, the Debtor; its Estate; the purchase, sale or rescission of the purchase or sale of any security of the Debtor; the Crescent Dunes Solar Energy Project; the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan; the business or contractual arrangements between the Debtor and any Released Party (excluding any assumed executory contract or lease); the restructuring of Claims and Interests prior to or in the Chapter 11 Case; the negotiation, formulation or preparation of the Plan, the RSA, the Disclosure Statement, the Plan Supplement, the Chapter 11 Case, or, in each case, related agreements, instruments, or other documents or upon any other related act or omission, transaction, agreement, event or other occurrence taking place on or before the Effective Date.

-42-

(b)    **Debtor and Cobra Releases.**  The Debtor and Cobra only unconditionally and irrevocably release the DOE and the Prepetition Collateral Agent, and each of their respective financial advisors and attorneys, for any claims or Causes of Action arising out of or related to the Prepetition Note Claim and/or the Crescent Dunes Solar Energy Project.

(c)    **DOE Releases.**  DOE only unconditionally and irrevocably releases the Debtor and Cobra, and each of their respective financial advisors and attorneys, from (i) the Prepetition Note Claim and (ii) any claims or Causes of Action arising out of or relating to the Prepetition Note Claim and/or the Crescent Dunes Solar Energy Project.

Notwithstanding anything to the contrary in this Plan, including section 12.6(a), without conceding the existence or merits thereof, neither the above paragraphs nor the Plan releases: (i) any civil, criminal or administrative liability arising under Title 26 of the United States Code (the Internal Revenue Code); (ii) any criminal liability; (iii) any liability under subchapter III of chapter 37 of Title 31 of the United States Code; (iv) any liability that is based on conduct in violation of antitrust laws; (v) any claim of any agency of the United States of America other than DOE; (v) the Debtor's and Cobra's obligations under Section 5.3(b) of the Plan regarding the Prepetition Note Claim.

(d)    **Releases by the Third Party Releasing Parties.**  Except as otherwise specifically provided in this Plan or the Confirmation Order, on and after the Effective Date, for good and valuable consideration, including the obligations of the Debtor under this Plan, the Plan Consideration and other contracts, instruments, releases, agreements or documents executed and delivered in connection with this Plan, each Third Party Releasing Party who affirmatively opts to grant the releases set forth herein shall be deemed to have consented to this Plan and the restructuring embodied herein for all purposes, and shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged the Released Parties from any and all Claims, Interests, obligations, debts, rights, suits, damages, Causes of Action, remedies and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, asserted or unasserted, existing or hereinafter arising, in law, equity or otherwise, whether for tort, fraud, contract, violations of federal or state laws or otherwise, including the ICC Arbitration and the Avoidance Actions, Causes of Action based on veil piercing or alter-ego theories of liability, contribution, indemnification, joint liability or otherwise that such Third Party Releasing Party could have asserted (whether individually or collectively), based on, relating to or in any manner arising from, in whole or in part, the Debtor; the Estate; the Chapter 11 Case; the purchase, sale or rescission of the purchase or sale of any security of the Debtor; the Crescent Dunes Solar Energy Project; the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan; the business or contractual arrangements between the Debtor and any Released Party (excluding any assumed executory contract or lease); the restructuring of Claims and Interests prior to or in the Chapter 11 Case; the negotiation, formulation or preparation of the Plan, the RSA, the Disclosure Statement, the Plan Supplement, the Prepetition Note Documents, or this Plan or the Disclosure Statement, or, in each case, related agreements, instruments or other documents, or upon any other related act or omission, transaction, agreement, event or

-43-

**other occurrence taking place on or before the Effective Date~~; provided, that~~ any party that ~~affirmatively opts out of~~ chooses not to opt in to the releases contained herein shall not receive the benefit of the releases set forth in the Plan (even if for any reason otherwise entitled).  Notwithstanding anything contained herein to the contrary, the foregoing release shall not release any obligation of any party under the Plan, or any other document, instrument, or agreement executed to implement the Plan.**

(e)    Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval~~, pursuant to Bankruptcy Rule 9019,~~ of the releases described in the Plan, which includes by reference each of the related provisions and definitions contained in the Plan, and further, shall constitute its finding that each release described in the Plan is:  (i) in exchange for the good and valuable consideration provided by the Released Parties, a good faith settlement and compromise of such Claims; (ii) in the best interests of the Debtor and all Third Party Releasing Parties; (ii) fair, equitable and reasonable; (iv) given and made after due notice and opportunity for hearing; and (v) a bar to the Debtor and all Third Party Releasing Parties asserting any claim, Cause of Action or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

