**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TONOPAH SOLAR ENERGY, LLC,[1] | Case No. 20-11884 (KBO) |
| Debtor. | **Hearing Date: TBD**<br>**Response Deadline: TBD** |

### DEBTOR'S MOTION AND OBJECTION TO DISALLOW PROOFS OF CLAIM FILED BY CMB INFRASTRUCTURE GROUP IX, LP, CMB EXPORT, LLC, AND <u>SOLARRESERVE CSP HOLDINGS, LLC</u>

Tonopah Solar Energy, LLC (the "Debtor" or "TSE") respectfully submits this motion and objection (the "Motion") to the Proofs of Claim filed by CMB Infrastructure Group IX, LP, Claim No. 0000020001, and CMB Export, LLC, Claim No. 0000020002, dated as of September 3, 2020 (the "Nevada Proofs of Claim"), and SolarReserve CSP Holdings, LLC, Claim No. 0000020003, dated as of September 22, 2020 (the "Books and Records Proof of Claim" and, collectively, the "Proofs of Claim") requesting, pursuant to section 502(b) of title 11 of the United States Code (the "Bankruptcy Code") and Rules 3001, 3003 and 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 3007-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), entry of an order, substantially in the form attached hereto as Exhibit A, determining that CMB Infrastructure Group IX, LP and CMB Export, LLC (collectively, "CMB") and SolarReserve CSP Holdings, LLC ("SolarReserve Holdings," together with its affiliates SolarReserve, Inc., SolarReserve, LLC, and SolarReserve CSP Finance, LLC, "SolarReserve") lack standing and

---

[1] The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Tonopah Solar Energy, LLC (1316).  The Debtor's headquarters is located at 11 Gabbs Pole Line Road, Tonopah, NV 89049.

disallowing the Proofs of Claim for lack of standing and failure to state a claim against the Debtor.

In support of this Motion, the Debtor respectfully states as follows:

## PRELIMINARY STATEMENT

In short, CMB and SolarReserve Holdings lack standing in this chapter 11 case and the

Proofs of Claim[2] should be summarily disallowed based not only on lack of standing but also for

failure to state a claim against the Debtor.   Resolution of these issues is especially important in

view of the Debtor's restructuring and the limited resources available to the Debtor.   Indeed, CMB

has already attempted to leverage the Proofs of Claim by seeking extraordinarily broad and

overreaching discovery requests purportedly related to confirmation of the Debtor's chapter 11

plan, containing no less than 56 document requests and demanding production of virtually every

document in Debtor's possession.[3]   Litigating the Proofs of Claim, and responding to the attendant

discovery requests, makes little sense given the Debtor's limited resources and will be a massive

waste of the parties' and the Court's time leading up to the confirmation hearing.

As Vice Chancellor Slights observed in SolarReserve Holdings's second attempt in

Chancery Court, this is déjà vu all over again.  *SolarReserve CSP Holdings, LLC v. Tonopah Solar
Energy, LLC*, No. CV 2020-0064-JRS, 2020 WL 4251968, at *3 (Del. Ch. July 24, 2020).   The

Proofs of Claim, like the Nevada and the Books and Records actions against the Debtor, are

baseless and should be dismissed summarily.  Vice Chancellor Slights swiftly resolved remarkably

---

[2] The Nevada Proofs of Claim assert the same purported $90,000,000 in damages (plus interest, fees, and expenses)
against the Debtor relating solely to a parallel lawsuit pending in Nevada state court under the caption *CMB
Infrastructure Group IX, LP  v. Cobra Energy Investment Finance, Inc.*, Case No. A-20815245-C
(Clark. Co. Nev. Sept. 1, 2020) (the "Nevada action") filed by CMB against the Debtor and a number of other
parties.   The Books and Records Proof of Claim relates solely to a previously adjudicated proceeding in Delaware
Chancery Court under the caption *SolarReserve CSP Holdings, LLC v. Tonopah Solar Energy, LLC*, Case No. 20-
0064 (Del. Ch. Feb. 5, 2020) (the "Books and Records action") filed by SolarReserve Holdings against the Debtor and
in which final judgment was entered by Vice Chancellor Slights on July 24, 2020 in favor of the Debtor.
[3] A copy of CMB's Document Requests Pursuant to Fed. R. Bankr. R. 2004 is attached hereto as Exhibit B.  CMB
and the Debtor met and conferred prior to the filing of this Motion but have not reached any agreement on the requests
in the event that the Motion is denied.

similar litigation claims brought by CMB and its assignor SolarReserve Holdings in Delaware

Chancery Court earlier this year.  Specifically, Vice Chancellor Slights focused on the fact that

SolarReserve Holding's "*real relationship* to [TSE] is that of a remote, indirect investor, not a

member," and concluded that, if [its] request for equitable relief were granted, the court "would

not be upholding rights," but rather "creating new ones SolarReserve did not bargain for or

reasonably expect."  *SolarReserve CSP Holdings, LLC v. Tonopah Solar Energy, LLC*, No. CV

2019-0791-JRS, 2020 WL 1291638, at *7 (Del. Ch. Mar. 18, 2020) (emphasis added) (quotations

omitted).  These disguised "new" Proofs of Claim suffer from many of the same infirmities and

should meet the same fate here.

For background, CMB, a lender to SolarReserve Inc., and not to the Debtor, gallingly

asserts a $90 million claim against the Debtor predicated exclusively on how it putatively values

the Nevada action.  On September 1, 2020, *after* the Debtor initiated this bankruptcy proceeding,

and in flagrant violation of the automatic stay, CMB filed an amended pleading in the Nevada

action.  Tellingly, TSE is barely mentioned in the sprawling conspiracy that CMB attempts to

allege: it is one of eight named defendants and few of the allegations are directed at or

particularized to TSE.  Instead, the crux of the complaint is that the Crescent Dunes Project was

"plagued by repeated failures by the construction contractor," that is, Cobra Thermosolar Plants,

Inc. ("CTPI") and its affiliates (collectively, "Cobra"), and that "[t]he Project's failure is due

almost entirely to [Cobra]."[4]  On this basis, CMB seeks damages of $90 million in the Nevada

action against Cobra, as well as TSE and other defendants, representing money CMB loaned to

SolarReserve Inc. (not to the Debtor) to allegedly fund construction of the project.

---

[4] First Amended Complaint ("Am. Compl." or the "Amended Complaint"), ¶¶ 1, 5, *CMB Infrastructure Group IX, LP, et al. v. Cobra Energy Investment Finance, Inc., et al*, Case No. A-20815245-C (Clark. Co. Nev. Sept. 1, 2020) (a copy of which is attached to each Proof of Claim as Schedule B).

Even more egregiously, on September 22, 2020, SolarReserve Holdings filed the Books and Records Proof of Claim in its own name.  The Books and Records Proof of Claim seeks unspecified damages against the Debtor for its purported breach of the TSE LLC agreement based on its alleged failure to provide SolarReserve Holdings access to certain TSE books and records. But, as that proof of claim makes clear,[5] those "damages" are based on the same theory of breach that the parties litigated and, after a bench trial earlier this year, Vice Chancellor Slights rejected "because SolarReserve is not the real party in interest" and further because "SolarReserve has no information rights under the LLC Agreement."  *SolarReserve CSP Holdings, LLC*, 2020 WL 4231968, at *1.   The bankruptcy claims process in a chapter 11 case is not the proper forum to re-litigate claims previously tried and rejected in pre-petition litigation.

