## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TONOPAH SOLAR ENERGY, LLC,[1] | Case No. 20-11884 (KBO) |
| Debtor. | **Ref. Docket Nos. 147, 148, 149, 242, 243, 244, 245 & 246** |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER
## CONFIRMING CHAPTER 11 PLAN FOR TONOPAH SOLAR ENERGY, LLC

This Court having considered: (i) the *Amended Chapter 11 Plan for Tonopah Solar Energy, LLC* [Docket No. 148] (including all exhibits, schedules, appendices, and supplements thereto, and as amended, modified and/or supplemented from time to time (including by the terms of this Order), and including the Plan Supplement and any amendments, modifications and/or supplements thereto, together, the "**Plan**"),[2] a confirmed copy of which is attached hereto as Exhibit A; (ii) the *Amended Disclosure Statement for Chapter 11 Plan for Tonopah Solar Energy, LLC* [Docket No. 149] (including all exhibits, schedules, appendices, and supplements thereto, and as amended, modified and/or supplemented from time to time, the "**Disclosure Statement**"); (iii) the *Order: (I) Approving Disclosure Statement; (II) Approving Solicitation and Voting Procedures, Including (A) Fixing the Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of Ballot and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures; and (IV) Granting Related Relief* [Docket No. 147] (the "**Disclosure Statement Order**"), which was entered on September 4, 2020;

---

[1]  The Debtor in this chapter 11 case, along with the last four digits of its federal tax identification number, is Tonopah Solar Energy, LLC (1316).  The Debtor's headquarters is located at 11 Gabbs Pole Line Road, Tonopah, NV 89049.

[2]  Capitalized terms used but not otherwise defined herein have the meanings given to them in the Plan.

(iv) the declarations, certifications and related supplements filed by (a) Epiq Corporate Restructuring, LLC, dated November 18, 2020 [Docket No. 243] (the "**Voting Declaration**"), and (b) Justin D. Pugh, Treasurer of the Debtor and Managing Director of FTI Consulting, Inc., dated November 18, 2020 [Docket No. 245] (to the extent admitted by the Court as reflected on the record of the Confirmation Hearing (as defined below), the "**Pugh Declaration**"); (v) the affidavits, declarations, witness testimony and exhibits, as applicable, admitted into evidence at the hearing conducted on November 20, 2020 and December 3, 2020 to consider confirmation of the Plan (the "**Confirmation Hearing**"); (vi) the arguments of counsel presented at the Confirmation Hearing; (vii) the objections, joinders and/or reservations of rights filed by (a) Nooter/Eriksen, Inc. [Docket No. 180] and (b) CMB Export, LLC, CMB Infrastructure Group IX, LP and SolarReserve CSP Holdings, LLC [Docket No. 221] (collectively, the "**Objections**"), and other informal comments reported by the Debtor; and (viii) the Debtor's memorandum of law filed in support of confirmation of the Plan and in reply to the Objections, dated November 18, 2020 [Docket No. 246]; and this Court having taken judicial notice of all pleadings and other documents filed in this case (the "**Chapter 11 Case**"), all orders entered and written and oral evidence submitted by the Debtor during the pendency of the Chapter 11 Case; and this Court having found that due and proper notice has been given with respect to the Confirmation Hearing and the deadlines and procedures for filing objections to the Plan; and upon the appearance of interested parties having been duly noted in the record of the Confirmation Hearing; and this Court having overruled any and all unresolved objections to confirmation of the Plan and all reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein; and upon the

record of the Confirmation Hearing and the Chapter 11 Case; and after due deliberation thereon, and good and sufficient cause appearing therefor;

**IT IS HEREBY FOUND THAT:[3]**

## JURISDICTION AND VENUE

1.     This Court has jurisdiction to consider the Plan pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference of the United States District Court for the District of Delaware* dated February 29, 2012.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2), and the Debtor has confirmed its consent pursuant to Local Bankruptcy Rule 9013-1(f) to the entry of a final order by this Court in connection with this matter to the extent that it is later determined that this Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.  Venue in this Court is proper under 28 U.S.C. §§ 1408 and § 1409.

## COMMENCEMENT OF THE CASE AND FILING OF THE PLAN

2.     On July 30, 2020 (the "**Petition Date**"), the Debtor commenced the Chapter 11 Case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code in this Court.  Since the Petition Date, the Debtor has operated its business and managed its properties as

---

[3]  The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute this Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Rules 7052 and 9014 of the Federal Rules of Bankruptcy Procedure.  To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

a debtor in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in the Chapter 11 Case.

3.     On the Petition Date, the Debtor filed the Plan, the Plan Supplement[4] and Disclosure Statement.

## VOTING ON PLAN

4.     The Debtor, through its claims agent Epiq Corporate Restructuring LLC, caused the Disclosure Statement, the Plan, and the form of Ballot for the holder of Claims in Class 3 (the "**Voting Class**") (the "**Solicitation Package**") to be transmitted and served in compliance with sections 1125 and 1126 of the Bankruptcy Code, Rules 2002 and 3017 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Bankruptcy Rules**"), and all other applicable provisions of the Bankruptcy Code and Bankruptcy

---

[4]  The Plan Supplement was filed at Docket No. 49.  Amended versions of Exhibit B to the Plan Supplement were filed on September 10, 2020 [Docket No. 156], November 18, 2020 [Docket No. 242] and December 2, 2020 [Docket No. 273].

Rules, which therefore constituted sufficient notice to the holder of such Claims.  No other or further solicitation was or shall be required.

5.      The Debtor was not required to solicit votes from holders of Claims in Class 1, Class 2, or Class 4 because the Plan provides that such Classes are unimpaired and are therefore conclusively presumed to have accepted the Plan.

6.      The Debtor was not required to solicit votes from holders of Interests in Class 5 because the Plan provides that such Class is impaired, shall not receive or retain any property under the Plan, and is therefore deemed to have rejected the Plan.