### 12.7.    *Waiver of Limitations on Releases of Unknown Claims.*

**Each of the Debtor, the Third Party Releasing Parties and DOE agree to acknowledge that the releases contained in Sections 12.6(a), 12.6(b), 12.6(c) and 12.6(d) will extend to and release claims that such parties do not know or expect to exist at the time of the release, which, if known, might have affected the decision to enter into the release and which such parties will be deemed to waive, and will waive and relinquish to the fullest extent permitted by law, any and all provisions, rights, and benefits conferred by any law of the United States of America or any state or territory thereof, or principle of common law, which governs or limits a person's release of unknown claims that such parties will deemed to waive, and will waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, which provides as follows:**

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

**The Debtor, the Third Party Releasing Parties and DOE will also be deemed to waive any and all provisions, rights, and benefits conferred by any law of any state or territory of the United States of America, or principle of common law, which is similar, comparable, or equivalent to California Civil Code Section 1542.  Such parties shall be deemed to acknowledge that they may discover facts in addition to or different from those that they now know or believe to be true with respect to the subject matter of the releases given in Sections 12.6(a), 12.6(b), 12.6(c) and 12.6(d), but that it is the intention of such**

parties to fully, finally, and forever settle and release with prejudice any and all claims, including any and all unknown claims, without regard to the subsequent discovery or existence of additional or different facts.  Such parties expressly agree that any fraudulent inducement or similar claims that could be premised on unknown facts or facts that are subsequently discovered are included within the definition of unknown claims.

12.8. *Exculpation and Limitation of Liability.*

On the Effective Date, except as otherwise provided in the Plan or the Confirmation Order, for good and valuable consideration, to the maximum extent permissible under applicable law, none of the Exculpated Parties shall have or incur any liability to any holder of any Claim or Interest or any other Person for any act or omission occurring prior to the Effective Date in connection with, or arising out of the Debtor's restructuring, including the negotiation, implementation and execution of this Plan, the Plan Supplement, the Chapter 11 Case, the Prepetition Note Documents, the solicitation of votes for and the pursuit of confirmation of this Plan, the consummation of this Plan, or the administration of this Plan or the property to be distributed under this Plan, including all documents ancillary thereto, all decisions, actions, inactions and alleged negligence or misconduct relating thereto and all activities leading to the promulgation and confirmation of this Plan except for gross negligence or willful misconduct, each as determined by a Final Order of the Bankruptcy Court.  ~~For purposes of the foregoing, it is expressly understood that any act or omission effected with the approval of the Bankruptcy Court conclusively will be deemed not to constitute gross negligence or willful misconduct unless the approval of the Bankruptcy Court was obtained by fraud or misrepresentation, and in all respects, the applicable Persons shall be entitled to rely on the advice of counsel with respect to their duties and responsibilities under, or in connection with, the Chapter 11 Case, the Plan, and administration thereof.~~ The Exculpated Parties have, and upon confirmation of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the distributions of the securities pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

12.9. *Injunction Related to Releases and Exculpation.*

The Confirmation Order shall permanently enjoin the commencement or prosecution by any Person, whether directly, derivatively or otherwise, of any claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action or liabilities released pursuant to this Plan, including the claims, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action and liabilities released in or encompassed by Sections 12.6 and 12.7 of this Plan.  The Debtor is expressly authorized hereby to seek to enforce such injunction.

12.10. *Retention of Causes of Action/Reservation of Rights.*

(a)     Except as expressly provided in this Plan or in the Confirmation Order, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or Causes of Action that the Debtor or the Estate may have, or that the Debtor may choose to assert on behalf of its Estate, under any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including, without limitation, (i) any and all Causes of Action or claims against any Person or Entity, to the extent such Person or Entity asserts a crossclaim, counterclaim and/or claim for setoff that seeks affirmative relief against the Debtor, its officers, directors or representatives or (ii) the turnover of any property of the Estate to the Debtor.

(b)     Except as expressly provided in this Plan or in the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights or Causes of Action that the Debtor had immediately prior to the Petition Date or the Effective Date against or regarding any Claim left Unimpaired by the Plan. The Debtor shall have, retain, reserve and be entitled to commence, assert and pursue all such rights and Causes of Action as fully as if the Chapter 11 Case had not been commenced, and all of the Debtor's legal and equitable rights respecting any Claim left Unimpaired by the Plan may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced.

(c)     Except as expressly provided in the Plan or the Confirmation Order, nothing contained in the Plan or the Confirmation Order shall be deemed to release any post-Effective Date obligations of any party under the Plan, or any document, instrument or agreement (including those set forth in the Plan Supplement) executed to implement the Plan.