The Proofs of Claim must be disallowed because both CMB and SolarReserve Holdings lack standing to assert those claims in the Debtor's chapter 11 case.  Indeed, similar claims (or, in the case of the Books and Records Proof of Claim, the identical claim) were dismissed earlier this year at the pleading stage in the Chancery Court by Vice Chancellor Slights.  The few alleged claims that CMB asserts against TSE in the Nevada action, the predicate for the Nevada Proofs of Claim, are brought in the name of SolarReserve Holdings and its various affiliated entities.  And the Books and Records Proof of Claim is brought explicitly in the name of SolarReserve Holdings. But as Vice Chancellor Slights previously held, SolarReserve Holdings is an (indirect) equity holder of TSE.  2020 WL 1291638, at *1.  Hence, SolarReserve Holdings lacks standing to pursue a claim in this bankruptcy and CMB, as lender to SolarReserve Inc. (an entity itself four ownership levels removed from SolarReserve Holdings) and now SolarReserve Inc.'s assignee, *a fortiori*

---

[5] To underscore that point, SolarReserve Holdings included as Schedule B to the Books and Records Proof of Claim a copy of its verified complaint in the Delaware books-and-records action, a litigation in which a final judgment had already been entered against it by the Delaware Court of Chancery.

lacks standing to do the very same.  Furthermore, even accepting the allegations in the Nevada action as true, they fail to state a claim against TSE as a matter of state law and should be dismissed on the pleadings.  As a result, this Motion can be adjudicated by this Court strictly as a matter of law and the Proofs of Claim disallowed under section 502(b)(1) of the Bankruptcy Code without the need for discovery, estimation, or any merits-stage adjudication.

Moreover, that CMB's $90 million claim represents litigation claims against TSE brought by an assignee of SolarReserve is evident from the amended pleading in the Nevada action.  While numerous causes of action are asserted by CMB, primarily against Cobra, only three are directed at TSE:  (i) a claim for fraud alleging that TSE granted a sham "Provisional Acceptance" to the project, thereby defrauding *SolarReserve* and, by extension, causing it to default on its loan from CMB; (ii) a claim that TSE tortiously interfered with a contract between Cobra and *SolarReserve*, specifically by allegedly expelling SolarReserve from the management of TSE; and (iii) a claim that TSE aided and abetted Cobra's breach of fiduciary duty to *SolarReserve* by denying SolarReserve access to TSE books and records and demanding a capital call from SolarReserve in advance of this bankruptcy filing.  (Am. Compl. Counts III, IX, & X.)  No claims are asserted in the Nevada action against TSE directly on behalf of CMB.  As such, these are claims that CMB could not have asserted in the Nevada action but for the assignment of claims it received from SolarReserve after SolarReserve defaulted on the loan CMB provided it.

Regardless, none of the Nevada causes of action state a valid claim as a matter of state law.  CMB's common law fraud claim—predicated on the allegation that TSE effected a sham Provisional Acceptance of the project—borders on frivolous.  CMB fails to plead virtually any of the elements of a fraud claim as a matter of Nevada law, much less meet the heightened pleading standards imposed by Nevada courts to state a claim for fraud.  In particular, to the extent CMB

claims that it was defrauded by TSE, it fails to identify any false statements that TSE made to CMB. All it alleges is that TSE executed a contractual amendment modifying the definition of Provisional Acceptance, an amendment that CMB acknowledges SolarReserve—its predecessor in interest—not only approved but caused TSE to execute by virtue of SolarReserve's control of TSE's management at the time. How any of that conceivably constitutes a "fraud" is never explained. To the contrary, CMB repeatedly, if inconsistently, identifies TSE as the *victim* of the putative fraud. And, CMB's remaining claims for tortious interference and aiding and abetting breach of fiduciary duty—claims plainly being prosecuted in the name of SolarReserve—turn on issues that were already extensively litigated and adjudicated in pre-petition litigation filed by SolarReserve and fail for the same reasons.

## JURISDICTION

The Court has jurisdiction over the Debtor's chapter 11 case and this Motion pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution. Venue of this chapter 11 case and this Motion is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

The statutory and legal predicates for the relief sought herein are sections 502(b) and 1109(b) of the Bankruptcy Code, Bankruptcy Rules 3001, 3003, and 3007, and Local Rule 3007-1.

## STATEMENT OF FACTS[6]

The Nevada action centers on the "Crescent Dunes Project" (the "Project"), a solar thermal power plant project formed in 2008 and located in Tonopah, Nevada. (Am. Compl. ¶¶ 1, 3.)  The Project "was designed so that numerous mirrors concentrate sunlight at a solar tower, which collects and transmits the massive amount of heat generated by the concentrated sunlight to molten salt stored in a tank below the solar tower." (*Id.* ¶ 30.)  The primary source of revenue for the Project was expected to be selling electricity to the public utility NV Energy ("NVE"), at pre-specified, "substantially above market rates," pursuant to a Power Purchase Agreement ("PPA"), which required TSE to supply NVE certain agreed-upon minimum power output requirements commencing in January 2017. (*Id.* ¶¶ 57-59.)  The Project was owned by TSE; constructed by CTPI; and "at all times relevant . . . was owned and operated by affiliates of CTPI and [SolarReserve]." (*Id.* ¶ 2.)  Through various holding structures, Cobra and SolarReserve each held a 50% stake in TSI. (*Id.* ¶ 15.)

In 2011, the Project was financed through a $700 million loan guaranteed by the U.S. Department of Energy ("DOE"), memorialized in a Loan Guarantee Agreement ("LGA"). (*Id.* ¶ 51.)  In connection with its obligations under the LGA, SolarReserve obtained an additional $90 million financing in November 2012 from Plaintiff CMB Infrastructure Investment Group IX, L.P. ("Group IX"). (*Id.* ¶ 3.)[7]  That loan was memorialized in the "Group IX Loan Agreement," setting forth SolarReserve's obligation as borrower. (*Id.* ¶¶ 2-3.)  Repayment of this indebtedness was expected to have been funded primarily through revenue generated from the PPA and other tax

---

[6] The allegations of the Amended Complaint are accepted as true solely for the purpose of this Motion.  TSE does not affirm the accuracy of the allegations and expressly reserves the right to challenge the allegations in this chapter 11 case and the Nevada action.
[7] Separately, in June 2013, Cobra obtained $80 million in financing from Plaintiff CMB Infrastructure Investment Group, L.P. ("Group XI"), which was memorialized in the Group XI Loan Agreement. (Am. Compl. ¶¶ 2-3.)

monetization events and grants.  (*Id.* ¶ 4.)  TSE is neither a party to the Group IX loan agreement nor alleged to be in any other contractual or fiduciary relationship or relationship of privity with any of the CMB-affiliated Plaintiffs in the Nevada action.  (*Id.* ¶¶ 2-3.)

The crux of the Complaint is that the Project was beset with significant difficulties virtually from inception, such that "the Project has failed to meet—or even come close to meeting—its electrical power generation requirements under the PPA, has been offline for significant periods of time and is currently is [sic] not operational, producing precisely zero electricity, resulting in termination of the PPA."  (*Id.* ¶ 4.)  These difficulties have resulted in the "inability of the project owners to repay Plaintiffs" on their loans, the Project's insolvency, and TSE initiating the instant bankruptcy proceeding.  (*Id.* ¶¶ 1, 4.)  According to Plaintiffs, "[t]he Project's failure is due almost entirely to CTPI and its parents and affiliates," specifically because "CTPI partially constructed and prematurely delivered a grossly defective, non-functioning power plant."  (*Id.* ¶ 5.)  The CMB Plaintiffs further allege that Cobra "thereafter engaged with its parents and affiliates in a complex scheme designed to shift blame to SolarReserve and to shield themselves from responsibility," which included "misrepresenting the Project's condition to Plaintiffs and withholding from them information that would have enabled Plaintiffs to undertake efforts to mitigate or avoid their losses caused by SolarReserve's failure to repay its indebtedness."  (*Id.*)  TSE, as the Project Owner, is at best an afterthought in this alleged "conspiracy" and, as discussed *infra*, is variously alleged throughout the Amended Complaint to have been defrauded by the other defendants.