7.      As set forth in the Voting Declaration and the *Affidavit of Service of Solicitation Materials* [Docket No. 159] that was filed with the Court on September 18, 2020, a Solicitation Package was transmitted to the holder of Claims in Class 3 – the only Class of Claims entitled to vote to accept or reject the Plan – via first class mail on September 11, 2020. Additionally, notice of the Confirmation Hearing and other materials were transmitted to holders

of Claims and Interests in the non-voting Classes in accordance with the terms of the Disclosure

Statement Order.

8.      On November 18, 2020, the Debtor filed the Voting Declaration, certifying

the method and results for the Voting Class.  The sole member of the Voting Class submitted a

Ballot voting to accept the Plan.

9.      Accordingly,  pursuant  to  the  requirements  of  section  1126  of  the

Bankruptcy Code, this Court finds that all Classes eligible to vote on acceptance of the Plan

accepted the Plan.

## THE PLAN COMPLIES WITH THE STANDARDS FOR
## CONFIRMATION UNDER SECTION 1129 OF THE BANKRUPTCY CODE

10.      Section 1129(a)(1).  The Plan complies with each applicable provision of

the Bankruptcy Code.  In particular, the Plan complies with the requirements of sections 1122 and

1123 of the Bankruptcy Code.  Among other things:

    i.    In accordance with section 1122(a) of the Bankruptcy Code, Article IV of the Plan classifies each Claim against and Interest in the Debtor into a Class containing only substantially similar Claims or Interests;

    ii.    In accordance with section 1123(a)(1) of the Bankruptcy Code, Article IV of the Plan properly classifies all Claims and Interests that require classification;

    iii.    In accordance with section 1123(a)(2) of the Bankruptcy Code, Article IV of the Plan properly specifies each Class of Claims or Interests that is not impaired under the Plan;

    iv.    In accordance with section 1123(a)(3) of the Bankruptcy Code, Article V of the Plan properly specifies the treatment of each Class of Claims or Interests that is impaired under the Plan;

    v.    In accordance with section 1123(a)(4) of the Bankruptcy Code, the Plan provides the same treatment for each Claim or Interest of a particular Class unless the holder of such a Claim or Interest agrees to less favorable treatment;

vi.      In accordance with section 1123(a)(5) of the Bankruptcy Code, the Plan provides adequate means for its implementation, including, without limitation, the provisions regarding Effective Date transactions and transfers, the restructuring transactions and management of Reorganized TSE, and the funding of the Plan;

vii.      In accordance with section 1123(a)(6) of the Bankruptcy Code, the Amended Constituent Documents contain a provision prohibiting the issuance of non-voting equity securities;

viii.      In accordance with section 1123(a)(7) of the Bankruptcy Code, the manner of selection of officers, directors and/or managers of Reorganized TSE is consistent with the interests of creditors and equity security holders and with public policy;

ix.      In accordance with section 1123(b)(1) of the Bankruptcy Code, Article V of the Plan impairs or leaves unimpaired, as the case may be, each Class of Claims and Interests;

x.      In accordance with section 1123(b)(2) of the Bankruptcy Code, Article X of the Plan provides for the assumption, assumption and assignment, or rejection of the Debtor's executory contracts and unexpired leases that have not been previously assumed, assumed and assigned, or rejected pursuant to section 365 of the Bankruptcy Code and orders of this Court;

xi.      In accordance with section 1123(b)(3)(A) of the Bankruptcy Code, Articles II and XII of the Plan provide that the treatment of Claims against and Interests in the Debtor under the Plan represents, among other things, the settlement and compromise of certain disputes. Such settlements are fair, equitable, reasonable and in the best interests of the Debtor, Reorganized TSE, their respective Estates, and their stakeholders;

xii.      In accordance with section 1123(b)(3)(B) of the Bankruptcy Code, Article XII of the Plan provides that, except as set forth therein, Reorganized TSE, as applicable, shall have, retain, reserve, and be entitled to assert all claims, Causes of Action, rights of setoff, or other legal or equitable defenses as fully as if the Chapter 11 Case had not been commenced, and all of the Debtor's legal and/or equitable rights respecting any Claim left unimpaired, as set forth in Articles IV or V of the Plan, may be asserted after the Confirmation Date to the same extent as if the Chapter 11 Case had not been commenced;

xiii.    In accordance with section 1123(b)(5) of the Bankruptcy Code, Article V of the Plan modifies or leaves unaffected, as the case may be, the rights of holders of Claims and Interests in each Class;

xiv.    In accordance with section 1123(b)(6) of the Bankruptcy Code, the Plan includes additional appropriate provisions that are not inconsistent with applicable provisions of the Bankruptcy Code; and

xv.    In accordance with section 1123(d) of the Bankruptcy Code, Article X of the Plan provides for the satisfaction of Cure Amounts associated with each executory contract and unexpired lease to be assumed or assumed and assigned pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. Cure Amounts will be determined in accordance with the underlying agreements and applicable law.