### 12.11   *Retention of United States Causes of Action/Reservation of Rights.*

Except with respect to the releases provided by DOE pursuant to Section 12.6(c) of the Plan, nothing discharges or releases the Debtor or any non-debtor from any right, claim, liability or cause of action of the United States or any State, or impairs the ability of the United States or any State to pursue any claim, liability, right, defense, or cause of action against any Debtor or non-debtor. Contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests of or with the United States or any State shall be, subject to any applicable legal or equitable rights or defenses of the Debtor under applicable non-bankruptcy law, paid, treated, determined and administered in the ordinary course of business as if the Debtor's bankruptcy case was never filed and the Debtor shall comply with all applicable non-bankruptcy law.  Except with respect to (i) the releases provided by DOE pursuant to Section 12.6(c) of the Plan and (ii) the Prepetition Note Claim, all claims, liabilities, rights, causes of action, or defenses of or to the United States or any State shall survive the Chapter 11 Case as if it had not been commenced and be determined in the ordinary course of business, including in the manner and by the administrative or judicial tribunals in which such rights, defenses, claims, liabilities, or causes of action would have been resolved or adjudicated if the Chapter 11 Case had not been commenced; *provided*, that nothing in the Plan Documents shall alter any legal or equitable rights or defenses of the Debtor under non-bankruptcy law with respect to any such claim, liability, or cause of action, except with respect to (i) the Prepetition Note Claim and (ii) any claims or Causes of Action released by the DOE

pursuant to Section 12.6(c) of the Plan.  Without limiting the foregoing, for the avoidance of doubt, nothing shall: (i) require the United States or any State to file any proofs of claim or administrative expense claims in the Chapter 11 Case for any right, claim, liability, defense, or cause of action; (ii) affect or impair the exercise of the United States' or any State's police and regulatory powers against the Debtor or any non-debtor; (iii) be interpreted to set cure amounts or to require the United States or any State to novate or otherwise consent to the transfer of any federal or state contracts, purchase orders, agreements, leases, covenants, guaranties, indemnifications, operating rights agreements or other interests; (iv) except with respect to the Prepetition Note Claim, affect or impair the United States' or any State's rights and defenses of setoff and recoupment, or ability to assert setoff or recoupment against the Debtor and such rights and defenses are expressly preserved; (v) constitute an approval or consent by the United States or any State without compliance with all applicable legal requirements and approvals under non-bankruptcy law; or (vi) relieve any party from compliance with all licenses and permits issued by governmental units in accordance with non-bankruptcy law.

## ARTICLE XIII.

## RETENTION OF JURISDICTION

Pursuant to sections 105 and 1142 of the Bankruptcy Code and notwithstanding entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain jurisdiction, to the fullest extent permissible under law, over all matters arising in, arising under, or related to the Chapter 11 Case for, among other things, the following purposes:

(a)      To hear and determine all matters relating to the assumption or rejection of executory contracts or unexpired leases, including whether a contract or lease is or was executory or expired, and the Cure Disputes resulting therefrom;

(b)      To hear and determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date;

(c)      To hear and resolve any disputes arising from or relating to (i) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004, or (ii) any protective orders entered by the Bankruptcy Court in connection with the foregoing;

(d)      To ensure that Plan Distributions to holders of Allowed Claims are accomplished as provided herein;

(e)      To consider Claims or the allowance, disallowance, liquidation, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim or Professional Fee Claim;

(f)      To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

-47-

(g)     To issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court (including, without limitation, with respect to releases, exculpations and indemnifications);

(h)     To hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)     To resolve disputes concerning any reserves with respect to Disputed Claims or the administration thereof;

(j)     To hear and determine disputes arising in connection with or related to the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, the Disclosure Statement, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing (including without limitation the Plan Supplement and the Plan Documents); provided that the Bankruptcy Court shall not retain jurisdiction over disputes concerning documents contained in the Plan Supplement that have a jurisdictional, forum selection or dispute resolution clause that refers disputes to a different court and any disputes concerning documents contained in the Plan Supplement shall be governed in accordance with the provisions of such documents;

(k)     To take any action and issue such orders, including any such action or orders as may be necessary after occurrence of the Effective Date and/or consummation of the Plan, as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release or injunction provisions set forth herein, or to maintain the integrity of this Plan following consummation;

(l)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

(m)     To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

(n)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code;

(o)     To resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Case, the Disclosure Statement Hearing, the Confirmation Hearing, the Administrative Bar Date, or the deadline for responding or objecting to a Cure Amount, for the purpose of determining whether a Claim or Interest is discharged hereunder, or for any other purpose;

(p)    To recover all assets of the Debtor and property of the Estate, wherever located;

(q)    To hear and determine any rights, claims or Causes of Action held by or accruing to the Debtor pursuant to the Bankruptcy Code or pursuant to any federal or state statute or legal theory; and

(r)    To enter a final decree closing the Chapter 11 Case.