As relevant to the Nevada action, the relationship between Cobra and SolarReserve was governed by a series of contracts addressing the ownership and management of TSE and the construction of the Project, which were executed beginning in 2011.  (*Id.* ¶¶ 34-35.)  Construction of the Project was governed by the Contract for Engineering, Procurement and Construction, dated

as of September 20, 2011 (the "EPC Contract"). (*Id.* ¶ 2.) The EPC Contract contained a series of deadlines, milestones, and liquidated damages provisions. In general, under the EPC Contract, Cobra was responsible for the engineering, procurement, and construction of the Project through "Provisional Acceptance," following which SolarReserve would be responsible for the operation of the Plant. (*Id.* ¶ 37.) Provisional Acceptance was to be measured by a series of detailed conditions and performance tests specified in the EPC and achieved no later than 30 months after Cobra received notice from TSE to commence work on the Project. (*Id.* ¶ 44.) Once Provisional Acceptance was achieved, the Project was required to satisfy the PPA's minimum supply level requirement; otherwise, NVE could declare an event of default under the PPA. (*Id.* ¶ 59.) Cobra was thereafter required to achieve "Guaranteed Final Acceptance"—the completion of all work under the EPC Contract—within one year of Provisional Acceptance. (*Id.* ¶ 48.)

According to Plaintiffs, the deadline for Provisional Acceptance "was extended multiple times after [Cobra] repeatedly demonstrated its inability to meet the original deadline" and not achieved until 33 months after the original deadline. (*Id.* ¶ 47.) On December 22, 2016, Cobra affiliates and TSE entered into Amendment No. 3 to the EPC, which modified the definition of "Provisional Acceptance." (*Id.* ¶ 72.) Under the amended definition, the standard for Provisional Acceptance was met as of December 22, subject to certain scheduled "Punch List" items—that is, deficiencies that could be remediated by Cobra post-Provisional Acceptance—and control of the Project was transferred to TSE that same day. (*Id.* ¶ 72.) SolarReserve—assignor of Plaintiffs' claims—negotiated and agreed to these modifications to the EPC on behalf of TSE. (*Id.* ¶ 82.)

Following delivery of the Project to TSE and the operation of the Project by SolarReserve, the Project struggled to generate electricity and "remained nonoperational or continued to fall far short of performance metrics under the PPA." (*Id.* ¶¶ 86-87.) SolarReserve was terminated as the

27116455.1

Project operator and FTI Consulting retained as its replacement.  (*Id.* ¶ 97.)  Thereafter, on September 17, 2019, based on the failure to achieve minimum production obligations and the failure to achieve final acceptance, the DOE declared the LGA to be in default and—based on that default—exercised its contractual right to remove SolarReserve and Cobra's designees to the TSE Board of Managers and appointed two independent managers.  (*Id.* ¶¶ 89, 96.)  Ultimately, the NVE declared the PPA to be terminated.  (*Id.* ¶ 89.)  The DOE's removal of SolarReserve's appointee to the TSE Board of Managers spawned significant pre-petition litigation between TSE and SolarReserve.

## PROCEDURAL HISTORY

On October 2, 2019, SolarReserve filed its first complaint against TSE and the DOE in an action captioned *SolarReserve CSP Holdings, LLC v. Tonopah Solar Energy, LLC*, C.A. No. 2019-0791-JRS ("*Tonopah I*"), seeking a determination that its representative had not been validly removed from the TSE Board of Managers.[8]  Soon after TSE moved to dismiss the complaint, arguing that the DOE had a contractual right under the LGA and governing LLC agreement to remove SolarReserve's nominee upon the occurrence of a default, SolarReserve changed course and abandoned completely its claim that the Board of Managers was not properly constituted and dropped the DOE as a defendant.  *SolarReserve CSP Holdings, LLC v. Tonopah Solar Energy, LLC*, No. CV 2019-0791-JRS, 2020 WL 1291638, at *3 (Del. Ch. Mar. 18, 2020).

In place of its abandoned claim for declaratory relief, SolarReserve instead filed an amended complaint and asserted a single count seeking the "equitable dissolution" of TSE.  *Id.* ("*Tonopah II*").  After briefing by the parties, on March 18, 2020, Vice Chancellor Joseph R. Slights II granted TSE's motion to dismiss, refusing to dissolve TSE as a matter of equity.  *See*

---

[8] *See Tonopah I*, Verified Complaint Pursuant to Section 18-110 of the Delaware LLC Act.

*SolarReserve CSP Holdings, LLC*, 2020 WL 1291638, at *8.[9]  Specifically, Vice Chancellor Slights focused on the fact that [SolarReserve's] "*real relationship* to [TSE] is that of a remote, indirect investor, not a member," and concluded that, if [its] request for equitable relief were granted, the court "would not be upholding rights," but rather "creating new ones [SolarReserve] did not bargain for or reasonably expect."  *Id.* at *7 (emphasis added) (quotations omitted).

On February 5, 2020, SolarReserve then instituted a separate books-and-records action ("*Tonopah III*") against TSE in the Delaware Court of Chancery, this time seeking to enforce its purported contractual right to inspect TSE's books and records.  After a one-day bench trial, the Chancery Court resolved *Tonopah III* in TSE's favor, observing: "As it turns out, this action is 'déjà vu all over again.'"  *SolarReserve CSP Holdings, LLC v. Tonopah Solar Energy, LLC*, No. CV 2020-0064-JRS, 2020 WL 4251968, at *1 (Del. Ch. July 24, 2020).[10]  Much like the prior equitable dissolution action, SolarReserve "once again has sought to exercise rights it knowingly bargained away and cannot prove that it is entitled to relief."  *Id.*  Specifically, Vice Chancellor Slights held that SolarReserve could not enforce its purported inspection rights because (a) it had assigned all claims it has against TSE to CMB, and (b) TSE's operating agreement expressly denies information rights to "unaffiliated successors" such as CMB.  *Id*. at 5-6.

On September 1, 2020, in violation of TSE's automatic stay, CMB filed an amended pleading in the Nevada action (though, to date, it has not served TSE).  While acknowledging that TSE had "filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code," CMB nevertheless asserted that it was proper to file an amended pleading naming the Debtor as a defendant "because Plaintiffs are not actively pursuing claims against TSE outside of the chapter 11 case."  (Am. Compl. at 2 n.1.)  In keeping with the theme of "déjà vu all over again," the

---

[9] A copy of Vice Chancellor Slight's decision dated March 18, 2020 is attached hereto as Exhibit C.
[10] A copy of Vice Chancellor Slight's decision dated July 24, 2020 is attached hereto as Exhibit D.

amended pleading raises substantially similar issues as the prior Delaware litigation.  CMB, as assignee of Solar Reserve (*id.* ¶ 15), asserted three claims directed at TSE: (i) common law fraud (*id.* ¶¶ 128-36); (ii) intentional interference with contractual relations based on the removal of SolarReserve's nominee from the TSE Board of Managers (*id.* ¶¶ 156-58); and (iii) aiding and abetting breach of fiduciary duty based, in part, on TSE's refusal to grant SolarReserve access to the same books and records.  (*Id.* ¶¶ 163-65)[11]  Based on these and claims asserted against the other defendants, CMB asserted $90 million in damages plus fees and expenses via the Nevada Proofs of Claim representing its alleged total damages if successful in the Nevada action and attributing the entirety of that theoretical damages award to TSE, one of eight named defendants in the lawsuit.  (*Id.* ¶¶ 38-39.)