11.    <u>Section 1129(a)(2)</u>. The Debtor has complied with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, the Disclosure Statement Order with respect to the Plan and the solicitation of acceptances or rejections thereof. In particular, the Plan complies with the requirements of sections 1125 and 1126 of the Bankruptcy Code as follows:

i.    All persons entitled to receive copies and/or notice of the Disclosure Statement, the Plan and the Confirmation Hearing have received proper, timely and adequate notice in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules, and all such persons have had an opportunity to appear and be heard with respect thereto;

ii.    In transmitting the Plan, the Disclosure Statement, the Ballot, and related documents and notices in soliciting and tabulating the votes on the Plan, the Debtor solicited votes with respect to the Plan in good faith and in a manner consistent with the Bankruptcy Code, including sections 1125 and 1126, the Bankruptcy Rules, the Local Bankruptcy Rules and applicable non-bankruptcy law. Accordingly, the Debtor is entitled to the protections afforded by section 1125(e) of the Bankruptcy Code;

iii.    Written notice of the Confirmation Hearing and the relevant deadlines for the submission of the Ballot and objections to confirmation of the Plan has been provided substantially in the form, within the time, and in accordance with the Bankruptcy Rules and the procedures approved and prescribed by this Court in the

Disclosure Statement Order.  Such written notice is adequate and sufficient notice of the Plan, the contents of the Plan, the Confirmation Hearing, and the opportunity to object to any aspect of the Plan;

iv.      Claims in Class 1, Class 2 and Class 4 under the Plan are unimpaired, and such Classes are presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code;

v.      The Plan was voted on by the only Class of impaired Claims or Interests that was entitled to vote pursuant to the Bankruptcy Code and the Bankruptcy Rules (i.e., Class 3); and

vi.      Class 3 accepted the Plan unanimously, and accordingly, the Plan meets the requirement that at least two-thirds in amount and a majority in number of the Claims actually voting in at least one impaired class vote in favor of the Plan.

12.     Section 1129(a)(3).  The Plan has been proposed in good faith and not by any means forbidden by law.  In so finding, this Court has considered the totality of the circumstances in this Chapter 11 Case.  The Plan is the result of extensive, good faith, arm's-length negotiations among the Debtor, Cobra and the Department of Energy ("**DOE**"), reflects substantial input from such constituencies, and achieves the goal of reorganization embodied by the Bankruptcy Code.

13.     The Debtor filed and has prosecuted the Chapter 11 Case with an honest belief that it was in need of restructuring and that the restructuring contemplated in the RSA and the Plan is the best strategic alternative available to it and all of its stakeholders.  The Debtor's good faith is evident from the record of the Chapter 11 Case, including the Disclosure Statement, the Plan, and the record of the Confirmation Hearing.  The Plan achieves a fair and appropriate result, consistent with the objectives and purposes of the Bankruptcy Code.  The Debtor and each of its officers, managers, advisors and professionals (i) acted in good faith in negotiating, formulating, and proposing, where applicable, the Plan and the agreements, compromises, settlements, transactions, and transfers contemplated thereby, and (ii) will be acting in good faith

in proceeding to (a) consummate and implement the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated thereby, including the Plan Supplement documents, and (b) take any actions authorized, directed or contemplated by this Order or the Plan.  Thus, the Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code.

14.    Section 1129(a)(4).  Except as provided in the Plan and the Cash Collateral Order, no payment for services or costs and expenses in or in connection with this Chapter 11 Case, or in connection with the Plan and incident to this Chapter 11 Case, has been or will be made by the Debtor, other than payments that have been (or subsequently are) authorized by or are subject to an order of this Court.  Pursuant to Section 3.2 of the Plan, and except as otherwise provided herein, in the Plan or in the Cash Collateral Order, all payments to be made to Professional Persons or other entities asserting a Professional Fee Claim for services rendered before the Effective Date will be subject to review and approval by this Court.

15.    Section 1129(a)(5).  To the extent known, the Debtor has disclosed the identities and affiliations of the individuals proposed to serve, after confirmation of the Plan, as directors, officers, and/or managers of Reorganized TSE, and the identity and the nature of compensation of insiders that will be employed or retained by Reorganized TSE.  The appointments to, or continuance in, such offices by the individuals proposed to serve, after confirmation of the Plan, as directors, officers, and/or managers is consistent with the interests of holders of Claims and Interests and with public policy.

16.    Section 1129(a)(6).  The Plan does not provide for any changes in rates that require regulatory approval of any governmental agency.

17.    Section 1129(a)(7).  Each holder of an impaired Claim or Interest in each impaired Class of Claims or Interests that has not accepted the Plan will, on account of such Claim

or Interest, receive or retain property under the Plan having a value, as of the Effective Date, that is not less than the amount that such holder would have received or retained if the Debtor were liquidated under chapter 7 of the Bankruptcy Code on the Effective Date.

18.     Section 1129(a)(8).  The Plan has not been accepted by all impaired Classes of Claims and Interests because, pursuant to section 1126(g) of the Bankruptcy Code, the holders of Interests in Class 5 are conclusively deemed to have rejected the Plan.  Nevertheless, the Plan is confirmable because it satisfies the requirements of section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, as set forth below.

19.     Section 1129(a)(9).  Except to the extent that the holder of a particular Claim has agreed to different treatment, the Plan provides treatment for Administrative Expense Claims, Priority Tax Claims, Professional Fee Claims and Priority Non-Tax Claims that is consistent with the requirements of section 1129(a)(9) of the Bankruptcy Code.

20.     Section 1129(a)(10).  As evidenced by the Voting Declaration, at least one Class of Claims that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).

21.     Section 1129(a)(11).  The information in the Disclosure Statement and the Pugh Declaration, together with the record of the Chapter 11 Case and evidence presented at the Confirmation Hearing, establishes that the Plan is feasible and that confirmation of the Plan is not likely to be followed by the liquidation or the need for the further financial reorganization of the Debtor or Reorganized TSE.

22.     Section 1129(a)(12).  The Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.  Section 3.3 of the Plan provides for the payment of all fees due to the U.S. Trustee.

23.     <u>Sections 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129 (a)(16)</u>.  Sections 1129(a)(13), 1129(a)(14), 1129(a)(15) and 1129(a)(16) of the Bankruptcy Code do not apply to the Chapter 11 Case.