As of the Effective Date, notwithstanding anything in this Article XIII to the contrary, the Exit Credit Facility Agreement shall be governed by the jurisdictional provisions therein.

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Case, the provisions of this Article XIII shall have no effect on and shall not control, limit, or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE XIV.

## MISCELLANEOUS PROVISIONS

### 14.1.   *Exemption from Certain Transfer Taxes.*

Pursuant to section 1146(a) of the Bankruptcy Code and to the fullest extent permitted by applicable law, (i) any issuance, transfer, or exchange ~~under this Plan of New Common Units and the security interests in favor of the lenders under the Exit Credit Facility Agreement~~ of a security, or the making or delivery of an instrument of transfer under this Plan may not be taxed under any law imposing a stamp tax or similar tax and (ii) the consummation of sale transactions by the Debtor and approved by the Bankruptcy Court on and after the Confirmation Date through and including the Effective Date, including any transfers effectuated under this Plan, the sale by the Debtor of any owned property pursuant to section 363(b) of the Bankruptcy Code, and any assumption, assignment, and/or sale by the Debtor of its interests in unexpired leases of non-residential real property or executory contracts pursuant to section 365(a) of the Bankruptcy Code, shall constitute a "transfer under a plan" and shall not be subject to any stamp~~, real estate transfer, recording,~~ or other similar tax.

### 14.2.   *Termination of Professionals.*

On the Effective Date, the engagement of each Professional Person retained by the Debtor shall be terminated without further order of the Bankruptcy Court or act of the parties; provided, however, such Professional Person shall be entitled to prosecute their respective Professional Fee Claims and represent their respective constituents with respect to applications for allowance and payment of such Professional Fee Claims and the Debtor shall be responsible for the reasonable and documented fees, costs and expenses associated with the prosecution of such Professional Fee Claims, subject to applicable law.  Nothing herein shall preclude the

-49-

Debtor from engaging a former Professional Person on and after the Effective Date in the same capacity as such Professional Person was engaged prior to the Effective Date.

### 14.3. *Amendments.*

If acceptable to the Debtor, Cobra and DOE, this Plan may be amended, modified, or supplemented in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court. In addition, after the Confirmation Date, so long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to this Plan, the Debtor may, if reasonably acceptable to the Debtor, Cobra and DOE, make appropriate technical adjustments, remedy any defect or omission or reconcile any inconsistencies in this Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of this Plan, and any holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

### 14.4. *Revocation or Withdrawal of this Plan.*

The Debtor reserves the right to revoke, delay or withdraw this Plan prior to the Effective Date. If the Debtor revokes, delays or withdraws this Plan, in accordance with the preceding sentence, prior to the Effective Date, or if confirmation or consummation of the Plan does not occur, then: (a) this Plan (other than this Section 14.4) shall be null and void in all respects; (b) any settlement or compromise not previously approved by Final Order of the Bankruptcy Court embodied in this Plan, assumption, assumption and assignment, or rejection of executory contracts or leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void; and (c) nothing contained in this Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interests in, such Debtor or any other Person, (ii) prejudice in any manner the rights of such Debtor or any other Person or (iii) constitute an admission of any sort by the Debtor or any other Person.

### 14.5. *Allocation of Plan Distributions Between Principal and Interest.*

To the extent that any Allowed Claim entitled to a distribution under the Plan consists of indebtedness and other amounts (such as accrued but unpaid interest thereon), such distribution shall be allocated first to the principal amount of the Claim (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claim, to such other amounts.

### 14.6. *Severability.*

If, prior to the entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtor, with the consent of Cobra and DOE, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.

Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of this Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

### 14.7.   *Governing Law.*

Except to the extent that the Bankruptcy Code or other U.S. federal law is applicable, or to the extent a Plan Document or exhibit or schedule to the Plan provides otherwise, the rights, duties, and obligations arising under this Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof to the extent such principles would result in the application of the laws of any other jurisdiction.

### 14.8.   *Section 1125(e) of the Bankruptcy Code.*

The Debtor has, and upon confirmation of this Plan shall be deemed to have, solicited acceptances of this Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, and the Debtor and its Affiliates, agents, managers, officers, employees, advisors, and attorneys participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, solicitation and/or purchase of the securities offered and sold under this Plan, and therefore are not, and on account of such offer, issuance, sale, solicitation, and/or purchase will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of this Plan or offer, issuance, sale, or purchase of the securities offered and sold under this Plan.