Subsequently, on September 22, 2020, SolarReserve Holdings filed the Books and Records Proof of Claim in its own name seeking unspecified damages "for breach of the Third Amended and Restated Limited Liability Company Agreement dated October 30, 2019 of Tonopah Solar Energy, LLC."  (Books and Records Proof of Claim at Schedule A.)  These purported damages are, in turn, explicitly based on the previously dismissed complaint filed by SolarReserve Holdings in *Tonopah III*, which is included as Schedule B to the Books and Records Proof of Claim.

---

[11] Counts 3 (fraud), 8 (tortious interference), and 10 (aiding and abetting breach of fiduciary duty) are the only causes of action that name TSE as a defendant.  While often vague and inconsistent in this respect, the remaining causes of action appear limited to the other defendants, generally Cobra affiliates.  Specifically, causes of action 1, 2, and 9 are, by their terms, brought against Cobra Finance and CEI, not TSE.  (*See* Am. Compl. ¶¶ 117-27, 159-62.)  Likewise, causes of action 4 through 7 do not mention TSE whatsoever in the substantive allegations and instead focus on the actions of other defendants.  (*See* Am. Compl. ¶¶ 137-42 (Count 4, allegations specific to "Defendants ACS Servicios Comunicaciones Y Energia, S.L., Cobra Instalaciones y Servicios S.A., CIS, and CEI" and "Santander."); ¶¶ 143-45 (Count 5, allegations regarding failure to disclose by "Cobra Finance" regarding "CTPI's grossly negligent performance of its obligations"); ¶¶ 146-50 (Count 6, allegations regarding substantial assistance to Cobra Finance by "Santander" and "Defendants"); ¶¶ 151-55 (Count 7, allegations that "CEI has breached the implied covenant of good faith and fair dealing.").)  To the extent any of these claims could possibly be construed as being asserted against TSE, they fail for the same reasons the counts discussed in this Motion fail.  That is, CMB lacks standing to bring them in this bankruptcy because they are actually claims brought in the name of SolarReserve, and because they fail to state a claim against TSE.

**ARGUMENT**

Pursuant to 11 U.S.C. § 502(b)(1), a claim must be disallowed to the extent it is unenforceable under applicable law. *In re Tribune Media Co.*, 616 B.R. 475, 486 (Bankr. D. Del. 2020). "To determine whether claims are enforceable for bankruptcy purposes, § 502 relies upon applicable non-bankruptcy law." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 245 n. 66 (3d Cir. 2004), *as amended* (Feb. 23, 2005). Thus, an objection to a proof of claim will be sustained when a claimant lacks standing to assert those claims or fails to adequately state a claim under applicable state substantive or procedural law. *See In re Lane*, 589 B.R. 399, 408 (9th Cir. BAP 2018), *aff'd*, 959 F.3d 1226 (9th Cir. 2020) ("a challenge to a claimant's standing is a substantive objection under § 502(b)(1), and not merely a procedural one, because it goes directly to the claimant's ability to enforce the debt"); *In re Tribune Media Co.*, 616 B.R. at 486 (sustaining Debtor's objection to proof of claim when claimant failed to state a claim for negligent misrepresentation).

Here, the Nevada Proofs of Claim are premised solely on a separate litigation brought in Nevada state court under Nevada law. Under Nevada Rule of Civil Procedure 12(b)(5), a complaint should be dismissed for failure to state a claim when it does not allege a "set of facts, which, if true, would entitle [the plaintiff] to relief." *In re Amerco Derivative Litig.*, 252 P.3d 681, 692 (Nev. 2011). Moreover, a plaintiff's fraud claim must be pled "with particularity the circumstances constituting fraud or mistake." Nev. R. Civ. P. 9(b). This requires that the plaintiff detail "the time, the place, the identity of the parties involved, and the nature of the fraud" to avoid dismissal. *Arcenas v. Mortgageit, Inc.*, No. 68178, 2016 WL 3943342, at *1 (Nev. Ct. App. July 13, 2016).

27116455.1

13

## I.     CMB and SolarReserve Lack Standing to Assert the Proofs of Claim Against TSE in This Bankruptcy.

As the Delaware Court of Chancery has now repeatedly held, SolarReserve's real relationship to the Debtor is that of a remote, indirect investor. *SolarReserve CSP Holdings, LLC*, 2020 WL 1291638, at *7. SolarReserve subsequently assigned certain interests in the Debtor to CMB, which stepped into SolarReserve's shoes to bring the claims in the Nevada action. (*See* Am. Compl. ¶ 15 (claims in Nevada action brought by "Group IX [as] the assignee of certain claims asserted herein formerly belonging to SolarReserve, LLC, SolarReserve CSP Finance, LLC, and SolarReserve CSP Holdings, LLC.").) This interest that was assigned by SolarReserve to CMB was separated by four distinct layers of ownership:



This is too remote to afford CMB or SolarReserve party-in-interest status in this Chapter 11 case, and for that reason the Proofs of Claim should be disallowed for lack of standing.

Section 1109(b) of the Bankruptcy Code provides that "[a] party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear to be heard on any issue that arises under [chapter 11]." 11 U.S.C. § 1109(b). "An equity security holder in this context is

a *debtor's* equity security holder." *Su v. Offshore Grp. Inv. Ltd. (In re Vantage Drilling Int'l)*, 603 B.R. 538, 545 n.4 (D. Del. 2019) (citing 11 U.S.C. § 101(17)).  While bankruptcy courts generally interpret the term "party in interest" broadly, a party with an indirect interest in the debtor is unlikely to be a "party in interest" for purposes of the Bankruptcy Code.  *See Krys v. Official Comm. of Unsecured Creditors of Refco, Inc. (In re Refco, Inc.)*, 505 F.3d 109, 111 (2d Cir. 2007) (holding individual investor in corporation did not have standing as party in interest to individually assert claim against debtor's estate); *In re Saint Vincent's Catholic Med. Ctrs. of New York*, 429 B.R. 139, 149 (Bankr. S.D.N.Y. 2010) (finding that "party in interest" for purposes of Bankruptcy Code is party who, under applicable substantive law, has legal right which is sought to be enforced or is party entitled to bring suit); *In re Innkeepers USA Trust*, 448 B.R. 131, 141 (Bankr. S.D.N.Y. 2011) (finding holder of beneficial interest in trust that owned debtors' fixed rate loan was not a "party in interest" as certificate holder because holder was merely an investor in a creditor); *Peterson v. U.S. Bank Nat'l Ass'n*, 918 F. Supp. 2d 89 (D. Mass. 2013) (citing positively to *Refco's* holding that investors lack standing to appear in bankruptcy court and noting that the "general principle [is] that party in interest standing does not arise if a party seeks to assert some right that is purely derivative of another's party's rights in the bankruptcy proceeding" (citations omitted)).

This District has recently upheld the "axiomatic" proposition that the relationship of a shareholder to a debtor is the type of connection that is "too attenuated to apply the predicate for standing to appear and be heard and object in [a bankruptcy] court." *Vantage*, 603 B.R. at 543.  In *Vantage*, a disgruntled shareholder of the debtors' parent company, which itself was the subject of liquidation proceedings in the Cayman Islands, objected to the debtors' plan of reorganization. *See id*. at 540-43.  The shareholder argued, among other things, that the parent company was not properly authorized to participate in the debtors' reorganization. *Id*. at 542.  The bankruptcy court

denied the shareholder standing, noting (i) the shareholder's attenuated connection to the debtors, (ii) the lack of a pecuniary or economic interest susceptible to redress and as to which parties should be able and afforded an opportunity to address the bankruptcy court; and (iii) the fact that the shareholder's concerns were properly addressed to the Caymans court. *Id*. at 543, 545. The District Court for the District of Delaware affirmed the bankruptcy court's analysis and conclusion. Citing and agreeing that *Refco* was directly on point, the District Court also noted that party-in-interest standing "does not arise if a party seeks to assert some right that is purely derivative of another party's rights in the bankruptcy proceeding." *Id*. at 545-46.