24.     <u>Section 1129(b)</u>.  The Plan does not "discriminate unfairly" and is "fair and equitable" with respect to Class 5, which Class is impaired and deemed to reject the Plan.  The Plan does not discriminate unfairly with respect to such Class because no similarly situated holders of Interests are receiving a recovery under the Plan.  The Plan is "fair and equitable" with respect to Class 5 because (i) no holders of Claims or Interests junior to the Interests in such Class will receive or retain property under the Plan on account of such Claims or Interests, and (ii) no holders of Claims in a senior Class will receive a recovery in excess of 100% of the amount of its Claim(s).  Thus, the Plan may be confirmed notwithstanding the deemed rejection by Class 5.

25.     <u>Section 1129(c)</u>.  The Plan satisfies the requirements of section 1129(c) of the Bankruptcy Code.  The Plan is the only chapter 11 plan filed in the Chapter 11 Case.

26.     <u>Section 1129(d)</u>.  No party in interest, including, but not limited to, any governmental unit (as defined in section 101(27) of the Bankruptcy Code), has requested that this Court deny confirmation of the Plan on grounds that the principal purpose of the Plan is the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, and the principal purpose of the Plan is not such avoidance.

27.     All documents necessary to implement the Plan and all other relevant and necessary documents have been negotiated in good faith and at arm's length and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not in conflict with any federal or state law.  Accordingly, the Plan satisfies the requirements of section 1129(d) of the Bankruptcy Code.

28.     The Debtor, as the proponent of the Plan, has met its burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard.

**EXIT CREDIT FACILITY; EXIT CONTINGENT NOTE**

29.     The Exit Credit Facility (including the term loan and working capital commitment provided thereunder) and the Exit Contingent Note are essential elements of the Plan. The terms of the Exit Credit Facility (including the term loan and working capital commitment provided thereunder) and the Exit Contingent Note are reasonable, and the Debtor has provided adequate notice of the material terms thereof.  The Debtor and Reorganized TSE are authorized, without further approval of this Court, to execute and deliver all agreements, documents, instruments and certificates relating to the Exit Credit Facility and the Exit Contingent Note.

**DISCHARGE, INDEMNIFICATION,**
**INJUNCTIONS, RELEASES AND EXCULPATION**

30.     The discharge, indemnification, injunctions, releases and exculpation provisions set forth in the Plan constitute good-faith compromises and settlements of the matters covered thereby.  Such compromises and settlements are made in exchange for good and valuable consideration and:  (i) are in the best interests of the Debtor, the Estate, and holders of Claims; (ii) are consensual, fair, equitable and reasonable; (iii) are integral elements of the restructuring and resolution of the Chapter 11 Case in accordance with the Plan; (iv) confer substantial benefits on the Debtor's Estate; (v) were given and made after sufficient and appropriate notice and opportunity for a hearing; and (vi) are critical to the success of the Plan and the failure to implement the discharge, indemnification, injunctions, exculpation, and releases would seriously impair the Debtor's ability to confirm and implement the Plan.  Each of the discharge, release, indemnification, injunction and exculpation provisions set forth in the Plan:

<div style="margin-left: 2em">

i.      is within the jurisdiction and judicial power of this Court under 28 U.S.C. §§ 1334(a), (b) and (d);

ii.     is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code;

iii.    is an integral and non-severable element of the settlements and transactions incorporated into the Plan;

iv.    confers a material benefit on, and is in the best interests of, the Debtor and the Estate;

v.     is important to the overall objectives of the Plan to finally resolve all Claims among or against the parties in interest in the Chapter 11 Case with respect to the Debtor, its organization, capitalization, operation and reorganization; and

vi.    is consistent with and permitted by sections 105, 1123, 1125(e) and 1129 of the Bankruptcy Code and other applicable law.

</div>

31.    Brahma Group, Inc. ("**Brahma**") is deemed to have opted out of the third party releases provided for in Section 12.6(d) of the Plan, without the need of any further action or notice by Brahma (including, without limitation, any submission to the Debtor of an executed opt out form or any other document), and the Debtor has acknowledged and agreed to the following:

<div style="margin-left: 2em">

i.      Notwithstanding any other provision of the Plan (including, without limitation, Sections 5.2, 5.4, 7.10, 8.7, 12.1, 12.2, 12.4, 12.5, 12.6, 12.7, and 12.9) or the Confirmation Order, any and all Claims (including, without limitation, any and all Other Secured Claims and General Unsecured Claims) (the "**Brahma Claims**") and Liens (if any) of Brahma (collectively, "**Brahma Claims/Liens**"), and any and all actions and legal proceedings, including (a) the Lien Action (as defined in the Disclosure Statement), (b) all Nevada state court proceedings (including Nye County Case Nos. CV 39348 and CV 39799, separately and/or as consolidated, Clark County case number A-18-777815-C, and all appeals and writ actions taken from such actions), and (c) case number 2:18-cv-01747-RFB-GWF filed in the United States District Court for the District of Nevada (collectively, the "**Brahma Actions**"), relating to the Brahma Claims/Liens, the Crescent Dunes Solar Energy Project (the "**Project**") and/or that certain Surety Bond #854481 (recorded as Doc #898974 in the Official Records of Nye County, Nevada) and Surety Rider Bond

</div>

#854481 (recorded as Doc #900303) provided by Cobra Thermosolar Plants, Inc. as surety (collectively, the "**Surety Bond**"), shall be unimpaired and unaffected by the Plan, the Confirmation Order, and/or other Plan Documents;

ii.     as of the Effective Date, any applicable stay under the Bankruptcy Code (including, without limitation, any stays and injunctions that would otherwise be imposed as of the Effective Date under the Plan and the Confirmation Order) will be lifted and terminated, and not enjoin any Brahma Actions (provided further that Brahma retains its rights to seek earlier relief from the automatic stay or other applicable stay prior to Plan confirmation); and

iii.    there shall be no release and/or discharge of (a) the Debtor or any third parties under the Plan of the Brahma Claims, including, without limitation, all Claims which are pending in the Brahma Actions, and (b) Brahma's rights, liens (if any), and claims under or relating to the Project or the Surety Bond, all of which shall remain unaffected by the Plan, the Confirmation Order, and  the Plan Documents.