### 14.9.   *Inconsistency.*

In the event of any inconsistency among the Plan, the Disclosure Statement, the Plan Documents, any exhibit to the Plan or any other instrument or document created or executed pursuant to the Plan, the provisions of the Plan shall govern.

### 14.10.   *Time.*

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.  If any payment, distribution, act or deadline under the Plan is required to be made or performed or occurs on a day that is not a Business Day, then the making of such payment or distribution, the performance of such act or the occurrence of such deadline shall be deemed to be on the next succeeding Business Day, but shall be deemed to have been completed or to have occurred as of the required date.

**14.11.  *Exhibits.***

　　All exhibits to this Plan are incorporated and are a part of this Plan as if set forth in full herein.

**14.12.  *Notices.***

　　In order to be effective, all notices, requests, and demands to or upon the Debtor shall be in writing (including by facsimile transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

>Tonopah Solar Energy, LLC
>11 Gabbs Pole Line Road
>Tonopah, NV 89049
>Attn:  Kayla Jensen
>kayla.jensen@crescentdunessolar.com

>with a copy to (which shall not constitute notice):

>Willkie Farr & Gallagher LLP
>787 Seventh Ave.
>New York, NY 10019
>Attn:  Matthew A. Feldman, Paul V. Shalhoub, and Ciara A. Copell
>Fax:  (212) 728-8111
>Email:  mfeldman@willkie.com
>　　　　pshalhoub@willkie.com
>　　　　ccopell@willkie.com

>-and-

>Young Conaway Stargatt & Taylor LLP
>1000 N. King St.
>Wilmington, DE 19801
>Attn:  Matthew B. Lunn and Edmon L. Morton
>Fax:  (302) 571-1253
>Email:  mlunn@ycst.com
>　　　　emorton@ycst.com

**14.13.  *Filing of Additional Documents.***

　　On or before substantial consummation of the Plan, the Debtor shall file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**14.14.  *Reservation of Rights.***

Except as expressly set forth herein, the Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order.  None of the filing of this Plan, any statement or provision contained herein, or the taking of any action by the Debtor or Cobra with respect to this Plan shall be or shall be deemed to be, an admission or waiver of any rights of the Debtor or Cobra with respect to any Claims or Interests prior to the Effective Date.

26972239.1

Dated:  ~~July 30~~September 2, 2020
Wilmington, Delaware

Respectfully submitted,


_/s/ Justin D. Pugh_
Justin D. Pugh
Treasurer

## Schedule A

**Exit Credit Facility Terms**

Below is a summary of the material terms of the Exit Credit Facility Agreement.  Mutually agreed terms and conditions not inconsistent with the below may be incorporated into the Exit Credit Facility Agreement.

| | |
|---|---|
| **Borrower** | Reorganized Tonopah Solar Energy, LLC |
| **Lenders** | ACS Servicios Comunicaciones y Energía S.L. ("**ACS**"), Cobra Thermosolar Plants, Inc. and Cobra Energy Investment, LLC, or such other entity or entities designated by Cobra and acceptable to the Borrower |
| **Facility** | Term loan totaling $100 million (the "**Term Loan**") and up to $50 million working capital facility (the "**Working Capital Facility**").  Amounts borrowed and prepaid or repaid may not be reborrowed. |
| **Security** | Valid and perfected first-priority liens on, and security interests in, substantially all existing and after-acquired property (tangible and intangible) of Reorganized TSE (subject to customary exceptions). |
| **Purpose and Availability** | The Term Loan shall be put in place on the Effective Date of the Plan to provide for repayment of $100 million to Cobra on account of its funding (through a draw on the Final Letter of Credit issued pursuant to the Cobra backstop letter) of the Borrower's obligations to DOE under the Plan.<br><br>The Working Capital Facility shall be put in place on the Effective Date of the Plan to provide Reorganized TSE with working capital on and following the Effective Date. |
| **Maturity Date** | Term Loan: Twenty (20) years from Effective Date of Plan.<br><br>Working Capital Facility: Five (5) years from the Effective Date. |
| **Interest Rate** | Both the Term Loan and the Working Capital Facility will bear interest at a rate of 2.9% on amounts outstanding, payable quarterly in arrears during the term.<br><br>During the term of the Term Loan, only interest shall be payable (no principal payments shall be required during this period). |
| **Optional Prepayments** | The Term Loan and the Working Capital Facility may be prepaid at any time in whole or in part, at the option of the Borrower, without premium or penalty. |