Here, the Books and Record Proof of Claim is brought by SolarReserve, and (as shown below) the three claims CMB asserts against TSE in the Nevada action are also brought in the name of SolarReserve. (*See generally* Am. Compl. ¶ 15.) The Delaware Court of Chancery has already ruled that SolarReserve explicitly bargained away its direct ownership interests in the Debtor and, based on its tenuous relationship to the Debtor, has denied SolarReserve's repeated attempts to exercise control, finding that SolarReserve was attempting to exercise rights it had expressly bargained away. (*See supra* at 10-12.) SolarReserve lacks standing to assert these claims directly, and so too does CMB indirectly because it simply stands in SolarReserve's shoes. *See, e.g.*, *In re Enron Corp.*, 379 B.R. 425, 435–36 (S.D.N.Y. 2007) ("With respect to assignments, 'an assignee stands in the shoes of the assignor and subject to all equities against the assignor.' In other words, 'an assignee of a claim takes with it whatever limitations it had in the hands of the assignor.' These principles are a corollary to the well-established doctrine of *nemo dat qui non habet*: an assignor cannot give more than he has.") (internal alterations and citations omitted); *Ward v. Sun Valley Foods Co., Inc.*, 212 Fed. App'x 386, 391 (6th Cir. 2006) ("[I]t is a fundamental rule of the law of contract that the assignee stands in the shoes of the assignor, possessing the same

rights and remaining subject to the same defenses as the assignor."). *C.f. In re KB Toys Inc.*, 736 F.3d 247, 249 (3d Cir. 2013) (holding that a trade claim that is subject to disallowance under § 502(d) in the hands of the original claimant is similarly disallowable in the hands of a subsequent transferee).

## II.    CMB Lacks Standing and Fails to Assert a Claim for Fraud Against TSE.

CMB asserts a claim for fraud against TSE and CEI in the Nevada action.  (*See generally* Am. Compl. ¶¶ 128–136.)  The allegations of the Amended Complaint are clear, however, that the factual predicate for this claim is that TSE defrauded *SolarReserve*, not CMB.  (*Id.* ¶ 136.)  But as explained above, SolarReserve lacks standing to assert claims against TSE in this bankruptcy, and therefore so too does CMB.  Moreover, even if CMB had standing to assert this claim (and it does not), it should be disallowed because it fails to state a claim as a matter of Nevada law.

### a.    *CMB Lacks Standing to Assert a Claim For Fraud Against TSE in This Bankruptcy Proceeding.*

Plaintiff's theory of fraud is, in essence, that "TSE, with the substantial assistance of CEI and Santander, prematurely granted Provisional Acceptance of the Project, despite the Project being incomplete, inoperable, and not meeting the requirements for Provisional Acceptance, so as to keep the Project from financial failure." (Am. Compl. ¶ 129.)  Putting aside that the Amended Complaint acknowledges, paradoxically, that TSE was in fact the *victim* of this alleged fraud (*see* Am. Compl. ¶ 132, 134), the Amended Complaint is equally clear that it was *SolarReserve*, not CMB, who was allegedly defrauded.  (*Id.* ¶ 136.)  Specifically, CMB alleges that "[a]s a direct and proximate result of CEI's and Santander's fraudulent nondisclosures and misrepresentations, *SolarReserve* became the operator/manager of a plant that was impossible to operate at a level contractually required under the PPA . . . [which] *caused SolarReserve to be unable to obtain*

*revenue from the Project or Cobra*." (*Id.* (emphasis added).)  Thus, SolarReserve was the "direct and proximate" victim of the alleged fraud, not CMB.

To be sure, CMB posits that the alleged fraud caused SolarReserve to be "unable to service the group IV debt, thereby causing CMB damages." (*Id.*)  But the fact that SolarReserve could not repay its contractually-obligated debts to CMB only serves to underscore that SolarReserve was the proximate victim of the alleged fraud, not CMB.  Stated differently, absent the assignment of claims from SolarReserve, CMB could not have brought a claim for common law fraud against TSE as a remote, secondary victim of the alleged fraud.  *Cf. In re Atomica Design Group, Inc.*, 556 B.R. 125, 157 (Bankr. E.D. Pa. 2016) (holding Debtor could not recover on RICO fraud claim because "Debtor was [], at most, indirectly injured by the acts allegedly committed by the Joint Defendants . . . the Court will not 'go beyond the first step' in the chain of causation.").

Moreover, even if SolarReserve were to assert this fraud claim on its own behalf, it would also lack standing as an indirect equity holder of the Debtor.  Section 510(b) of the Bankruptcy Code provides that securities-related fraud claims "shall be subordinated to all claims or interests that are senior to or equal the claim or interest represented by such security, except that if such security is common stock, such claim has the same priority as common stock." 11 U.S.C. § 510(b).  Courts agree that any claims subject to section 510(b), like those of SolarReserve and CMB, are afforded no greater priority than the claimant's underlying equity interest.  *See, e.g., In re Geneva Steel Co.*, 281 F.3d 1173, 1177 (10th Cir. 2002) (holding "if a claim (usually alleging some sort of securities-related fraud or similar injury) falls within the reach of [section 510(b)], it is treated on an inferior or equal basis with the security from which the claim arose"); *In re Granite Partners, L.P.*, 208 B.R. 332, 340-41 (Bankr. S.D.N.Y. 1997) ("[s]ection 510(b) prevents a shareholder from converting his interest into a claim and sharing *pari passu* with other unsecured

creditors"). Thus, SolarReserve's position as a "remote, indirect investor" is fatal to its (and consequently CMB's) standing on this issue, as SolarReserve's only fraud claim is on account of its indirect equity interest in the Debtor, which does not afford it party-in-interest standing in the Chapter 11 Case. *See In re Vantage Drilling Int'l*, 603 B.R. 538 (D. Del. 2019); *Saint Vincent's Catholic Med. Ctrs. of New York*, 429 B.R. 139, 149 (Bankr. S.D.N.Y. 2010); *In re Refco*, 505 F.3d 109 (2d Cir. 2007). Accordingly, SolarReserve, and CMB as its assignee, lack standing to seek recovery against TSE on this claim in the bankruptcy. (*See* Section I, *supra*.)

### b. *CMB Fails to State a Claim for Fraud Under Nevada Law.*

Even if CMB did have standing to assert a proof of claim for fraud (and it does not), CMB's convoluted theory of fraud fails to state a claim under controlling Nevada law. Under Nevada law, a plaintiff must plead with particularity: (1) false representation made by the defendant; (2) defendant's knowledge or belief that the representation is false (or insufficient basis for making the representation); (3) defendant's intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation; (4) plaintiff's justifiable reliance upon the misrepresentation; and (5) damage to the plaintiff resulting from such reliance. *Bulbman, Inc. v. Nev. Bell*, 825 P.2d 588, 591-92 (Nev. 1992). Moreover, to satisfy the heightened pleading standard applicable to fraud claims under Nevada law, a plaintiff must detail "the time, the place, the identity of the parties involved, and the nature of the fraud" or face dismissal. *Arcenas v. Mortgageit, Inc.*, No. 68178, 2016 WL 3943342, at *1 (Nev. Ct. App. July 13, 2016). CMB has failed to meet its burden in this regard.