Accordingly, it is hereby

**ORDERED** that:

32.     The Plan (in the form annexed hereto as <u>Exhibit A</u>) is CONFIRMED, and each of its provisions (whether or not specifically described herein) is approved pursuant to section 1129 of the Bankruptcy Code.[1]  All Plan Documents, including, but not limited to, the Plan Supplement, are approved in all respects.

33.     The terms of the Plan are incorporated by reference into (except to the extent modified by this Order), and are an integral part of, this Order.

34.     The Effective Date of the Plan shall occur on the first Business Day on which all conditions set forth in Section 11.1 of the Plan have been satisfied or waived in accordance with Section 11.2 of the Plan.

---

[1]     Annexed hereto as <u>Exhibit B</u> is a blacklined version of the Plan, marked to show changes to the version of the Plan filed at Docket No. 148.

35.    All Objections to confirmation of the Plan and any reservation of rights contained therein that (a) have not been withdrawn, waived or settled prior to the entry of this Order, or (b) are not cured by the relief granted herein, are hereby OVERRULED in their entirety and on their merits, and all withdrawn objections or responses are hereby deemed withdrawn with prejudice.  The record of the Confirmation Hearing is hereby closed.

36.    Except as otherwise provided in the Plan, nothing contained in this Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtor had immediately prior to the Effective Date on behalf of the Debtor or the Estate.

37.    The Plan provides for the comprehensive settlement of certain Claims and controversies involving or against the Debtor.  The negotiations of such settlements were conducted in good faith and at arm's length, and each such settlement is of benefit to the Debtor's Estate and represents a fair, necessary and reasonable compromise of such Claims and controversies.  The terms and conditions of each such compromise and settlement are therefore an integral part of the Plan.  The settlements, as reflected in the distributions and treatment of Claims and Interests under the Plan, are fair and reasonable to the Debtor and the Estate and accordingly are approved and constitute good faith compromises and settlements.  The settlements will save the Debtor and the Estate the costs and expenses of prosecuting or defending, as the case may be, various disputes, the outcome of which would likely consume substantial resources of the Debtor's Estate and require substantial time to adjudicate.

A.    **Plan Implementation**

38.    This Order establishes conclusive corporate or other authority, and evidence of such corporate or other authority, required for the Debtor to undertake any and all acts and actions required to implement, or contemplated by, the Plan, including without limitation, the

2

specific acts or actions or documents or instruments identified in Article VII of the Plan, and no board, member or shareholder vote shall be required with respect thereto.

39.    Section 7.8(a) of the Plan shall be replaced in its entirety with the following: "On the Effective Date, the board of managers of Reorganized TSE shall consist of four (4) individuals selected by Cobra, who shall be reasonably acceptable to the Debtor, and identified in the Plan Supplement to be filed with the Bankruptcy Court."

40.    In accordance with section 1142 of the Bankruptcy Code, section 303 of the Delaware General Corporation Law and any comparable provisions of the business corporation or similar law of any other state (collectively, the "**Reorganization Effectuation Statutes**"), but subject to the fulfillment or waiver of all conditions precedent in Section 11.1 of the Plan, without further action by this Court or the interest holders, officers, or managers of the Debtor or Reorganized TSE, the Debtor and Reorganized TSE are authorized to:  (a) take any and all actions necessary or appropriate to implement, effectuate and consummate the Plan, this Order, or the transactions contemplated thereby or hereby, including, without limitation, those transactions identified in Article VII of the Plan and the payment of any taxes owing in respect of distributions under the Plan; and (b) execute and deliver, adopt or amend, as the case may be, any contracts, instruments, releases, agreements and documents necessary to implement, effectuate and consummate the Plan, including the Plan Documents.

41.    To the extent that, under applicable non-bankruptcy law, any of the actions necessary or appropriate to implement, effectuate and consummate the Plan, this Order, or the transactions contemplated thereby or hereby would otherwise require the consent or approval of the interest holders or managers of the Debtor or Reorganized TSE, this Order shall, pursuant to section 1142 of the Bankruptcy Code and the Reorganization Effectuation Statutes, constitute such consent or approval, and such actions are deemed to have been taken by unanimous action

3

of the directors and interest holders of the Debtor or Reorganized TSE.  The provisions of this Order and the Plan shall be, and hereby are, valid, binding and enforceable, notwithstanding any other applicable non-bankruptcy law, without payment of any stamp, real estate transfer, mortgage recording, or other similar tax imposed by state or local law.

42.     Each and every federal, state, and local government agency is hereby authorized and directed to accept any and all documents and instruments necessary, useful, or appropriate (including Uniform Commercial Code financing statements, mortgages, deeds of trusts, indemnity deeds of trusts and any other security documents) to effectuate, implement, and consummate the transactions contemplated by the Plan and this Order.

43.     The consummation of the Plan, including the assumption of any executory contract or unexpired lease by Reorganized TSE, shall not constitute a change in ownership or change in control under any financial instrument, loan or financing agreement, executory contract or unexpired lease or contract, lease or agreement in existence on the Effective Date to which the Debtor is a party.

44.     Subject to the occurrence of the Effective Date, entry of this Order shall constitute entry of an order by the Bankruptcy Court pursuant to sections 365(a) and 1123(b) of the Bankruptcy Code approving the assumptions of all permits, licenses, easements and similar interests unless any of the foregoing has been previously rejected or is rejected under the Plan or otherwise.  To the extent permitted under applicable law and subject to Section 12.11 of the Plan, the Debtor shall be authorized, on and after the Effective Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtor, and pursuant to the terms of this Order, all such licenses, permits, registrations, and governmental authorizations or approvals shall be deemed to be assumed by the Debtor as of the Effective Date; provided that the Debtor complies with all the requirements under the applicable law governing transfers of

any license, registration, government authorization or approval with any department, agency or instrumentality of the United States.  To the extent provided by section 525 of the Bankruptcy Code, no governmental unit may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant relating to the operation of the Debtor on account of the filing or pendency of the chapter 11 case or the consummation of the transactions contemplated under this Plan.