As an initial matter, CMB repeatedly alleges facts demonstrating that TSE was the *victim* of Cobra's alleged fraud, not the perpetrator. Specifically, CMB alleges that, in agreeing to the allegedly fraudulent Provisional Acceptance, "***TSE and SolarReserve*** . . . rel[ied] upon the Cobra

entities assurances that they would correct all punch list items and warranty work, so that they could receive cash grants and pay down the senior loan as well as receive the income generated from the sale of electricity under the PPA." (Am. Compl. ¶ 134 (emphasis added).) Likewise, CMB alleges that "Defendants . . . *affirmatively and misleadingly informed (i) TSE* that the punch list items would be resolved," which induced TSE to "premature[ly] grant [the] Provisional Acceptance." (*Id*. ¶ 129 (emphasis added).) Moreover, CMB repeatedly details the knowledge, motivations, and alleged misrepresentations of CEI, Santander, and Cobra throughout Count III. (*See id.* ¶¶ 130 ("*CEI and Santander* knew that TSE would not be eligible for government-funded incentives . . ."); 131 ("*CEI and Santander* knew that the Project did not meet the necessary conditions for Provisional Acceptance"); 133 (detailing motivations of "*Defendant CEI*" in failing to make disclosures); 135 ("*The Cobra Defendants misrepresented and misled DoE*"); 136 ("As a direct and proximate result of *CEI's and Santander's fraudulent nondisclosures and misrepresentations* . . .") (emphasis added).) By contrast, the sole mention of TSE is that "TSE and SolarReserve agreed to the Provisional Acceptance, relying upon the Cobra entities assurances that they would correct all punch list items and warranty work." (*Id.* ¶ 134.) Bringing a fraud claim against TSE based on the misrepresentations of other defendants to TSE is nonsensical, if not outright frivolous.[12]

In any event, even if TSE's reliance on Cobra, CEI, and Santander's misrepresentations could somehow make it a party to a fraud upon SolarReserve, the claim would still fail because CMB utterly fails to meet the heightened pleading requirements applicable to fraud claims under Nevada law. Specifically, the Amended Complaint does not, as it must, particularize "the time,

---

[12] TSE reserves all rights to seek appropriate relief under Federal Rule of Civil Procedure 11, Federal Rule of Bankruptcy Procedure 9011, their state equivalents, and any other applicable law or rule for CMB and SolarReserve Holding's filing of frivolous claims, as well as for CMB's violation of the automatic stay.

the place, [or] the identity of the parties involved" in making a false statement by TSE to Plaintiff. *Arcenas v. Mortgageit, Inc.*, No. 68178, 2016 WL 3943342, at *1 (Nev. Ct. App. July 13, 2016). To that end, Nevada law further requires that "a plaintiff suing a corporation under a fraud theory *must* allege the name of the specific person that made the fraudulent misrepresentations." *Id.* at *2 (emphasis added). The Amended Complaint does not meet any of these requirements—it does not identify a specific individual at TSE who made fraudulent misrepresentations to CMB and it does not identify the time or place at which any person did so on behalf of TSE. This mandates dismissal. *Id.* (holding that "district court properly dismissed the [fraud] claim for lack of particularity" where claim did "not identify the specific person that allegedly made the fraudulent statement.").

Further, if CMB's threadbare pleading did meet the heightened standard applicable to fraud claims, it would still fail because it does not plead any of the essential elements of a fraud claim under Nevada law. Specifically, the Amended Complaint does not allege a "false representation" made by TSE to CMB—indeed, the Amended Complaint in fact fails to allege *any* statement by TSE, let alone a false representation. Instead, CMB's entire fraud claim is premised on the allegation that "TSE and SolarReserve agreed to the Provisional Acceptance." (*Id.* ¶ 134.) But CMB fails to plead how a documented, formalized, and duly executed contractual amendment could plausibly constitute a *false representation* by TSE to CMB. To wit, CMB makes no allegation in the Amended Complaint that TSE represented to CMB that "Provisional Acceptance" had been achieved using the *original* definition in the EPC Contract. Hence, no false statement, the predicate for any claim of fraud, has been pled.

Moreover, CMB alleges no facts that would support an inference that TSE had "intention to induce the plaintiff to act or to refrain from acting in reliance upon the misrepresentation."

*Bulbman*, 825 P.2d at 592.  The plaintiff in the Nevada action is CMB, an entity with whom TSE had no direct relationship or any dealings with respect to the Project.  TSE is not alleged to have been in privity with CMB, nor is TSE alleged to have owed CMB fiduciary duties.  Instead, CMB is simply alleged to have provided financial support to SolarReserve, who in turn had an indirect interest in TSE through multiple levels of ownership.  With CMB having no connection with TSE, it is never explained how or why TSE would have had the intent to defraud CMB.

Finally, CMB's theory of the "fraud" is self-defeating.  CMB acknowledges, as it must, that "[f]or its part, SolarReserve ***agreed to premature Provisional Acceptance*** because the Cobra Defendants convinced it that the Project would lose eligibility for government-funded incentives necessary for the Project's financial viability if TSE did not grant Provisional Acceptance."  (Am. Compl. ¶ 82 (emphasis added).[13])  This too is fatal to the alleged fraud.  SolarReserve could not have been "defrauded" by a sham Provisional Acceptance through an amendment to the EPC by TSE and Cobra when SolarReserve ***agreed to*** such Provisional Acceptance because it believed that it was in its best interest and the best interest of the Project to do so.  Put simply, no claim for fraud is pled where the plaintiff has actual knowledge of the statement's supposed falsity—here, the so-called "sham" Provisional Acceptance.  *See Bulbman*, 825 P.2d 588, 591-92 (Nev. 1992) (Plaintiff must plead reasonable reliance on false statement); *Sammy v. Haupel*, 170 A.D.3d 1224, 1226 (N.Y. App. Div. 2019) (reasonable reliance requirement not satisfied where plaintiff "could not [] claim to have believed that the [statement] was true").[14]

---

[13] Even CMB's acknowledgment that SolarReserve "agreed" to Amendment No. 3 to the EPC Contract is disingenuous:  at the time of the amendment SolarReserve was the managing member of TSEH II and its officers were members of the board of TSE and thus effectively was in control of the Project and negotiated the amendment.  In short, CMB is alleging that SolarReserve defrauded itself.

[14] By accepting the Provisional Acceptance, SolarReserve, and CMB by extension, is barred from later challenging it under the common law doctrine of waiver.  *See Nev. Yellow Cab Corp. v. Eighth Judicial Dist. Court ex rel. Cty. of Clark*, 152 P.3d 737, 740 (Nev. 2007) (defining waiver as "the intentional relinquishment of a known right.").

III.    **CMB Lacks Standing and Fails to Assert a Valid Claim for Tortious Interference With Contractual Relations Against TSE as a Matter of Law**

CMB next asserts a claim against TSE for Intentional Interference with Contractual Relations, or tortious interference. This claim should be disallowed for the same reasons CMB's fraud claim should be disallowed: first, because it is brought in the name of SolarReserve, who lacks standing to submit such a claim in this bankruptcy, and second, because it fails to state a claim under governing Nevada law.

a.   *CMB Lacks Standing to Assert a Claim for Tortious Interference Against TSE in This Bankruptcy.*

CMB alleges that TSE and the Cobra Defendants intentionally interfered with the contractual relationship between CEI and ***SolarReserve CSP Holdings, LLC***, and that, as a result, ***SolarReserve CSP Holdings, LLC*** was effectively deprived of its rights and interests in Tonopah Solar Investment, LLC ("TSI"), including its purported right to appoint a representative to the TSE Board of Managers. (*See* Am. Compl. ¶¶ 157-58.) Nowhere in the Amended Complaint is there an allegation that TSE interfered with a contract to which ***CMB*** was a party, nor does the complaint allege that CMB was in any way deprived by TSE's alleged contractual interference. The claim thus properly belongs to SolarReserve, not CMB.