45.    Notwithstanding any other provision in this Confirmation Order, the Plan, or the Plan Documents, nothing relieves the Debtor or the Reorganized Debtor from their obligations to comply with the Communications Act of 1934, as amended, and the rules, regulations and orders promulgated thereunder by the Federal Communications Commission ("**FCC**"). No transfer of any FCC license or authorization held by the Debtors or transfer of control of the Debtors or transfer of control of an FCC licensee controlled by the Debtors shall take place prior to the issuance of FCC regulatory approval for such transfer pursuant to applicable FCC regulations. The FCC's rights and powers to take any action pursuant to its regulatory authority including, but not limited to, imposing any regulatory conditions on any of the above described transfers, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority.

46.    To the maximum extent permitted by law and except as other provided in Section 12.11 of the Plan, any provision that purports to restrict or prevent the assumption or assignment of any such permit, license, easement or similar interest or is breached or deemed breached by the assumption or assignment of any such permit, license, easement or similar interest (including any "change of control" provision) shall be deemed modified such that the transactions contemplated by the Plan shall not entitle the non-Debtor party thereto to terminate such permit, license, easement or similar interest or to exercise other default-related rights with respect thereto.  Except as otherwise provided in Section 12.11 of the Plan, any party that fails to

timely file a Cure Dispute on the basis that consent to assume or assume and assign the applicable permit, license, easement or similar interest is a condition to such assumption or assumption and assignment, shall be deemed to have consented to such assumption or assumption and assignment.

**B.      Approval of Injunction, Release and Exculpation Provisions**

47.     The injunction, release and exculpation provisions contained in the Plan, including those set forth in Article XII of the Plan, as modified by this Order, are expressly incorporated into this Order as if set forth in full herein, and are authorized and approved and shall be immediately effective on the Effective Date of the Plan without further order or action on the part of this Court or any other party.

48.     Upon entry of this Order, all holders of Claims or Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, managers, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

**C.      Approval of Certain Corporate Actions**

49.     The Debtor is authorized to take, on or prior to the Effective Date, such actions necessary or desirable to modify the corporate structure of the Debtor, including, without limitation, the adoption of the Amended Constituent Documents of Reorganized TSE, and any instruments required to be issued under the Plan, to undertake, consummate and execute and deliver any documents relating to the restructuring transaction contemplated by the Plan.

**D.      Order Binding on All Parties**

50.     In accordance with section 1141(a) and other applicable provisions of the Bankruptcy Code and Section 12.1 of the Plan, and notwithstanding any otherwise applicable law, upon the occurrence of the Effective Date, the terms of the Plan and this Order shall be

binding upon, and inure to the benefit of the Debtor, all holders of Claims and Interests, any other person giving, acquiring, or receiving property under the Plan, any and all non-Debtor parties to executory contracts and unexpired leases with the Debtor, any other party in interest in this Chapter 11 Case, and their respective successors and assigns.

51.     On the Effective Date, all settlements, compromises, releases, waivers, discharges, exculpations, and injunctions set forth in the Plan shall be effective and binding on Persons who may have had standing to assert any settled, compromised, released, waived, discharged, exculpated, or enjoined Causes of Action after the Effective Date.

**E.     Vesting and Transfer of Assets**

52.     On the Effective Date, except as otherwise provided in the Plan, all property of the Estate of the Debtor, including all claims, rights and Causes of Action, and any property acquired by the Debtor under or in connection with the Plan, shall vest in Reorganized TSE free and clear of all Claims, liens, charges, other encumbrances and Interests.

**F.     Approval of Discharge of Claims Against and Termination of Interests**

53.     The discharge provisions as set forth in Section 12.2 of the Plan are approved in all respects, are so ordered, and shall be immediately effective on the Effective Date without further order or action on the part of this Court or any other party.

54.     Except as otherwise provided in the Plan, the Cash Collateral Order or this Order, in accordance with, and to the extent provided in, section 1141(d)(1) of the Bankruptcy Code, entry of this Order acts as a discharge, effective as of the Effective Date, of all debts of, Claims against, liens on, and Interests in the Debtor, its assets or properties, which debts, Claims, liens, and Interests arose at any time before the entry of this Order.  The discharge of the Debtor shall be effective as to each Claim, regardless of whether a proof of claim therefor was filed, whether the Claim is or becomes an Allowed Claim or whether the holder thereof voted to accept

the Plan.  On the Effective Date, as to every discharged Claim and Interest, any holder of such Claim or Interest shall be precluded from asserting against the Debtor or Reorganized TSE, the assets or properties of any of them, any other or further Claim or Interest based upon any document, instrument, act, omission, transaction or other activity of any kind or nature that occurred before the Confirmation Date.

## G.    Exemption from Certain Transfer Taxes

55.    Pursuant to section 1146(a) of the Bankruptcy Code and to the fullest extent permitted by applicable law, (i) any issuance, transfer, or exchange under this Plan of New Common Units and the security interests in favor of the lenders under the Exit Credit Facility Agreement, and (ii) the making or delivery of an instrument or transfer under a plan confirmed under section 1129 or 1191 of this title, may not be taxed under any law imposing a stamp tax or similar tax.