That this claim properly belongs to SolarReserve is further underscored by the fact that ***SolarReserve Holdings*** filed and then abandoned a pre-petition lawsuit against TSE raising these same allegations. *See SolarReserve CSP Holdings, LLC v. Tonopah Solar Energy, LLC*, No. 2019-0791 (Del. Ch. Oct. 2, 2019) ("*Tonopah I*"). Though styled as a claim for declaratory judgment to confirm the right of SolarReserve to appoint a manager of TSE under the LLC agreement, the issue presented in *Tonopah I* was identical to that raised in the Nevada action—namely, whether the DOE's removal of SolarReserve's appointee to the TSE Board of Managers in September 2019 was proper or infringed on SolarReserve's rights under TSE's governing agreements.

In *Tonopah I*, SolarReserve alleged that DOE's Notice of Default was ineffective for purposes of removing SolarReserve's manager from TSE's board of managers and sought a judgment declaring that SolarReserve's manager must remain in place pursuant to the LLC agreement.  (*See Tonopah I*, Verified Complaint Pursuant to Section 18-110 of the Delaware LLC Act.)  Here, again, CMB alleges, as the predicate for its tortious interference claim, that "TSE . . . intentionally interfered with the contractual relationship between CEI and [SolarReserve] by engaging in overt acts designed to marginalize and expel [SolarReserve] from TSI and to deprive it of its interest in TSI[.]"  (Am. Compl. ¶ 157.)  Notably, after TSE moved to dismiss *Tonopah I* on October 19, 2019, arguing, *inter alia*, that the DOE had an absolute right to appoint its own nominees upon the occurrence of an "Event of Default" under the LGA, that an "Event of Default" had unquestionably occurred because the NVE had terminated the PPA, and therefore that SolarReserve was seeking to avoid through litigation the clear consequences of the corporate governance documents that it had executed to establish TSE and obtain financing,[15] SolarReserve completely abandoned this claim, instead seeking equitable dissolution of TSE.[16]

The plain language of the Amended Complaint as well as the pre-petition litigation history between TSE and SolarReserve both serve to establish that this is a claim belonging to SolarReserve, not CMB, and therefore cannot be pursued in this bankruptcy by CMB (and, if pursued by SolarReserve, would fare no better than its remote, indirect equity interest).

### b.  *CMB Fails to State a Claim for Tortious Interference.*

Even if CMB had standing to assert the claim in the bankruptcy (which it does not), CMB's claim fails as a matter of law because CMB fails to adequately plead a claim for tortious

---

[15] *See Tonopah I*, Defendant Tonopah Solar Energy, LLC's Motion To Dismiss The Complaint.
[16] *See SolarReserve CSP Holdings, LLC v. Tonopah Solar Energy, LLC*, No. 19-1930 (Del. Ch. Nov. 5, 2019), Amended Complaint.

27116455.1

interference under Nevada law.  To state a claim for tortious interference, a plaintiff must establish: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage.  *J.J. Industries, LLC v. Bennett*, 71 P.3d 1264, 1267 (Nev. 2003).  "At the heart of [an intentional interference] action is whether Plaintiff has proved *intentional acts by Defendant* intended or designed to disrupt Plaintiff's contractual relations[.]"  *Id.* at 1268. Therefore, the inquiry necessarily concerns the defendant's motive or ultimate purpose that he or she is seeking to advance.  *Id.* at 1268-69.

The Amended Complaint fails to allege that TSE engaged in intentional acts that were intended to disrupt SolarReserve's contractual relationship with CEI.  The crux of SolarReserve's argument is that its contract with CEI was disrupted when it was "ousted" as manager of TSE. (Am. Compl. ¶¶ 91-101.)  CMB focuses almost exclusively on DOE's conduct in describing SolarReserve's allegedly improper "ouster" from TSE.  (*See Id.* ¶¶ 95-96.)  CMB's allegations that DOE, in concert with TSE's shareholders and lender, removed SolarReserve from the board of managers cannot form the basis of a claim for tortious interference against TSE because it fails to plead that TSE itself engaged in any "intentional" acts designed to disrupt SolarReserve's rights under any contract.

Finally, for the avoidance of doubt, to the extent CMB attempted to assert tortious interference claims against TSE in counts 5 and 6 of the Amended Complaint (which allege tortious interference by unspecified defendants as to a contract between Group IX and SolarReserve Holdings), CMB has failed to state a claim as to TSE.  The thrust of those counts are that other defendants (not TSE) failed to disclose to CMB Cobra's allegedly grossly negligent performance with respect to the Project.  (*See* Am. Compl. ¶¶ 144-49.)  However, CMB fails to

allege any intentional acts by TSE designed to disrupt CMB's contractual relations.  In fact, CMB fails to identify *any* actions by TSE that would constitute interference with those contracts. Further, given that CMB and TSE are not in any fiduciary or contractual relationship, CMB fails to plead any duty of TSE's requiring it to disclose putative misconduct by Cobra or anyone else.

IV.    **CMB Lacks Standing and Fails to Assert a Valid Claim for Aiding and Abetting a Breach of Fiduciary Duty Against TSE as a Matter Of Law**

Finally, CMB asserts a claim against TSE for allegedly aiding and abetting a breach of fiduciary duty by CSP Holdings, LLC.  (*See* Am. Compl. ¶ 164.)  This claim, too, should be disallowed because CMB lacks standing to bring it in this bankruptcy, and because it fails to state a claim upon which relief can be granted.

a.    *CMB Lacks Standing to Bring an Aiding and Abetting Breach of Fiduciary Duty Claim Against TSE in This Bankruptcy.*

As with CMB's fraud and tortious interference claims, CMB's aiding and abetting breach of fiduciary duty claim is, in fact, a claim held by SolarReserve, not CMB.  Specifically, the Amended Complaint alleges that "CEI breached its fiduciary duties *owed to SolarReserve CSP Holdings, LLC*." (Am. Compl. ¶ 164 (emphasis added).)  As laid out in the Amended Complaint, these fiduciary duties were allegedly imposed upon the parties who "entered into the TSI LLC Agreement"—that is, "CEI and SolarReserve CSP Holdings, LLC."  (Am. Compl. ¶ 164.)  CMB is not, and is not alleged to have been, a party to the TSI LLC Agreement, and is not alleged to have been owed fiduciary duties by CEI or anyone else.

The Amended Complaint likewise posits that "CEI breached its fiduciary duties *owed to Solar Reserve CSP Holdings, LLC*" and that "as a direct and proximate result of CEI's wrongful conduct, *SolarReserve CSP Holdings, LLC*, has been effectively deprived of its rights and interests in TSI."  (Am. Compl. ¶¶ 161-62 (emphasis added).)  Again, there are no allegations that CEI breached any fiduciary duties owed to CMB.