## H.    Executory Contracts and Unexpired Leases

56.    Subject to Section 10.4 and 12.11 of the Plan, this Order shall constitute an order of this Court approving the assumption, assumption and assignment, or rejection, as applicable, of executory contracts and unexpired leases, the assumption, assumption and assignment, or rejection of which is provided for in Section 10.1 of the Plan, pursuant to sections 365 and 1123 of the Bankruptcy Code, and such assumption, assumption and assignment, or rejection shall be deemed effective as of the Effective Date.  Consistent with Section 12.11 of the Plan, the assumption or assumption and assignment of any contract or lease with a department, agency, or instrumentality of the United States shall be deemed effective on the later of the Effective Date or the date the Debtor satisfies all the requirements under applicable non-bankruptcy law to recognized the Debtor as the successor in interest of such a contract or lease, including, but not limited to, the Anti-Assignment Act (41 U.S.C. § 6305).

8

57.    Subject to the occurrence of the Effective Date, the Debtor is authorized to assume, assume and assign and/or reject executory contracts or unexpired leases in accordance with Article X of the Plan and orders of this Court.  Each executory contract and unexpired lease assumed pursuant to Section 10.1 of the Plan shall revest in, and be fully enforceable by Reorganized TSE in accordance with its terms, except as modified by the provisions of the Plan, any order of this Court authorizing and providing for its assumption, or applicable federal law. Any order entered after the Confirmation Date by this Court, after notice and a hearing, authorizing the rejection of an executory contract or unexpired lease shall cause such rejection to be a prepetition breach under sections 365(g) and 502(g) of the Bankruptcy Code, as if such relief was granted and such order was entered prior to the Confirmation Date.

58.    As of and subject to the occurrence of the Effective Date and the payment of any applicable Cure Amount, all executory contracts and unexpired leases shall be deemed assumed, except that: (a) any executory contracts and unexpired leases that previously have been assumed or rejected pursuant to a Final Order of this Court shall be treated as provided in such Final Order; (b) any executory contracts and unexpired leases listed on the Schedule of Rejected Contracts and Leases, as amended, modified or supplemented, shall be deemed rejected as of the Effective Date; and (c) all executory contracts and unexpired leases that are the subject of a separate motion to assume or reject under section 365 of the Bankruptcy Code pending on the Effective Date shall be treated as provided for in the Final Order resolving such motion.

I.    **Professional Fee Claims**

59.    Except as otherwise provided in Section 3.2 of the Plan, all proofs or applications for payment of Professional Fee Claims must be filed with this Court by the date that is sixty (60) days after the Effective Date (or, if such date is not a Business Day, by the next Business Day thereafter) or such later date as is determined by this Court.  Pursuant to Section

3.2 of the Plan, objections to Professional Fee Claims must be filed with this Court and served on Reorganized TSE and the affected Professional Person no later than ninety (90) calendar days after the Effective Date.

**J.     Administrative Expense Claims**

60.     Except as otherwise provided in Section 3.1(a) of the Plan, requests for payment of Administrative Expense Claims must be filed with this Court and served on Reorganized TSE, the Claims Agent and the U.S. Trustee within thirty (30) days after the Effective Date.  Such proof of Administrative Expense Claim must include at a minimum:  (i) the name of the Debtor that is purported to be liable for the Administrative Expense Claim; (ii) the name of the holder of the Administrative Expense Claim; (iii) the asserted amount of the Administrative Expense Claim; (iv) the basis of the Administrative Expense Claim; and (v) supporting documentation for the Administrative Expense Claim.  FAILURE TO FILE AND SERVE SUCH PROOF OF ADMINISTRATIVE EXPENSE CLAIM TIMELY AND PROPERLY SHALL RESULT IN SUCH CLAIM BEING FOREVER BARRED AND DISCHARGED.

**K.     Stay of Confirmation Order Waived**

61.     This Order (a) is a final order and the period in which an appeal must be filed shall commence upon the entry hereof, (b) shall be immediately effective and enforceable upon the entry hereof, and (c) for good cause shown, based on the record of the Confirmation Hearing, shall not be subject to any stay otherwise applicable under the Bankruptcy Rules, including Bankruptcy Rules 3020(e) and 6004(h).

**L.     Binding Effect of Prior Orders**

62.     Pursuant to section 1141 of the Bankruptcy Code, effective as of and subject to the occurrence of the Effective Date, and subject to the terms of the Plan and this Order, all

prior orders entered in the Chapter 11 Case, all documents and agreements executed by the Debtor as authorized and directed thereunder, and all motions or requests for relief by the Debtor pending before this Court as of the Effective Date shall be binding upon and shall inure to the benefit of the Debtor, Reorganized TSE and their respective successors and assigns.

**M.    Notice of Confirmation of the Plan**

63.    Pursuant to Bankruptcy Rules 2002(f)(7) and 3020(c)(2), the Debtor or Reorganized TSE, as the case may be, is directed to serve a notice of the entry of this Order, substantially in the form of Exhibit C attached hereto and incorporated by reference (the "**Notice of Confirmation**"), on all parties that actually received notice of the Confirmation Hearing no later than ten (10) days after the Effective Date; provided, however, that Reorganized TSE shall be obligated to serve the Notice of Confirmation only on the record holders of Claims or Interests as of the Confirmation Date.  As soon as reasonably practicable after the entry of this Order, the Debtor shall make copies of this Order and the Notice of Confirmation available on its reorganization website at https://dm.epiq11.com/Tonopah.    The notice described herein is adequate and appropriate under the circumstances of the Chapter 11 Case, and no other or further notice is necessary.

**N.    ICC Arbitration**

64.    Within three (3) Business Days of the Effective Date, Reorganized TSE and Cobra shall jointly request the dismissal with prejudice of the ICC Arbitration.  The Debtor's releases with respect to Cobra pursuant to Section 12.6 of the Plan, the Debtor's agreement to dismiss the ICC Arbitration, and the issuance of the New Common Units to Cobra pursuant to the Plan, are reasonable, appropriate and in the best interests of the Estate in light of the value of the Debtor, the substantial risks, costs, delays and uncertainties that would be associated with litigating and defending against claims in the ICC Arbitration, and Cobra's substantial and

valuable contribution to the Debtor's restructuring, including its efforts in negotiating and assisting in the formulation of the Plan, its commitments under the RSA, the New O&M Agreement and the Cobra Backstop Agreement, its agreement to permit a draw on the Settlement Letter of Credit and the Final Letter of Credit to fund the $200 million cash distribution to the DOE on the Effective Date, its agreement to unconditionally guaranty the Debtor's obligations to the DOE under the Exit Contingent Note, and its agreement to provide the Exit Credit Facility (including the $100 million term loan and $50 million working capital commitment provided thereunder).