Thus, any claim CMB might have for breach of fiduciary duty, or against TSE for allegedly aiding and abetting said breach, is derivative of SolarReserve's claim as the party to whom fiduciary duties were actually owed.  But SolarReserve lacks standing to assert claims against TSE in this bankruptcy proceeding, *see Vantage*, 603 B.R. at 543, and CMB therefore also lacks standing to assert those same claims on SolarReserve's behalf.  Accordingly, CMB's claim for aiding and abetting a breach of fiduciary duty against TSE must be disallowed.

        b. *CMB Fails to State a Claim for Aiding and Abetting Breach of Fiduciary Duty Against TSE.*

CMB's claim likewise fails as a matter of law because CMB fails to adequately plead the elements necessary to state a claim for aiding and abetting a breach of fiduciary duty.  Under Nevada law, a claim for aiding and abetting a breach of fiduciary duty requires "that four elements be shown:  (1) a fiduciary relationship exists, (2) the fiduciary breached the fiduciary relationship, (3) the third party knowingly participated in the breach, and (4) the breach of the fiduciary relationship resulted in damages." *In re Amerco Derivative Litig.*, 252 P.3d 681, 702 (Nev. 2011).[17]

The first theory upon which CMB bases its aiding and abetting claim is that "TSE and the Cobra Defendants provided substantial assistance to CEI by refusing to give SolarReserve access to TSE's books and records while negotiating and offering valuable consideration for the release of the Cobra Defendants from any liability for their wrongful conduct in connection with the construction and operation of the project."  (Am. Compl. ¶ 164.)  But CMB's inability to access TSE's books and records is the exact issue that was litigated and resolved by Vice Chancellor

---

[17] TSE is an LLC incorporated under the laws of Delaware.  Regardless of whether Delaware or Nevada law applies, however, the standard for aiding and abetting a breach of fiduciary duty claim is the same because Nevada has adopted the rule applied by Delaware courts.  *See In re Amerco Derivative Litig.*, 252 P.3d 681, 702 (Nev. 2011) (adopting "the standard applied by Delaware courts").

Slights in the Delaware Court of Chancery earlier this year. *See SolarReserve CSP Holdings, LLC v. Tonopah Solar Energy, LLC*, No. CV 2020-0064-JRS (Del. Ch. July 24, 2020). After a one-day bench trial, the Chancery Court ruled against SolarReserve, noting in its opinion that SolarReserve "once again has sought to exercise rights it knowingly bargained away and cannot prove that it is entitled to relief." *SolarReserve CSP Holdings, LLC v. Tonopah Solar Energy, LLC*, No. CV 2020-0064-JRS, 2020 WL 4251968, at *1 (Del. Ch. July 24, 2020). It simply cannot have aided and abetted a breach of fiduciary duty by Cobra for TSE to refuse to provide books and records to SolarReserve when the Delaware Court of Chancery has explicitly ruled that TSE was under no obligation to do so.

CMB's second theory of fiduciary breach is that "TSE and the Cobra Defendants provided substantial assistance to CEI by . . . demanding a $475 million capital contribution or consent to the pre-negotiated agreement on 10 days' notice without providing any information that would allow SolarReserve to meaningfully evaluate alternatives or pursue alternative remedies." (Am. Compl. ¶ 164.) This too fails to plead TSE's knowing participation in any breach of fiduciary duty. Plaintiff alleges that "***TSE*** requested that TSEH II, as the sole member of TSE, make a $475 million capital contribution to pay down the DOE loan and to provide it working capital." (Am. Compl. ¶ 114 (emphasis added).)

But TSE is not alleged to have owed any fiduciary duties to SolarReserve or CMB (which it does not owe in any case); rather, only CEI is alleged to have owed SolarReserve fiduciary duties. Plaintiff does not explain how the capital call by TSE constituted substantial assistance in any breach by CEI or that the capital call "caused" the $90 million in damages that CMB seeks in the Nevada action. Notably, while CMB complains that the capital call was made "on just 10 days' notice" and that it was denied access to certain requested information, it fails to plead in the

Amended Complaint that SolarReserve could have made good on the capital call. (Am. Compl. ¶¶ 115-16.) To the contrary, it acknowledges that "TSEH II lacks the ability to make such a substantial capital contribution." (*Id.* ¶ 114.) Thus, the alleged predicate acts by TSE in furtherance to Cobra's alleged breach of fiduciary duty—requesting a contribution by SolarReserve of capital as an alternative to the settlement being negotiated with the DOE and Cobra—bears no "causal" relation to any damages sought in the Amended Complaint by CMB because irrespective of the time or information provided, SolarReserve agrees that it would have been unable to make good on the capital call. As such, CMB fails to state a claim. *See In re SRC Liquidation LLC*, No. 15-10541, 2016 WL 3440555, at *3 (Bankr. D. Del. Mar. 7, 2016), *aff'd sub nom. In re SRC Liquidation LLC*, 581 B.R. 78 (D. Del. 2017), *aff'd*, 765 F. App'x 726 (3d Cir. 2019) (dismissing claim for breach of fiduciary duty where the "Amended Complaint has failed to allege that the plaintiff has suffered damages from the conduct of the Officer and Director Defendants.").

## V.    The Books and Records Proof of Claim Should Be Disallowed

The Books and Records Proof of Claim is an abuse of the bankruptcy proof of claims process and should be dismissed summarily. Almost unbelievably, having lost at trial in *Tonopah III* and had a final judgment entered against it by the Delaware Court of Chancery, SolarReserve now attempts to revive its already-dismissed complaint and use it as the basis to seek unspecified damages in this bankruptcy via a "proof of claim."

As an initial matter, the Books and Records Proof of Claim was filed by SolarReserve Holdings, not CMB. But as shown in detail above, SolarReserve Holdings, as an indirect equity holder of the Debtor, lacks standing in the Debtor's chapter 11 case. Indeed, SolarReserve Holdings' indirect interest in TSE—and resulting lack of standing—was central to Vice Chancellor

Slights' prior dismissal of its breach of contract claim against TSE.  *See SolarReserve CSP Holdings, LLC*, 2020 WL 1291638, at *3-4, *12.

Just as fundamentally, the claims process in a chapter 11 case is predicated on whether the claim is enforceable under "non-bankruptcy law."  *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 245 n.66 (3d Cir. 2004), *as amended* (Feb. 23, 2005).  But here, there was a pre-petition litigation, and indeed a trial, at the conclusion of which the Delaware Court of Chancery determined that SolarReserve Holdings has no claim as a matter of non-bankruptcy law.  Specifically, on July 24, 2020, following a single-day trial, Vice Chancellor Slights issued a final judgment in TSE's favor, holding that SolarReserve could not enforce its purported inspection rights because it "sought to exercise rights it knowingly bargained away and cannot prove that it is entitled to relief." *SolarReserve CSP Holdings, LLC*, 2020 WL 4251968, at *3.  As this claim has already been adjudicated unenforceable against the Debtor, it should be disallowed under section 502(b)(1) with no further action required by the Court.

## CONCLUSION

For all the reasons stated above, the Debtor respectfully submits that CMB and SolarReserve Holdings lack standing in this chapter 11 case and the Proofs of Claim should be disallowed in their entirety pursuant to section 502(b)(1) of the Bankruptcy Code.

Dated:    October 1, 2020          YOUNG CONAWAY STARGATT & TAYLOR, LLP
          Wilmington, Delaware

                                   */s/ Allison S. Mielke*
                                   Edmon L. Morton (No. 3856)
                                   Matthew B. Lunn (No. 4119)
                                   Allison S. Mielke (No. 5934)
                                   Jared W. Kochenash (No. 6557)
                                   Rodney Square
                                   1000 North King Street
                                   Wilmington, Delaware 19801
                                   Tel:    (302) 571-6600
                                   Fax:    (302) 571-1253
                                   Email: emorton@ycst.com
                                           mlunn@ycst.com
                                           amielke@ycst.com
                                           jkochenash@ycst.com

                                   -and-

                                   WILLKIE FARR & GALLAGHER LLP

                                   Matthew A. Feldman (admitted *pro hac vice*)
                                   Todd G. Cosenza (admitted *pro hac vice*)
                                   Paul V. Shalhoub (admitted *pro hac vice*)
                                   Charles D. Cording (admitted *pro hac vice*)
                                   787 Seventh Avenue
                                   New York, New York 10019-6099
                                   Tel:  (212) 728-8000
                                   Fax:  (212) 728-8111
                                   Email: mfeldman@willkie.com
                                           tcosenza@willkie.com
                                           pshalhoub@willkie.com
                                           ccording@willkie.com

                                   *Co-Counsel to the Debtor and Debtor in Possession*

27116455.1

31