**O.     Miscellaneous Provisions**

65.     After the entry of this Order, subject to Section 14.3 of the Plan, so long as such action does not adversely affect the treatment of holders of Allowed Claims pursuant to the Plan, the Debtor may make appropriate technical adjustments, remedy any defect or omission or reconcile any inconsistencies in the Plan, the Plan Documents and/or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan, and any holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan as amended, modified, or supplemented. Subject to Section 14.3 of the Plan, the  Debtor may make technical adjustments and modifications to the Plan without further order or approval of this Court; provided, however, that, such technical adjustments and modifications are immaterial or do not adversely affect the treatment of holders of Claims or Interests under the Plan and such modifications comply with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.  Any waiver under Section 11.2 of the Plan shall not be considered to be a modification of the Plan.

66.     On the Effective Date, the engagement of each Professional Person retained by the Debtor shall be terminated without further order of this Court or act of the parties unless

otherwise agreed by the Debtor and such Professional Person; provided, however, (a) such Professional Persons shall be entitled to prosecute their respective Fee Claims and represent the Debtor with respect to applications for payment of such Fee Claims, and (b) nothing herein or in the Plan shall prevent Reorganized TSE from retaining any such Professional Person on or after the Effective Date, which retention shall not require Court approval.

67.     Any document related to the Plan that refers to a plan of reorganization of the Debtor other than the Plan confirmed by this Order shall be, and it is, deemed to be modified such that the reference to a plan of reorganization of the Debtor in such document shall mean the Plan confirmed by this Order, as appropriate.

68.     The provisions of this Order, including the findings of fact and conclusions of law set forth herein, and the provisions of the Plan are integrated with each other, non-severable, and mutually dependent unless expressly stated by further order of this Court.  The provisions of the Plan, the Plan Supplement, and this Order shall be construed in a manner consistent with each other so as to effect the purpose of each; provided, however, that if there is any direct conflict between the terms of the Plan, except for Section 12.11 of the Plan, or the Plan Supplement and the terms of this Order that cannot be reconciled, then, solely to the extent of such conflict, (a) the provisions of this Order shall govern and any such provision of this Order shall be deemed a modification of the Plan and shall control and take precedence, and (b) as to all other agreements, instruments, or documents, the provisions of the Plan shall govern and take precedence (unless otherwise expressly provided for in such agreement, instrument, or document).  If the terms of Section 12.11 of the Plan directly conflicts and cannot be reconciled with the Plan Supplement or this Order, Section 12.11 of the Plan shall control and take precedence.

69.    Subject to the terms of the Plan and this Order, on or before substantial consummation of the Plan, the Debtor may file with this Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

70.    As of the Effective Date, pursuant to the Plan, Reorganized TSE may operate its business and use, acquire, and settle and compromise claims or interests without supervision of this Court, free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan and this Order.

71.    Unless otherwise provided in the Plan or in this Order, all injunctions or stays in effect in the Chapter 11 Case pursuant to sections 105 or 362 of the Bankruptcy Code or any order of this Court and extant on the date of entry of this Order shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or this Order shall remain in full force and effect in accordance with their terms.

72.    Except as otherwise provided in the Plan, or in any contract, instrument, release, or other agreement entered into in connection with the Plan or by order of this Court, in accordance with section 1123(b) of the Bankruptcy Code, Reorganized TSE shall retain and may enforce any claims, rights and Causes of Action that the Debtor or the Estate may hold.

73.    Notwithstanding anything in the Plan or herein to the contrary, nothing shall affect or impair any right of Nooter/Eriksen, Inc. with respect to the Debtor or its property, and Nooter/Eriksen, Inc. is hereby granted relief from the automatic stay immediately to pursue its claims against the Debtor in the civil action pending in the District Court for Nye County, Nevada (Case No. CV19-0045) or any other court of appropriate jurisdiction, and if successful, Nooter/Eriksen, Inc. may pursue all of its remedies allowed as matter of law or equity.

74.    Except as otherwise may be provided in the Plan or herein, notice of all subsequent pleadings in the Chapter 11 Case after the Effective Date shall be limited to the following parties:  (i) the Debtor and its counsel; (ii) the U.S. Trustee; (iii) counsel for the Collateral Agent; (iv) outside counsel to the U.S. Department of Energy; (v) the U.S. Department of Justice; (vi) counsel to Cobra Energy Investments, LLC; and (vii) any party known to be directly affected by the relief sought.

75.    Failure to specifically include or reference particular sections or provisions of the Plan or any related agreement in this Order shall not diminish or impair the effectiveness of such sections or provisions, it being the intent of this Court that the Plan be confirmed and such related agreements be approved in their entirety.

76.    Notwithstanding the entry of this Order, this Court may properly, and from and after the Effective Date shall, to the fullest extent as is legally permissible, retain exclusive jurisdiction over the Chapter 11 Case, and all matters arising under, arising out of, or related to, the Chapter 11 Case and the Plan (a) as provided for in Article XIII of the Plan, (b) as provided for in this Order, and (c) for the purposes set forth in sections 1127 and 1142 of the Bankruptcy Code.

**Dated: December 9th, 2020**
**Wilmington, Delaware**

**KAREN B. OWENS**
**UNITED STATES BANKRUPTCY JUDGE**